

CORPORATION SERVICE COMPANY

# Notice of Service of Process

WAS / ALL
**Transmittal Number: 8028558**
Date Processed: 09/23/2010

**Primary Contact:**   Rita Mennen
CNO Financial Group, Inc.
11825 N. Pennsylvania Street
Carmel, IN 46032

| | |
|---|---|
| **Entity:** | Bankers Life and Casualty Company<br>Entity ID Number 2425585 |
| **Entity Served:** | Bankers Life & Casualty Company, Inc. |
| **Title of Action:** | Edmund Martin vs. Bankers Life and Casualty Company, Inc. |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court:** | Madison County Circuit Court, Tennessee |
| **Case Number:** | C-10-259 |
| **Jurisdiction Served:** | Tennessee |
| **Date Served on CSC:** | 09/22/2010 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | TN Department of Commerce and Insurance on 9/15/2010 |
| **How Served:** | Certified Mail |
| Sender Information: | Jay G. Bush<br>731-424-6211 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road  Wilmington, DE 19808  (888) 690-2882  |  sop@cscinfo.com



EXHIBIT
A

**STATE OF TENNESSEE**
**Department of Commerce and Insurance**
**500 James Robertson Parkway**
**Nashville, TN 37243-1131**
**PH - 615.532.5260, FX - 615.532.2788**
**brenda.meade@tn.gov**

September 21, 2010

Bankers Life & Casualty Company
2908 Poston Avenue, % C S C
Nashville, TN  37203
NAIC # 61263

Certified Mail
Return Receipt Requested
7009 3410 0002 1722 9748.
Cashier # 5248

Re:    Edmund & Marion Martin  V.  Bankers Life & Casualty Company

Docket # C-10-259

To Whom It May Concern:

Pursuant to Tennessee Code Annotated § 56-2-504 or § 56-2-506, the Department of
Commerce and Insurance was served September 15, 2010, on your behalf in connection with
the above-styled proceeding.  Documentation relating to the subject is herein enclosed.

Brenda C. Meade
Designated Agent
Service of Process

Enclosures

cc: Circuit Court Clerk
     Madison County
     515 South Liberty
     Jackson, Tn  38301

# State of Tennessee
## Circuit Court of Madison County, Tennessee

Edmund Martin and Marion Martin
<br>Plaintiff

v.

No. C-10-259

Civil Summons

Bankers Life & Casualty Company, Inc. and
<br>Sandra Wood, as Agent, Servant, and Employee of
<br>Bankers Life & Casualty Company, Inc.
<br>Defendant

Action:

Please serve:
<br>**Bankers Life & Casualty Company, Inc.**
<br>**c/o Registered Agent, Commissioner of Insurance**
<br>**TN Dept. of Commerce & Insurance**
<br>**500 James Robertson Parkway, 5th Floor**
<br>**Nashville, TN 37243**

To the above named defendant(s):

You are hereby summoned and required to answer, in writing, the Complaint which is herewith served upon you, and to serve a copy of same upon Wesley A. Clayton and Jay G. Bush, Plaintiffs' attorneys, whose address is 106 South Liberty Street, Jackson, TN 38301, within thirty (30) days after service of this summons upon you, exclusive of the date of service. If you fail to do so, a judgment by default will be taken against you for the relief demanded in the complaint

Witness, Kathy Blount , _____ of said Court at office this the 1 day of September, 2010.

_____ Clerk

By: _____ Deputy Clerk

Received this _____ day of _____ , 2010.

Sheriff-Deputy Sheriff _____

To the Defendant(s)

Tennessee law provides a four thousand dollar ($4,000.00) personal property exemption from execution or seizure to satisfy a judgment, if a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary, however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. (T.C.A. 26-2-114)

### RETURN ON SERVICE OF SUMMONS

I hereby certify and return, that on the _____ day of _____ , 2010 , I served this summons together with a copy of the complaint herein as follows:

_____

_____

_____ Sheriff-Deputy Sheriff

THIS SUMMONS IS ISSUED PURSUANT TO RULE 4 OF THE TENNESSEE RULES OF CIVIL PROCEDURE

IN THE CIRCUIT COURT FOR MADISON COUNTY, TENNESSEE
AT JACKSON



EDMUND MARTIN
and MARION MARTIN,

    Plaintiffs,

v.

No.: C-10-259
**JURY DEMANDED**
DIV III - Page

BANKERS LIFE AND CASUALTY
COMPANY, INC. and SANDRA WOOD,
as Agent, Servant and
Employee of Bankers Life and Casualty
Company, Inc.

    Defendants.

**FILED**
KATHY BLOUNT, CIRCUIT COURT CLERK
SEP 0 1 2010
DEPUTY CLERK
A.M. 3:25 P.M.

**COMPLAINT**

The Plaintiffs, Edmund Martin and Marion Martin, show for their cause of action to the Court as follows:

## I. PARTIES, JURISDICTION, AND VENUE

1.    Plaintiffs are citizens of Jackson, Madison County, Tennessee.

2.    Defendant Bankers Life and Casualty Company, Inc. (hereinafter "Bankers Life") is a foreign for-profit corporation authorized to sell insurance in the State of Tennessee. Bankers Life writes long-term care insurance policies and upon information and belief Bankers Life negotiated, maintained and is the claims administrator of the long-term care insurance contract at issue in this case.

3.    Defendant, Bankers Life, may be served by service of process upon its Registered Agent, the Commissioner of the Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway, 5th Floor, Nashville, Tennessee, 37243.

4.    Defendant Sandra Wood, as Agent, Servant and Employee of Bankers Life and Casualty Company, Inc., is a citizen of Shelby County, Tennessee and may be served by service of process at 65 Germantown Court, Suite 425, Cordova,

Tennessee 38018.

5. Jurisdiction and venue is proper in the Circuit Court of Madison County, Tennessee.

## II. FACTS

6. On June 7, 1990, Edmund Martin and Marion Martin entered into a contract for long-term care insurance with Bankers Life.

7. Bankers Life Policy No. 900,204,808 was issued to Edmund Martin on September 7, 1990. See 1990 Bankers Life policy of Edmund Martin attached hereto as Exhibit A.

8. Bankers Life Policy No. 900,203,751 was issued to Marion Martin on September 7, 1990. See 1990 Bankers Life policy of Marion Martin attached hereto as Exhibit B.

9. Under the terms of the 1990 Bankers Life Policy No. 900,204,808, Edmund Martin's monthly premium was $211.34.

10. Under the terms of the 1990 Bankers Life Policy No. 900,203,751, Marion Martin's monthly premium was $259.56.

11. Under the terms of the 1990 Bankers Life Policies 900,204,808 and 900,203,751, Mr. and Mrs. Martin were both entitled to lifetime benefits.

12. At the behest of a Bankers Life agent, on August 7, 1994, Mr. and Mrs. Martin exchanged the 1990 policies for a new policy that combined premium payments. Mr. and Mrs. Martin's policy numbers 900,204,808 and 900,203,751 from the 1990 Bankers Life policy were combined to Policy No. 940,194,981 which covered both Mr. and Mrs. Martin. See 1994 Bankers Life policy attached hereto as Exhibit C.

13. Under the terms of the 1994 Bankers Life policy, the Martins were to pay monthly premiums of $622.88, and were entitled to lifetime benefits.

14. Mr. and Mrs. Martin's 1994 Bankers Life policy was replaced with another new policy on October 22, 2001. Under the 2001 Bankers Life policy, the Martins were to pay a monthly premium of $888.34, and their daily benefit amount increased from $90.00 per day to $100.00 per day.

15. Bankers Life's agent, Sandra Wood, represented to the Martins that the terms of the 1990 and 1994 policies would remain the same, including lifetime benefits.

2

16. The application for the 2001 Bankers Life Policy No. 201,071,892 was filled out by Bankers Life agent Sandra Wood.

17. The application for the 2001 Bankers Life Policy No. 201,071,892, signed by the Martins on June 15, 2001, indicates that under the terms of the policy there is a thirty-day elimination period and a maximum benefit of $109,500.00. The maximum benefit amount is denoted on the application filled out by Bankers Life agent Sandra Wood via a code "1095."

18. Under the 2001 Bankers Life Policy No. 201,071,892, although the premiums increased, the schedule on the policy indicates that rather than lifetime benefits, the Martins are entitled only to a maximum benefit of $109,500.00. The Martins did not initial next to this change in maximum benefits from the 1994 policy to the 2001 policy. See 2001 Bankers Life policy attached hereto as Exhibit D.

19. On April 3, 2007, the Martins entered an assisted living facility and became eligible to receive long-term care benefits under the 2001 Bankers Life policy on May 3, 2007, following satisfaction of the thirty (30) day elimination period.

20. On March 4, 2010, Mr. Martin received a letter from Bankers Life advising that a reassessment of his eligibility benefits had determined he no longer qualified for benefits under the 2001 Bankers Life policy because he was not receiving assistance with at least two "Activities of Daily Living" for a period of ninety (90) days. See Bankers Life March 4, 2010, letter attached hereto as Exhibit E.

21. On March 16, 2010, Mr. Martin received a letter from Bankers Life advising that his long-term care insurance pays $73,000.00 for assisted living expenses, contrary to the 2001 Bankers Life policy which states the maximum benefit is $109,500.00, or the representation made by Bankers Life agent Sandra Wood that the Martins had the same lifetime benefits that were provided in the 1990 and 1994 Bankers Life policies. The letter further stated that the Martins' claim limit had been reached and they were receiving their final benefit check. See Bankers Life March 16, 2010, letter attached hereto as Exhibit F.

22. On March 25, 2010, Mr. Martin responded to Bankers Life's March 4, 2010, letter providing documentation from the assisted living facility that he was receiving assistance pursuant to the terms of the 2001 policy and requesting a management review of his claim. To date, no management review of the Martins' claim has ever been provided, nor has there been a response to the March 25, 2010, letter.

See March 25, 2010 letter requesting management review attached hereto as Exhibit G.

23. On April 2, 2010, Mr. Martin received a letter from Bankers Life stating that the maximum benefits under the 2001 Bankers Life policy had been paid. According to the letter, the only way to restore benefits under the policy was if Mr. Martin no longer received assisted living care for 180 consecutive days for the same cause for which he was currently receiving assistance. See Bankers Life April 2, 2010 letter attached hereto as Exhibit H.

24. On May 17, 2010, Mr. Martin received a letter from Bankers Life, again, stating erroneously that his long-term care insurance has paid the maximum benefit of $73,000.00 and cannot pay more. The letter further states that if Mr. Martin believes his claim has been wrongfully denied to forward his request for payment under the policy for management review by Bankers Life. Management review was requested on March 25, 2010, and to date no response has been received from Bankers Life. See Bankers Life May 17, 2010, letter attached hereto as Exhibit I and Exhibit G.

25. On July 19, 2010, Mr. Martin received a letter from Bankers Life requesting that he provide Bankers Life with an itemized nursing home bill for the month of June 2010. See Bankers Life July 19, 2010 letter attached hereto as Exhibit J.

26. On August 18, 2010, Mr. Martin received a letter from Bankers Life advising that he will soon reach the maximum claim amount that Bankers Life can pay on his long-term care insurance under the 2001 policy. The letter further states erroneously that the maximum benefit of $73,000.00 has already been paid out for Mrs. Martin, who is suffering from Alzheimer's Disease, and no additional funds can be paid on her claim under the 2001 policy. See Bankers Life August 18, 2010 letter attached hereto as Exhibit K.

### III. BREACH OF CONTRACT

27. The Plaintiffs incorporate herein by reference the allegations contained in Paragraphs 1 through 26 above.

28. The Defendant, Bankers Life, breached the long-term care insurance contract by failing to provide timely and correct benefit payments as set forth in the policy.

29. As a proximate result of said breach of contract, the Plaintiffs have been damaged

in an amount to be determined by a fair and impartial jury.

## IV. VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT

30. The Plaintiffs incorporate herein by reference the allegations contained in Paragraphs 1 through 29 above.

31. By engaging in the unfair and deceptive conduct as alleged herein, the Defendants are in violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. §47-18-101, *et seq.*

32. As a proximate result of said violation, the Plaintiffs have been damaged in an amount to be determined by a fair and impartial jury at trial.

## V. BAD FÁITH

33. The Plaintiffs incorporate herein by reference the allegations contained in Paragraphs 1 through 32, above.

34. The conduct of the Defendants as alleged herein is in bad faith in violation of Tenn. Code Ann. § 56-7-105, *et seq.*

35. As a proximate result of said violation, the Plaintiffs have been damaged in an amount to be determined by a fair and impartial jury.

## VI. BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

36. The Plaintiffs incorporate herein by reference the allegations contained in Paragraphs 1 through 21.

37. The conduct of the Defendants as alleged herein is a violation of the covenant of good faith and fair dealing in the performance of contracts.

38. As a proximate result of said violation, the Plaintiffs have been damaged in an amount to be determined by a fair and impartial jury at trial.

## VII. INTENTIONAL MISREPRESENTATION

39. The Plaintiffs incorporate herein by reference the allegations contained in Paragraphs 1 through 38.

40. Defendant Sandra Wood, an agent of Defendant Bankers Life, intentionally misrepresented to the Plaintiffs that the 2001 Bankers Life contract for long-term care insurance they were entering into provided for lifetime benefits under the

5

policy, thereby defrauding the Plaintiffs into entering into the contract.

41.   The Plaintiffs, who are elderly, reasonably relied upon the assurances of Defendant Sandra Wood and Defendant Bankers Life that the terms of the 2001 Bankers Life policy would remain the same as the terms of the 1990 and 1994 Bankers Life policies with regard to lifetime benefits.

42.   As a proximate result of said intentional misrepresentation, the Plaintiffs seek punitive damages in an amount to be determined by a fair and impartial jury.

WHEREFORE, Plaintiffs demand a trial by jury and pray:

1.   That the Plaintiffs be awarded damages and other remedies available under the law, including but not limited to compensatory damages, punitive damages and/or treble damages in accordance with the Tennessee Consumer Protection Act, Tenn. Code Ann. §47-18-101, *et seq.* against the Defendants in an amount determined by a fair and impartial jury at trial;

2.   That Plaintiffs be awarded attorneys' fees as provided for in accordance with the Tennessee Consumer Protection Act, Tenn. Code Ann. §47-18-101 et seq.;

3.   That Plaintiffs be awarded pre and post judgment interest as provided by law;

4.   That the costs of this action be charged to the Defendants; and,

5.   That Plaintiffs have such other and further relief as the Court deems just and proper.

Respectfully submitted,

**WALDROP & HALL, P.A.**

By: _____

Wesley A. Clayton (#010406)
Jay G. Bush (#026222)
Attorneys for Plaintiffs,
Edmund Martin and Marion Martin
106 S. Liberty Street
Post Office Box 726
Jackson, TN 38301
(731) 424-6211

6

## COST BOND

We acknowledge ourselves as surety for the costs of this cause not to exceed $1,000.00.

WALDROP & HALL, P.A.

By: _____

Wesley A. Clayton (#010406)
Jay G. Bush (#026222)
Attorneys for Plaintiffs,
Edmund Martin and Marion Martin

7

# EXHIBIT A

*1993*

## NOTICE TO POLICYHOLDERS

If, at any time, you have any questions or need any information concerning this policy, you may contact us:

**BANKERS LIFE AND CASUALTY COMPANY**
**POLICYHOLDER SERVICE OFFICE**
**4444 W. LAWRENCE AVENUE**
**CHICAGO, ILLINOIS   60630**
**PHONE (312) 777-7000**

10890

# NOTICE CONCERNING COVERAGE LIMITATIONS AND EXCLUSIONS UNDER THE LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION ACT

Residents of Tennessee who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Tennessee Life and Health Insurance Guaranty Association. The purpose of this association is to assure that policy-holders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the Guaranty Association is not unlimited, however. And, as noted in the box below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

The state law that provides for this safety-net coverage is called the Tennessee Life and Health Insurance Guaranty Association Act The following is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the act or the rights or obligations of the guaranty association.

## COVERAGE

Generally, individuals will be protected by the Life and Health Insurance Guaranty Association if they live in this state and hold a life or health insurance contract, or an annuity, or if they are insured under a group insurance contract, issued by an insurer authorized to conduct business in Tennessee. The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

## EXCLUSIONS FROM COVERAGE

However, persons holding such policies are not protected by this Association if:

(1)   they are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);

(2)   the insurer was not authorized to do business in this state;

(3)   their policy was issued by a nonprofit hospital or medical service organization (the "Blues"), an HMO, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company or similar plan in which the policy-holder is subject to future assessments, or by an insurance exchange.

The Association also does not provide coverage for:

(1)   any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;

(2)   any policy of reinsurance (unless an assumption certificate was issued);

(3)   interest rate yields that exceed an average rate;

(4)   dividends;

(5)   credits given in connection with the administration of a policy by a group contract holder;

(6)   employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them);

(7)   unallocated annuity contracts (which give rights to group contractholders, not individuals), unless qualified under Section 403(b) of the Internal Revenue Code, except that even if qualified under Section 403(b), unallocated annuities issued to employee benefit plans protected by the federal Pension Benefit Guaranty Corporation are not covered.

(please turn to back of page)

AC-10814-TN

(Rev. 12/89)

# LIMITS ON AMOUNT OF COVERAGE

The act also limits that amount the Association is obligated to pay out. The Association cannot pay more than what the insurance company would owe under a policy or contract. Also, for any one insured life, the Association will pay a maximum of $300,000 no matter how many policies and contracts there were with the same company, even if they provided different types of coverages. Within this overall $300,000 limit, the Association will not pay more than $100,000 in cash surrender values, $100,000 in health insurance benefits, $100,000 in present value of annuities, or $300,000 in life insurance death benefits – again, no matter how many policies and contracts there were with the same company, and no matter how many different types of coverages.

---

The Tennessee Life and Health Insurance Guaranty Association may not provide coverage for this policy.   If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in Tennessee.   You should not rely on coverage by the Tennessee Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy.

Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus.

Insurance companies or their agents are required by law to give or send you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the guaranty association to induce you to purchase any kind of insurance policy.

The Tennessee Life and Health Insurance Guaranty Association
P.O. Box 25th Floor
511 Union Street
Nashville, Tennessee  37219

Tennessee Department of Commerce and Insurance
500 James Robertson Parkway
Nashville, Tennessee  37243

# BANKERS LIFE AND CASUALTY COMPANY

A Legal Reserve Stock Company . Home Office:  4444 West Lawrence Avenue . Chicago, Illinois 60630

### IMPORTANT NOTICE ABOUT STATEMENTS IN THE APPLICATION

Please read the copy of the application which is a part of this policy. Check to see if any medical history has been left out.  Write us if any information shown isn't right or complete.  We issued this policy on the basis that the answers to all questions are right and complete.  Any wrong or left out statements could cause an otherwise valid claim to be denied.

| | | | |
|---|---|---|---|
| NAME OF INSURED | MARTIN EDMUND D JR | 900,204,808 | POLICY NUMBER |
| FIRST PREMIUM | $211.34 | SEPTEMBER  7, 1990 | ISSUE DATE |
| 1ST RENEWAL DATE | NOVEMBER  7, 1990 | GR-7A1 | POLICY FORM |

We, BANKERS LIFE AND CASUALTY COMPANY, promise to pay you, the insured, the benefits provided by this policy. Benefits are subject to policy definitions, provisions, limitations and exceptions.

### CONSIDERATION

We issued this policy in consideration of the application (a copy is attached) and the payment of the First Premium.  This payment will keep the policy in force until the First Renewal Date.  The First Renewal Date and First Premium are shown in the Schedule.

### YOUR THIRTY DAY RIGHT TO RETURN THIS POLICY

If you're not satisfied with this policy, you may return it to us within 30 days after you get it. You may return it to us by mail or to the agent who sold it.  Then we'll refund any premium paid and this policy will be void.

### RENEWAL CONDITIONS

You may renew this policy on any renewal date for as long as you live. To renew, pay the renewal premium at the intervals available to you at time of renewal. It must be paid on or before its due date or during the 31 days that follow.  We can't refuse to renew this policy or place any restrictions on it if you pay the premium on time.

### EFFECTIVE DATE

This policy begins at 12:01 a.m. Standard Time where you live on the Issue Date shown in the Schedule. It ends, subject to the Grace Period, at 12:01 a.m. on the date  any renewal premium is due.

### READ YOUR POLICY CAREFULLY

This policy is a legal contract between you and us. See the "Policy Guide" on page 1A.

Signed by our President and Secretary on its Issue Date.

Secretary _Patricia E. Mullin_     President _B. T. Murphy_

Countersigned by _____
Licensed Resident Agent

LONG TERM CARE POLICY

RENEWABLE AS STATED IN RENEWAL CONDITIONS
PREMIUM RATES MAY BE CHANGED BY CLASS.

## THIS IS A LIMITED POLICY – READ IT CAREFULLY

GR-7A1                                 Page 1                              7127

# POLICY GUIDE

|  | Policy Page |
|---|---|
| BENEFITS | 4,5 |
| CLAIM FORMS | 7 |
| DEFINITIONS | 3,4 |
| EFFECTIVE DATE (ISSUE DATE) | 1,2 |
| EXCEPTIONS | 6 |
| NOTICE OF CLAIM | 7 |
| PRE-EXISTING CONDITIONS | 4 |
| PROOFS OF LOSS | 7 |
| RENEWAL CONDITIONS | 1 |
| RENEWAL PREMIUM | 2,3 |
| RIGHT TO RETURN POLICY | 1 |
| SCHEDULE | 2 |
| TIME LIMIT ON CERTAIN DEFENSES | 6 |
| UNIFORM PROVISIONS | 6,7 |
| WAIVER OF PREMIUM | 6 |

APPLICATION NO. 0913056180

## BANKERS LIFE AND CASUALTY COMPANY

### SCHEDULE

| NAME OF INSURED | MARTIN EDMUND D JR | 900,204,808 | POLICY NUMBER |
|---|---|---|---|
| FIRST PREMIUM | $211.34 | SEPTEMBER  7, 1990 | ISSUE DATE |
| 1ST RENEWAL DATE | NOVEMBER  7, 1990 | GR-7A1 | POLICY FORM |

| INSURED | | PLAN NO. | COVERAGE | ANNUAL PREMIUM |
|---|---|---|---|---|
| MARTIN EDMUND D JR | MALE | | | |
| BIRTHDATE    '23 | AGE 66 | 7A1 | BENEFIT PLAN II<br>$90.00 DAILY BENEFIT<br>ELIMINATION PERIOD:<br>100 DAYS<br>MAXIMUM BENEFIT PERIOD:<br>LIFETIME | $1231.19 |

TOTAL ANNUAL PREMIUM  $1,231.19

PREMIUM PAYMENT SERVICE PLAN ALTERNATIVE MONTHLY PREMIUM  $105.67

*/27.78*

*53 5.45*

Confidential Information
REDACTED

## AMENDMENT RIDER

This rider is a part of the policy to which it's attached. It takes effect on 1/1/89 or the Issue Date of the policy, whichever is later.

The Pre-Existing Conditions Limitation provision of the policy is deleted and replaced with the following:

A pre-existing condition is a medical condition for which, prior to the effective date of coverage, medical advice or treatment was recommended by, or received from, a doctor within the 6 month period before the effective date.

Pre-existing conditions aren't covered unless the loss begins more than 6 months after the effective date of coverage.

## CONDITIONS

This rider is subject to all terms, conditions, limitations and exceptions of the policy except where changed by this rider.

BANKERS LIFE AND CASUALTY COMPANY

*Patricia E. Mullin*

Secretary

10646

**0 9 1 3 0 5 6 1 8**

**1** Martin Edmund D Jr
(Print Applicant's Full Name (Last, First & Middle Initial))

**APPLICATION FOR**
**INSURANCE TO**
BANKERS LIFE AND CASUALTY COMPANY
4444 W. Lawrence Ave., Chicago, IL 60630

I apply for: ☑ NEW POLICY
☐ EXCHANGE
(List all benefits desired.)
☐ INCREASE OF BENEFITS—"UPGRADE"
(List all benefits desired including existing benefits.)
Policy No(s) of Bankers policy(ies) to be changed _____

☐ REINSTATEMENT AND EXCHANGE
(List all benefits desired.)
☐ REINSTATEMENT
(List all benefits desired.)

**2** Date of Birth (Mo/Day/Yr)
/ 23
Age: 66   Male ☑   Female ☐

Height Ft. 5 Inches 6½
Weight Pounds /

Marital Status
☑ Married          ☐ Divorced
☐ Single           ☐ Widowed
Telephone # — Home   Telephone # — Work
[ 901 ]              [        ]

**3** HOME ADDRESS
Street or P.O. Box _____
City/Town Jackson   State TN
Zip Code 38301   Phone No. ( 901 )

Living Site
☑ Own Home      ☐ Elderly Housing
☐ Apartment     ☐ Other (Please explain)
☐ With Relatives

**4** Form # TAL
Rider # _____
# _____
# _____
Special    9/7/90
Issue Date   (Mo/Day/Yr)
☐ No

Benefits
☐ Plan 1 $ _____
   (Daily Amount)
☑ Plan 2 $ 50
   (Daily Amount)
☐ Increasing Daily
   Benefit Amount
☐ Private Duty Nurse

Maximum Benefit Period
☐ 1 Year
☐ 2 Years
☐ 3 Years
☐ 5 Years
☑ Lifetime

Elimination Period
☐ 0 Days
☐ 20 Days
☑ 100 Days
☐ 150 Days

**5** QUALIFYING INFORMATION
To the best of your knowledge and belief:

| | YES | NO |
|---|---|---|
| a. Have you been rejected for nursing home coverage? | ☐ | ☑ |
| b. Have you been confined to a hospital within the past 60 days, or to a nursing home within the past year? | ☐ | ☑ |
| c. Have you been advised by a doctor to seek medical treatment or care in either a hospital or nursing home? | ☐ | ☑ |
| d. Are you bedridden, confined to a wheelchair, or do you require help or supervision to perform everyday living activities? | ☐ | ☑ |
| e. Have you, due to mental or physical disability, authorized any person or institution to legally act in your behalf and take over your personal business transactions? | ☐ | ☑ |
| f. Do you now have, or have you had medical advice or treatment within the past two years for: | | |

| | YES | NO | | YES | NO |
|---|---|---|---|---|---|
| 1. Heart disease requiring hospitalization? | ☐ | ☑ | 7. Alzheimer's Disease, Irreversible Dementia, Parkinson's Disease or any other organic brain disorder? | ☐ | ☑ |
| 2. Paralysis, or Stroke? | ☐ | ☑ | 8. Mental Illness, Alcoholism or Drug Abuse? | ☐ | ☑ |
| 3. Diabetes requiring insulin; Amputation due to disease or injury? | ☐ | ☑ | 9. Degenerative bone disease; Osteoporosis; fractured hip or spine? | ☐ | ☑ |
| 4. Open Colostomy; Kidney disease requiring dialysis; Cirrhosis of the Liver? | ☐ | ☑ | 10. Leukemia, or Cancer (other than skin)? | ☐ | ☑ |
| 5. Emphysema, or other obstructive lung disease? | ☐ | ☑ | 11. An immune deficiency disorder, AIDS, AIDS related complex (ARC), AIDS related conditions, or test results indicating exposure to the AIDS virus? | ☐ | ☑ |
| 6. Arthritis causing crippling, limitation of motion, or requiring surgery for joint replacement? | ☐ | ☑ | | | |

g. Are you now taking or using, or within the past 30 days, taken, or used prescription drugs?   YES ☑   NO ☐
If yes, check box showing how many: ☐ 1 ☑ 2 ☐ 3 or more?

h. Have you received medical treatment or advice within the past two years for any condition(s) not listed above?   ☑ YES ☐ No   If yes, give details below:

| Condition | Onset Mo/Yr. | Operation Mo/Yr. | Recovery Mo/Yr. | Days in Hosp. | Days in Nursing Home | Name/Address/Phone of Doctor/Hospital/Nursing Home |
|---|---|---|---|---|---|---|
| Exna Catapress | Hypertension | Taken for yrs. Controlled by diet + Medication No complications | | Under | | Dr. James H Phillip 1979 N. Highland Jackson TN 38301 (901) 483-1492 |

i. Do you receive Federal, state or local government financial assistance in any form, such as Supplemental Security Income or Medicaid?   YES ☐   NO ☑

10197

Confidential Information
REDACTED

**6** **If eligible for Medicare:**
a. Are you insured under Part A and Part B of Medicare?    ☒ Yes ☐ No
b. Is the state paying your Part B premium?    ☐ Yes ☒ No
c. Are you enrolled in a Health Maintenance Organization or a similar program?    ☐ Yes ☒ No

**7**    **HEALTH INSURANCE IN FORCE AND APPLIED FOR** (excluding this application) ☐ None

| Coverage | Medicare Supplement Part A ☐ Part B ☒ | Nursing Home: Daily Benefit _____ Maximum Benefit Period _____ |
|---|---|---|
| Company | GROUP | NONE |

**8**    Will any existing Life, Health, Accident & Sickness, Disability Income or Annuity Contract(s) be replaced or changed if a proposed policy is issued?    Yes ☐   No ☒
If answered "Yes," show company, policy number and ending date(s) in Question 7.

**9**    **ACKNOWLEDGEMENTS**
The Applicant, to the best of his or her knowledge and belief, represents and agrees as follows: **1.** That the statements contained in the application concerning past and present health are complete, true and correct. **2.** Any policy issued as a result of this application shall, together with the application, constitute a single and entire contract of insurance. **3.** No agent or any other person is authorized to accept risks, pass upon insurability, make or modify contracts or waive any of the Company's rights or requirements. **4.** Any insurance issued as a result of the application will either: **a.** Not take effect unless and until the full first premium is paid and the policy is delivered during such person's lifetime and while such person is in the condition of health set forth in the application, or: **b.** Take effect only as specified in the Conditional Receipt, if any, attached to this application. **5.** Policy and rider form provisions concerning exceptions, exclusions, limitations and renewal which have been applied for have been explained and are understood. **6.** Ownership. The Applicant shall be the owner of any insurance applied for. **7.** The Applicant can afford to pay the premium for this insurance and for all other insurance that will remain in force in this or any other company.

**REPRESENTATION**
THE UNDERSIGNED APPLICANT AND AGENT ACKNOWLEDGE THAT THE APPLICANT HAS READ OR HAD READ TO HIM/HER THE COMPLETED APPLICATION AND THAT HE/SHE REALIZES THAT ANY FALSE STATEMENTS OR MISREPRESENTATION THEREIN MAY RESULT IN LOSS OF COVERAGE UNDER THE POLICY. THE APPLICANT ACKNOWLEDGES RECEIPT OF ANY APPROPRIATE OUTLINE OF COVERAGE.

**PAYMENT OF PREMIUM**
READ THE CONDITIONAL RECEIPT BEFORE SIGNING. This is to certify that I have read the receipt and fully understand its conditions and limitations. I understand that no agent can waive or change the conditions and limitations of this receipt.

**AUTHORIZATION**
In connection with an application for insurance currently made to Bankers Life and Casualty Company, I hereby authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, or other organization, institution or person, that has any records or knowledge of me or of my health, to disclose to the Company or its reinsurers any such information upon presentation of this authorization or reproduction thereof. This authorization will be valid for a period of 2 years and 6 months from the date signed. I also acknowledge receipt of the Investigative Consumer Report Notice.

**SIGNATURES**
Dated at City _Jackson_ State _TN_ Zip _38301_
this _____ Day of _September_ 19 _90_
Signature of Applicant X _Edmund N. Harlund_
Social Security Number _____
I have witnessed the signature of the Applicant.
I certify that I asked all the questions and truly and accurately recorded the answers contained herein. To the best of my knowledge and belief, the insurance applied for ☐ is likely ☒ is not or is not likely to replace or change any existing policy(ies) or contract(s).
Signature of Licensed Resident Agent X _____ No _628_ Office _416_
Signature of Licensed Resident Agent X _____ No _____

**Note: Agent must submit completed Agent Statement with this application.**

Confidential Information
REDACTED

## RENEWAL PREMIUM

We may change the premium for this policy. We can only change the premium if we change it for all policies like yours in your state on a class basis. We'll tell you at least 31 days in advance of any change in the premium.

If you have selected OPTIONAL BENEFIT – Increased Daily Benefit Coverage, your premium shown in the Schedule (or as changed on a class basis) for the policy (excluding any optional or benefit riders) will increase five percent (5%) each year for up to the first 10 years your policy is in force. We'll change the premium on each policy anniversary. You can tell us to delete this benefit at any time, and your benefits and premium will remain at the amounts then in effect.

## POLICY DEFINITIONS

"You", "your" and "yours" refer to the Insured named in the Schedule.

"We", "us" and "our" refer to Bankers Life and Casualty Company.

"Injury" means bodily injury caused by an accident which results in loss covered by this policy. The loss must begin while the policy is in force.

"Sickness" means illness or disease which results in loss covered by this policy. The loss must begin while the policy is in force.

"Mental illness" means a neurosis, psychoneurosis, psychopathy, psychosis or mental or emotional disease or disorder of any kind. It doesn't mean a demonstrable organic brain disease, such as Parkinson's Disease, Alzheimer's Disease or senile dementia.

"Hospital" means a place which:

1. is legally operated for the care and treatment of sick and injured persons at their expense;

2. is primarily engaged in providing medical, diagnostic and surgical facilities (either on its premises or in facilities available to the hospital on a formal prearranged basis);

3. has continuous 24 hour nursing services by or under the supervision of registered graduate professional nurses (R.N.);

4. has a staff of one or more doctors available at all times.

"Hospital" doesn't mean convalescent, nursing, rest or skilled nursing facility. It doesn't mean a place primarily operated for treatment of the aged, drug addict or alcoholic, nor a special unit of a hospital used by or for any of the above. It also doesn't mean a long term mental facility.

"Nursing Home" means a place which:

1. is legally operated to provide nursing care (skilled, intermediate, custodial) for sick and injured persons at their expense;

2. has 24 hour nursing service by or under the supervision of a licensed nurse;

3. has beds for patients who need nursing care; and

4. operates under the supervision of a doctor.

"Nursing Home" also means a wing, area or floor of a hospital specifically set aside for nursing care.

It doesn't mean: a hospital, a place that primarily treats the mentally ill, drug addicts or alcoholics, or a place owned or operated by a member of your family.

"Doctor" means any licensed practitioner of the healing arts acting within the scope of his or her license in treating an injury or sickness. It doesn't include you or a member of your family.

## POLICY DEFINITIONS (Continued)

"Custodial Care" means care which is mainly for the purpose of meeting personal needs. It could be provided by persons without professional skills or training. Such examples are: help in walking, getting in and out of bed, bathing, dressing, eating and taking medicine.

"Skilled and Intermediate Care" means any level of care greater than custodial care.

"Elimination Period" means the number of days you must stay in a Nursing Home before we'll start to pay a benefit under this policy.

"Maximum Benefit Period" means the total period for which daily Nursing Home confinement benefits are payable under this policy for any one period of confinement.

## PRE-EXISTING CONDITIONS LIMITATION

A pre-existing condition is a medical condition for which, prior to the effective date of coverage:

1. Medical advice or treatment was recommended by, or received from, a doctor within the 6 month period before the effective date; or

2. Symptoms existed which would cause an ordinarily prudent person to seek diagnosis, care or treatment within the 6 month period before the effective date of coverage.

Pre-existing conditions aren't covered unless the loss begins more than 6 months after the effective date of coverage.

## NURSING HOME CARE BENEFITS - PLAN I

When the Schedule on page 2 shows Benefit Plan I, we'll pay Nursing Home Care benefits when you are, for medical reasons, necessarily confined in a Nursing Home due to injury or sickness. We'll pay the Daily Benefit for each day of confinement beginning after the Elimination Period, if any, for any one period of confinement. We won't pay for more than the Maximum Benefit Period for any one period of confinement. The Daily Benefit, Elimination Period and the Maximum Benefit Period are shown in the Schedule.

Before benefits are payable, the Nursing Home Care stay must:

1. Follow a hospital stay of 3 or more days in a row;

2. Begin within 30 days after that hospital stay;

3. Be due to the same or related injury or sickness as the prior hospital stay;

4. Be certified by your doctor that the Nursing Home Care stay, whether for skilled, intermediate, or custodial care, is medically necessary.

## ONE PERIOD OF CONFINEMENT - PLAN I

One period of confinement starts when you enter a hospital for a stay of 3 or more days in a row. It ends when there has been no additional hospital or Nursing Home stays, for the cause or causes of the prior confinement, for 6 months in a row.

Then, provided the policy is in force, a new period of confinement begins and a new Elimination Period, if any, will apply.

7A1

7128

## NURSING HOME CARE BENEFITS – PLAN II

When the Schedule on page 2 shows Benefit Plan II, we'll pay Nursing Home Care benefits when you are, for medical reasons, necessarily confined in a Nursing Home due to injury or sickness. We'll pay the Daily Benefit for each day of confinement beginning after the Elimination Period, if any, for any one period of confinement. We won't pay for more than the Maximum Benefit Period for any one period of confinement. The Daily Benefit, Elimination Period and the Maximum Benefit Period are shown in the Schedule.

Before benefits are payable, the Nursing Home stay must be certified by your doctor that the Nursing Home stay, whether for skilled, intermediate or custodial, is medically necessary.

## ONE PERIOD OF CONFINEMENT – PLAN II

One period of confinement starts when you enter a Nursing Home. It ends when there has been no additional Nursing Home stays, for the cause or causes of the prior confinement, for 6 months in a row.

Then, provided the policy is in force, a new period of confinement begins and a new Elimination Period, if any, will apply.

## AMBULANCE BENEFIT

We'll pay the expense incurred up to $25 per trip for ambulance service to or from a Nursing Home. We won't pay for ambulance expense incurred beyond the Maximum Benefit Period.

## OPTIONAL COVERAGE

INCREASED DAILY BENEFIT COVERAGE – To have this coverage, the entry INCREASED DAILY BENEFIT must be shown in the Schedule. When coverage is shown, the Daily Benefit amount shown in the Schedule will increase by five percent (5%) on each policy anniversary while your policy is in force. We'll do this for up to 10 years. Premium for the Daily Benefit amount will also increase five percent (5%) as stated in the Renewal Premium provision on page 3.

You may stop this benefit change at the Daily Benefit amount then in effect on any policy anniversary by telling us to freeze the benefit amount and premium then in effect.

We won't increase benefit coverage for more than 10 years.

For any one period of confinement, we'll pay the Daily Benefit amount then in effect when one period of confinement begins.

IN-HOSPITAL PRIVATE DUTY NURSE COVERAGE – As used in this provision a "Private Duty Nurse" means a professional nurse who is legally entitled to use the title of Registered Nurse (RN) or Licensed Practical Nurse (LPN), and who isn't your spouse, child of a spouse or your child.

To have this coverage, an entry for PRIVATE DUTY NURSE must show in the Schedule. When this coverage is shown, we'll pay $30 per 8 hour shift, up to 2 shifts per day, for services of a Private Duty Nurse while you are confined in a hospital. Such services must be under the order and direction of your doctor. We won't pay for more than a total of 90 days for any one period of confinement.

7A1             Page 5             7071

## EXCEPTIONS

This policy doesn't cover loss:

1. Due to war or act of war;

2. Due to intentionally self-inflicted injury while sane or insane.

3. For stays in government facilities unless a charge is made for which you are obligated to pay; and

4. Due to mental illness or nervous disorders without demonstrable organic disease. (Loss due to Parkinson's Disease, Alzheimer's Disease or senile dementia are covered.)

## WAIVER OF PREMIUM

After you've been paid Nursing Home Care benefits under this policy for 90 consecutive days, we'll waive the payment of any premium (including premium for any attached benefit riders) coming due thereafter. We'll waive the premium while consecutive days of Nursing Home Care benefits continue to be paid under this policy.

## UNIFORM PROVISIONS

ENTIRE CONTRACT; CHANGES: This policy with the attached papers, if any, is the entire contract between you and us. No change in this policy will be effective until approved by one of our officers. This approval must be noted on or attached to this policy. No agent may change this policy or waive any of its provisions. The application is a part of this policy.

TIME LIMIT ON CERTAIN DEFENSES:

1. Misstatements in the Application:
   After 2 years from the Issue Date only fraudulent misstatements in the application may be used to void this policy or deny any claim for loss which starts after the 2 year period.

2. Pre-Existing Conditions:
   No claim for loss which starts after 6 months from the Issue Date will be reduced or denied because a sickness or physical condition had existed before the effective date.

GRACE PERIOD: This policy has a 31 day grace period. This means that if a premium isn't paid on or before the date it's due, it may be paid during the following 31 days. During the grace period this policy will stay in force.

REINSTATEMENT: If the premium isn't paid before the grace period ends, this policy will lapse. Later acceptance of premium by us (or by any agent authorized to accept payment) without requiring an application for reinstatement, will reinstate this policy.

If we or our agent require an application, you'll get a conditional receipt for the premium. If the application is approved, this policy will be reinstated as of the approval date. Lacking such approval, this policy will be reinstated on the 45th day after the date of the conditional receipt unless we previously notified you, in writing, of our disapproval.

The reinstated policy will cover only loss which results from an injury sustained after the date of reinstatement or for sickness that starts after such date.

In all other respects your rights and our rights will remain the same, subject to any provisions noted on or attached to the reinstated policy.

Any premium we accept with a reinstatement shall be applied to a period which hasn't been previously paid for but not for any period more than 60 days before the reinstatement date.

## UNIFORM PROVISIONS (Continued)

NOTICE OF CLAIM:  Written notice of claim must be given within 60 days (6 months in Montana) after a covered loss starts or as soon as possible.  The notice can be given to us at our Home Office, at the address shown on page one or to any one of our agents.  Notice should include your name and policy number.

CLAIM FORMS: When we get notice of claim, we'll send you forms for filing proof of loss.  If these forms aren't given to you within 15 days, you'll meet the proof of loss requirements by giving us a written statement of the nature and extent of the loss.  We must get this statement within the time limit stated in the Proofs of Loss section.

PROOFS OF LOSS: For periodic payment of a continuing loss, you must give us written proof of loss within 90 days after the end of each period for which we are liable.  For any other loss, you must give us written proof within 90 days after the end of such loss.

If it wasn't reasonably possible for you to give is proof in the time required, we won't reduce nor deny the claim for this reason if the proof is filed as soon as possible.  In any event, the proof required must be given no later than one year (15 months in Hawaii) from the time specified unless you were legally unable to act.

TIME OF PAYMENT OF CLAIMS: After getting written proof of loss, we'll pay monthly all benefits then due for the loss.  Benefits for any other loss covered by this policy will be paid as soon as we receive proper written proof.

PAYMENT OF CLAIMS: Benefits will be paid to you.  Any benefits due and unpaid at your death may be paid, at our choice, either to your estate or beneficiary.

If benefits are payable to your estate or a beneficiary who can't give a valid release, we can pay up to $1,000 to anyone related to you or, your beneficiary by blood or marriage, whom we consider to be entitled to the benefits.  We'll be discharged to the extent of any such payment made in good faith.

PHYSICAL EXAMINATION: We, at our expense, have the right to have you examined as often as reasonably necessary while a claim is pending.

LEGAL ACTION:  No legal action may be brought to recover on this policy within 60 days after written proof of loss has been given as required by this policy.  No such action may be brought after 3 years (5 years in Kansas; 6 years in South Carolina) from the time written proof of loss is required to be given.

CONFORMITY WITH STATE STATUTES:  Any provision of this policy which, on its effective date, is in conflict with the laws of the state in which you live on that date is amended to conform to the minimum requirements of such laws.

LONG TERM CARE POLICY

RENEWABLE AS STATED IN RENEWAL CONDITIONS.
PREMIUM RATES MAY BE CHANGED BY CLASS.

## THIS IS A LIMITED POLICY – READ IT CAREFULLY

GR–7A1

7129

## NOTICE TO POLICYHOLDERS

If, at any time, you have any questions or need any information concerning this policy, you may contact us:

**BANKERS LIFE AND CASUALTY COMPANY**
**POLICYHOLDER SERVICE OFFICE**
**4444 W. LAWRENCE AVENUE**
**CHICAGO, ILLINOIS   60630**
**PHONE (312) 777-7000.**

10890

# LIMITS ON AMOUNT OF COVERAGE

The act also limits that amount the Association is obligated to pay out. The Association cannot pay more than what the insurance company would owe under a policy or contract. Also, for any one insured life, the Association will pay a maximum of $300,000 no matter how many policies and contracts there were with the same company, even if they provided different types of coverages. Within this overall $300,000 limit, the Association will not pay more than $100,000 in cash surrender values, $100,000 in health insurance benefits, $100,000 in present value of annuities, or $300,000 in life insurance death benefits — again, no matter how many policies and contracts there were with the same company, and no matter how many different types of coverages.

The Tennessee Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in Tennessee. You should not rely on coverage by the Tennessee Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy.

Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus.

Insurance companies or their agents are required by law to give or send you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the guaranty association to induce you to purchase any kind of insurance policy.

The Tennessee Life and Health Insurance Guaranty Association
P.O. Box 25th Floor
511 Union Street
Nashville, Tennessee  37219

Tennessee Department of Commerce and Insurance
500 James Robertson Parkway
Nashville, Tennessee  37243

# NOTICE CONCERNING COVERAGE LIMITATIONS AND EXCLUSIONS UNDER THE LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION ACT

Residents of Tennessee who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Tennessee Life and Health Insurance Guaranty Association. The purpose of this association is to assure that policy-holders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the Guaranty Association is not unlimited, however. And, as noted in the box below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

The state law that provides for this safety-net coverage is called the Tennessee Life and Health Insurance Guaranty Association Act. The following is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the act or the rights or obligations of the guaranty association.

## COVERAGE

Generally, individuals will be protected by the Life and Health Insurance Guaranty Association if they live in this state and hold a life or health insurance contract, or an annuity, or if they are insured under a group insurance contract, issued by an insurer authorized to conduct business in Tennessee. The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

## EXCLUSIONS FROM COVERAGE

However, persons holding such policies are not protected by this Association if:

(1)  they are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);
(2)  the insurer was not authorized to do business in this state;
(3)  their policy was issued by a nonprofit hospital or medical service organization (the "Blues"), an HMO, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company or similar plan in which the policy-holder is subject to future assessments, or by an insurance exchange.

The Association also does not provide coverage for:

(1)  any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;
(2)  any policy of reinsurance (unless an assumption certificate was issued);
(3)  interest rate yields that exceed an average rate;
(4)  dividends;
(5)  credits given in connection with the administration of a policy by a group contract holder;
(6)  employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them);
(7)  unallocated annuity contracts (which give rights to group contractholders, not individuals), unless qualified under Section 403(b) of the Internal Revenue Code, except even if qualified under Section 403(b), unallocated annuities issued to employee benefit plans protected by the federal Pension Benefit Guaranty Corporation are not covered.

(please turn to back of page)

AC-10814-TN

(Rev. 12/89)

# POLICY GUIDE

|  | Policy Page |
|---|---|
| BENEFITS | 4,5 |
| CLAIM FORMS | 7 |
| DEFINITIONS | 3,4 |
| EFFECTIVE DATE (ISSUE DATE) | 1,2 |
| EXCEPTIONS | 6 |
| NOTICE OF CLAIM | 7 |
| PRE—EXISTING CONDITIONS | 4 |
| PROOFS OF LOSS | 7 |
| RENEWAL CONDITIONS | 1 |
| RENEWAL PREMIUM | 2,3 |
| RIGHT TO RETURN POLICY | 1 |
| SCHEDULE | 2 |
| TIME LIMIT ON CERTAIN DEFENSES | 6 |
| UNIFORM PROVISIONS | 6,7 |
| WAIVER OF PREMIUM | 6 |

GR—7A1

7127

# BANKERS LIFE AND CASUALTY COMPANY

A Legal Reserve Stock Company . Home Office: 4444 West Lawrence Avenue . Chicago, Illinois 60630

### IMPORTANT NOTICE ABOUT STATEMENTS IN THE APPLICATION

Please read the copy of the application which is a part of this policy. Check to see if any medical history has been left out. Write us if any information shown isn't right or complete. We issued this policy on the basis that the answers to all questions are right and complete. Any wrong or left out statements could cause an otherwise valid claim to be denied.

| | | |
|---|---|---|
| NAME OF INSURED   MARTIN MARION W | 900,203,751 | POLICY NUMBER |
| FIRST PREMIUM   $259.56 | SEPTEMBER   7, 1990 | ISSUE DATE |
| 1ST RENEWAL DATE   NOVEMBER   7, 1990 | GR-7A1 | POLICY FORM |

We, BANKERS LIFE AND CASUALTY COMPANY, promise to pay you, the Insured, the benefits provided by this policy. Benefits are subject to policy definitions, provisions, limitations and exceptions.

### CONSIDERATION

We issued this policy in consideration of the application (a copy is attached) and the payment of the First Premium. This payment will keep the policy in force until the First Renewal Date. The First Renewal Date and First Premium are shown in the Schedule.

### YOUR THIRTY DAY RIGHT TO RETURN THIS POLICY

If you're not satisfied with this policy, you may return it to us within 30 days after you get it. You may return it to us by mail or to the agent who sold it. Then we'll refund any premium paid and this policy will be void.

### RENEWAL CONDITIONS

You may renew this policy on any renewal date for as long as you live. To renew, pay the renewal premium at the intervals available to you at time of renewal. It must be paid on or before its due date or during the 31 days that follow. We can't refuse to renew this policy or place any restrictions on it if you pay the premium on time.

### EFFECTIVE DATE

This policy begins at 12:01 a.m. Standard Time where you live on the Issue Date shown in the Schedule. It ends, subject to the Grace Period, at 12:01 a.m. on the date any renewal premium is due.

### READ YOUR POLICY CAREFULLY

This policy is a legal contract between you and us. See the "Policy Guide" on page 1A.

Signed by our President and Secretary on its Issue Date.

Secretary *Patricia E. Mullin*                    President *B.T. Murphy*

Countersigned by_____
                              Licensed Resident Agent

LONG TERM CARE POLICY

RENEWABLE AS STATED IN RENEWAL CONDITIONS.
PREMIUM RATES MAY BE CHANGED BY CLASS.

## THIS IS A LIMITED POLICY – READ IT CAREFULLY

GR-7A1                                    Page  1                                    7127

## AMENDMENT RIDER

This rider is a part of the policy to which it's attached.  It takes effect on 1/1/89 or the Issue Date of the policy, whichever is later.

The Pre-Existing Conditions Limitation provision of the policy is deleted and replaced with the following:

A pre-existing condition is a medical condition for which, prior to the effective date of coverage, medical advice or treatment was recommended by, or received from, a doctor within the 6 month period before the effective date.

Pre-existing conditions aren't covered unless the loss begins more than 6 months after the effective date of coverage.

## CONDITIONS

This rider is subject to all terms, conditions, limitations and exceptions of the policy except where changed by this rider.

BANKERS LIFE AND CASUALTY COMPANY

*Patricia E. Mullin*

Secretary

10646

APPLICATION NO. 0913056120

BANKERS LIFE AND CASUALTY COMPANY

SCHEDULE

| | | | |
|---|---|---|---|
| NAME OF INSURED | MARTIN MARION W | 900,203,751 | POLICY NUMBER |
| FIRST PREMIUM | $259.56 | SEPTEMBER  7, 1990 | ISSUE DATE |
| 1ST RENEWAL DATE | NOVEMBER  7, 1990 | GR-7A1 | POLICY FORM |

| INSURED | PLAN NO. | COVERAGE | ANNUAL PREMIUM |
|---|---|---|---|
| MARTIN MARION W          FEMALE | | | |
| BIRTHDATE       '21   AGE 69 | 7A1 | BENEFIT PLAN II | $1511.99 |
| | | $90.00 DAILY BENEFIT | |
| | | ELIMINATION PERIOD: | |
| | | 100 DAYS | |
| | | MAXIMUM BENEFIT PERIOD: | |
| | | LIFETIME     ⅄ | |

TOTAL ANNUAL PREMIUM    $1,511.99

PREMIUM PAYMENT SERVICE PLAN ALTERNATIVE MONTHLY PREMIUM    $129.78

Confidential Information
REDACTED

**0 9 1 3 0 5 6 1 2**

## APPLICATION FOR INSURANCE TO

**BANKERS LIFE AND CASUALTY COMPANY**
4444 W. Lawrence Ave., Chicago, IL 60630

**1** _Martin   Marion  W._
(Print Applicant's Full Name (Last, First & Middle Initial)

I apply for:  ☑ NEW POLICY
☐ EXCHANGE
  (List all benefits desired.)
☐ INCREASE OF BENEFITS—"UPGRADE"
  (List all benefits desired including existing benefits.)
☐ REINSTATEMENT AND EXCHANGE
  (List all benefits desired.)
☐ REINSTATEMENT
  (List all benefits desired.)

Policy No(s) of Bankers policy(ies) to be changed _____

**2** Date of Birth (Mo/Day/Yr) __/__/21__
Ft. _5_ Height Inches _6_
Weight Pounds _185_
Age: _69_   Male ☐   Female ☑

Marital Status
☑ Married   ☐ Divorced
☐ Single   ☐ Widowed
Telephone # — Home [ _901_ ]
Telephone # — Work [   ]

**3** HOME ADDRESS
Street or P.O. Box _____
City/Town _Jackson_   State _TN_
Zip Code _38301_   Phone No. ( _901_ )

Living Site
☑ Own Home   ☐ Elderly Housing
☐ Apartment   ☐ Other (Please explain)
☐ With Relatives

**4** Form # _7AL_
Rider # _____
 # _____
 # _____
 # _____
Special Issue Date _9/7/90_ (Mo/Day/Yr)
☐ No

Benefits
☐ Plan 1 $ _____
  (Daily Amount)
☑ Plan 2 $ _60_
  (Daily Amount)
☐ Increasing Daily Benefit Amount
☐ Private Duty Nurse

Maximum Benefit Period
☐ 1 Year
☐ 2 Years
☐ 3 Years
☐ 5 Years
☑ Lifetime

Elimination Period
☐ 0 Days
☐ 20 Days
☑ 100 Days
☐ 150 Days

_9-13_

**5** QUALIFYING INFORMATION
To the best of your knowledge and belief:

|  | YES | NO |
|---|---|---|
| a. Have you been rejected for nursing home coverage? | ☐ | ☑ |
| b. Have you been confined to a hospital within the past 60 days, or to a nursing home within the past year? | ☐ | ☑ |
| c. Have you been advised by a doctor to seek medical treatment or care in either a hospital or nursing home? | ☐ | ☑ |
| d. Are you bedridden, confined to a wheelchair, or do you require help or supervision to perform everyday living activities? | ☐ | ☑ |
| e. Have you, due to mental or physical disability, authorized any person or institution to legally act in your behalf and take over your personal business transactions? | ☐ | ☑ |
| f. Do you now have, or have you had medical advice or treatment within the past two years for: | ☐ | ☑ |

|  | YES | NO |  |  | YES | NO |
|---|---|---|---|---|---|---|
| 1. Heart disease requiring hospitalization? | ☐ | ☑ | | 7. Alzheimer's Disease, Irreversible Dementia, Parkinson's Disease or any other organic brain disorder? | ☐ | ☑ |
| 2. Paralysis, or Stroke? | ☐ | ☑ | | 8. Mental Illness, Alcoholism or Drug Abuse? | ☐ | ☑ |
| 3. Diabetes requiring insulin, Amputation due to disease or injury? | ☐ | ☑ | | 9. Degenerative bone disease, Osteoporosis, fractured hip or spine? | ☐ | ☑ |
| 4. Open Colostomy; Kidney disease requiring dialysis; Cirrhosis of the Liver? | ☐ | ☑ | | 10. Leukemia, or Cancer (other than skin)? | ☐ | ☑ |
| 5. Emphysema, or other obstructive lung disease? | ☐ | ☑ | | 11. An immune deficiency disorder, AIDS, AIDS related complex (ARC), AIDS related conditions, or test results indicating exposure to the AIDS virus? | ☐ | ☑ |
| 6. Arthritis causing crippling, limitation of motion, or requiring surgery for joint replacement? | ☐ | ☑ | | | | |

g. Are you now taking or using, or within the past 30 days, taken or used prescription drugs?   YES ☑   NO ☐
If yes, check box showing how many. ☑ 1   ☐ 2   ☐ 3 or more
h. Have you received medical treatment or advice within the past two years for any condition(s) not listed above?
☑ YES   ☐ No   If yes, give details below:

| Condition | Onset Mo/Yr. | Operation Mo/Yr. | Recovery Mo/Yr. | Days in Hosp. | Days in Nursing Home | Name/Address/Phone of Doctor/Hospital/Nursing Home |
|---|---|---|---|---|---|---|
| Estrogen - Hormone Control | Taken for Syst. No Surgery Required | Under | | | | Dr. Ray Douglas Last Summer [?] Esbro Rd. (90?) 425-1952 |

i. Do you receive Federal, state or local government financial assistance in any form, such as Supplemental Security Income or Medicaid?   YES ☐   NO ☑

10197

Confidential Information
REDACTED

**6**  If eligible for Medicare:

a. Are you insured under Part A and Part B of Medicare?  ☒ Yes ☐ No

b. Is the state paying your Part B premium?  ☐ Yes ☒ No

c. Are you enrolled in a Health Maintenance Organization or a similar program?  ☐ Yes ☒ No

**7**  HEALTH INSURANCE IN FORCE AND APPLIED FOR (excluding this application) ☐ None

| Coverage | Medicare Supplement Part A ☑ Part B ☑ | Nursing Home: Daily Benefit _____ |
| Company | Group | Maximum Benefit Period NONE |

**8**  Will any existing Life, Health, Accident & Sickness, Disability Income or Annuity Contract(s) be replaced or changed if a proposed policy is issued?   ☐ Yes ☒ No

If answered "Yes," show company, policy number and ending date(s) in Question 7.

**9**  ACKNOWLEDGEMENTS

The Applicant, to the best of his or her knowledge and belief, represents and agrees as follows: 1. That the statements contained in the application concerning past and present health are complete, true and correct. 2. Any policy issued as a result of this application shall, together with the application, constitute a single and entire contract of insurance. 3. No agent or any other person is authorized to accept risks, pass upon insurability, make or modify contracts or waive any of the Company's rights or requirements. 4. Any insurance issued as a result of the application will either: a. Not take effect unless and until the full first premium is paid and the policy is delivered during such person's lifetime and while such person is in the condition of health set forth in the application, or: b. Take effect only as specified in the Conditional Receipt, if any, attached to this application. 5. Policy and rider form provisions concerning exceptions, exclusions, limitations and renewal which have been applied for have been explained and are understood. 6. Ownership. The Applicant shall be the owner of any insurance applied for. 7. The Applicant can afford to pay the premium for this insurance and for all other insurance that will remain in force in this or any other company.

**REPRESENTATION**

THE UNDERSIGNED APPLICANT AND AGENT ACKNOWLEDGE THAT THE APPLICANT HAS READ OR HAD READ TO HIM/HER THE COMPLETED APPLICATION AND THAT HE/SHE REALIZES THAT ANY FALSE STATEMENTS OR MISREPRESENTATION THEREIN MAY RESULT IN LOSS OF COVERAGE UNDER THE POLICY. THE APPLICANT ACKNOWLEDGES RECEIPT OF ANY APPROPRIATE OUTLINE OF COVERAGE.

**PAYMENT OF PREMIUM**

READ THE CONDITIONAL RECEIPT BEFORE SIGNING. This is to certify that I have read the receipt and fully understand its conditions and limitations. I understand that no agent can waive or change the conditions and limitations of this receipt.

**AUTHORIZATION**

In connection with an application for insurance currently made to Bankers Life and Casualty Company, I hereby authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, or other organization, institution or person, that has any records or knowledge of me or of my health, to disclose to the Company or its reinsurers any such information upon presentation of this authorization or reproduction thereof. This authorization will be valid for a period of 2 years and 6 months from the date signed. I also acknowledge receipt of the Investigative Consumer Report Notice.

**SIGNATURES**

Dated at City  Jackson  State  TN  Zip  38301

this ___ Day of  September  19 90

Signature of Applicant X  Merian W. Martin

Social Security Number _____

I have witnessed the signature of the Applicant.

I certify that I asked all the questions and truly and accurately recorded the answers contained herein. To the best of my knowledge and belief, the insurance applied for ☐ is or is likely ☒ is not or is not likely to replace or change any existing policy(ies) or contract(s) _____

Signature of Licensed Resident Agent X  Paul W. Hare   No  C658  Office  462

Signature of Licensed Resident Agent X _____  No _____

Note: Agent must submit completed Agent Statement with this application

## RENEWAL PREMIUM

We may change the premium for this policy.   We can only change the premium if we change it for all policies like yours in your state on a class basis.   We'll tell you at least 31 days in advance of any change in the premium.

If you have selected OPTIONAL BENEFIT – Increased Daily Benefit Coverage, your premium shown in the Schedule (or as changed on a class basis) for the policy (excluding any optional or benefit riders) will increase five percent (5%) each year for up to the first 10 years your policy is in force. We'll change the premium on each policy anniversary.   You can tell us to delete this benefit at any time, and your benefits and premium will remain at the amounts then in effect.

## POLICY DEFINITIONS

"You", "your" and "yours" refer to the Insured named in the Schedule.

"We", "us" and "our" refer to Bankers Life and Casualty Company.

"Injury" means bodily injury caused by an accident which results in loss covered by this policy. The loss must begin while the policy is in force.

"Sickness" means illness or disease which results in loss covered by this policy.   The loss must begin while the policy is in force.

"Mental illness" means a neurosis, psychoneurosis, psychopathy, psychosis or mental or emotional disease or disorder of any kind. It doesn't mean a demonstrable organic brain disease, such as Parkinson's Disease, Alzheimer's Disease or senile dementia.

"Hospital" means a place which:

1. is legally operated for the care and treatment of sick and injured persons at their expense;

2. is primarily engaged in providing medical, diagnostic and surgical facilities (either on its premises or in facilities available to the hospital on a formal prearranged basis);

3. has continuous 24 hour nursing services by or under the supervision of registered graduate professional nurses (R.N.);

4. has a staff of one or more doctors available at all times.

"Hospital" doesn't mean convalescent, nursing, rest or skilled nursing facility. It doesn't mean a place primarily operated for treatment of the aged, drug addict or alcoholic, nor a special unit of a hospital used by or for any of the above. It also doesn't mean a long term mental facility.

"Nursing Home" means a place which:

1. is legally operated to provide nursing care (skilled, intermediate, custodial) for sick and injured persons at their expense;

2. has 24 hour nursing service by or under the supervision of a licensed nurse;

3. has beds for patients who need nursing care; and

4. operates under the supervision of a doctor.

"Nursing Home" also means a wing, area or floor of a hospital specifically set aside for nursing care.

It doesn't mean a hospital, a place that primarily treats the mentally ill, drug addicts or alcoholics, or a place owned or operated by a member of your family.

"Doctor" means any licensed practitioner of the healing arts acting within the scope of his or her license in treating an injury or sickness. It doesn't include you or a member of your family.

## POLICY DEFINITIONS (Continued)

"Custodial Care" means care which is mainly for the purpose of meeting personal needs. It could be provided by persons without professional skills or training. Such examples are: help in walking, getting in and out of bed, bathing, dressing, eating and taking medicine.

"Skilled and Intermediate Care" means any level of care greater than custodial care.

"Elimination Period" means the number of days you must stay in a Nursing Home before we'll start to pay a benefit under this policy.

"Maximum Benefit Period" means the total period for which daily Nursing Home confinement benefits are payable under this policy for any one period of confinement.

## PRE-EXISTING CONDITIONS LIMITATION  *See rider 10646*

A pre-existing condition is a medical condition for which, prior to the effective date of coverage:

1. Medical advice or treatment was recommended by, or received from, a doctor within the 6 month period before the effective date; or

2. Symptoms existed which would cause an ordinarily prudent person to seek diagnosis, care or treatment within the 6 month period before the effective date of coverage.

Pre-existing conditions aren't covered unless the loss begins more than 6 months after the effective date of coverage.

## NURSING HOME CARE BENEFITS – PLAN I

When the Schedule on page 2 shows Benefit Plan I, we'll pay Nursing Home Care benefits when you are, for medical reasons, necessarily confined in a Nursing Home due to injury or sickness. We'll pay the Daily Benefit for each day of confinement beginning after the Elimination Period, if any, for any one period of confinement. We won't pay for more than the Maximum Benefit Period for any one period of confinement. The Daily Benefit, Elimination Period and the Maximum Benefit Period are shown in the Schedule.

Before benefits are payable, the Nursing Home Care stay must:

1. Follow a hospital stay of 3 or more days in a row;

2. Begin within 30 days after that hospital stay;

3. Be due to the same or related injury or sickness as the prior hospital stay;

4. Be certified by your doctor that the Nursing Home Care stay, whether for skilled, intermediate, or custodial care, is medically necessary.

## ONE PERIOD OF CONFINEMENT – PLAN I

One period of confinement starts when you enter a hospital for a stay of 3 or more days in a row. It ends when there has been no additional hospital or Nursing Home stays, for the cause or causes of the prior confinement, for 6 months in a row.

Then, provided the policy is in force, a new period of confinement begins and a new Elimination Period, if any, will apply.

7A1

7128

## NURSING HOME CARE BENEFITS – PLAN II

When the Schedule on page 2 shows Benefit Plan II, we'll pay Nursing Home Care benefits when you are, for medical reasons, necessarily confined in a Nursing Home due to injury or sickness. We'll pay the Daily Benefit for each day of confinement beginning after the Elimination Period, if any, for any one period of confinement. We won't pay for more than the Maximum Benefit Period for any one period of confinement. The Daily Benefit, Elimination Period and the Maximum Benefit Period are shown in the Schedule.

Before benefits are payable, the Nursing Home stay must be certified by your doctor that the Nursing Home stay, whether for skilled, intermediate or custodial, is medically necessary.

## ONE PERIOD OF CONFINEMENT – PLAN II

One period of confinement starts when you enter a Nursing Home. It ends when there has been no additional Nursing Home stays, for the cause or causes of the prior confinement, for 6 months in a row.

Then, provided the policy is in force, a new period of confinement begins and a new Elimination Period, if any, will apply.

## AMBULANCE BENEFIT

We'll pay the expense incurred up to $25 per trip for ambulance service to or from a Nursing Home. We won't pay for ambulance expense incurred beyond the Maximum Benefit Period.

## OPTIONAL COVERAGE

INCREASED DAILY BENEFIT COVERAGE – To have this coverage, the entry INCREASED DAILY BENEFIT must be shown in the Schedule. When coverage is shown, the Daily Benefit amount shown in the Schedule will increase by five percent (5%) on each policy anniversary while your policy is in force. We'll do this for up to 10 years. Premium for the Daily Benefit amount will also increase five percent (5%) as stated in the Renewal Premium provision on page 3.

You may stop this benefit change at the Daily Benefit amount then in effect on any policy anniversary by telling us to freeze the benefit amount and premium then in effect.

We won't increase benefit coverage for more than 10 years.

For any one period of confinement, we'll pay the Daily Benefit amount then in effect when one period of confinement begins.

IN-HOSPITAL PRIVATE DUTY NURSE COVERAGE – As used in this provision a "Private Duty Nurse" means a professional nurse who is legally entitled to use the title of Registered Nurse (RN) or Licensed Practical Nurse (LPN), and who isn't your spouse, child of a spouse or your child.

To have this coverage, an entry for PRIVATE DUTY NURSE must show in the Schedule. When this coverage is shown, we'll pay $30 per 8 hour shift, up to 2 shifts per day, for services of a Private Duty Nurse while you are confined in a hospital. Such services must be under the order and direction of your doctor. We won't pay for more than a total of 90 days for any one period of confinement.

7A1                                   Page 5                                        7071

## EXCEPTIONS

This policy doesn't cover loss:

1. Due to war or act of war;

2. Due to intentionally self-inflicted injury while sane or insane.

3. For stays in government facilities unless a charge is made for which you are obligated to pay; and

4. Due to mental illness or nervous disorders without demonstrable organic disease. (Loss due to Parkinson's Disease, Alzheimer's Disease or senile dementia are covered.)

## WAIVER OF PREMIUM

After you've been paid Nursing Home Care benefits under this policy for 90 consecutive days, we'll waive the payment of any premium (including premium for any attached benefit riders) coming due thereafter. We'll waive the premium while consecutive days of Nursing Home Care benefits continue to be paid under this policy.

## UNIFORM PROVISIONS

ENTIRE CONTRACT; CHANGES: This policy with the attached papers, if any, is the entire contract between you and us. No change in this policy will be effective until approved by one of our officers. This approval must be noted on or attached to this policy. No agent may change this policy or waive any of its provisions. The application is a part of this policy.

TIME LIMIT ON CERTAIN DEFENSES:

1. Misstatements in the Application:
   After 2 years from the Issue Date only fraudulent misstatements in the application may be used to void this policy or deny any claim for loss which starts after the 2 year period.

2. Pre-Existing Conditions:
   No claim for loss which starts after 6 months from the Issue Date will be reduced or denied because a sickness or physical condition had existed before the effective date.

GRACE PERIOD: This policy has a 31 day grace period. This means that if a premium isn't paid on or before the date it's due, it may be paid during the following 31 days. During the grace period this policy will stay in force.

REINSTATEMENT: If the premium isn't paid before the grace period ends, this policy will lapse. Later acceptance of premium by us (or by any agent authorized to accept payment) without requiring an application for reinstatement, will reinstate this policy.

If we or our agent require an application, you'll get a conditional receipt for the premium. If the application is approved, this policy will be reinstated as of the approval date. Lacking such approval, this policy will be reinstated on the 45th day after the date of the conditional receipt unless we previously notified you, in writing, of our disapproval.

The reinstated policy will cover only loss which results from an injury sustained after the date of reinstatement or for sickness that starts after such date.

In all other respects your rights and our rights will remain the same, subject to any provisions noted on or attached to the reinstated policy.

Any premium we accept with a reinstatement shall be applied to a period which hasn't been previously paid for but not for any period more than 60 days before the reinstatement date.

## UNIFORM PROVISIONS (Continued)

NOTICE OF CLAIM:   Written notice of claim must be given within 60 days (6 months in Montana) after a covered loss starts or as soon as possible.  The notice can be given to us at our Home Office, at the address shown on page one or to any one of our agents.  Notice should include your name and policy number.

CLAIM FORMS: When we get notice of claim, we'll send you forms for filing proof of loss.   If these forms aren't given to you within 15 days, you'll meet the proof of loss requirements by giving us a written statement of the nature and extent of the loss.  We must get this statement within the time limit stated in the Proofs of Loss section.

PROOFS OF LOSS: For periodic payment of a continuing loss, you must give us written proof of loss within 90 days after the end of each period for which we are liable.  For any other loss, you must give us written proof within 90 days after the end of such loss.

If it wasn't reasonably possible for you to give us proof in the time required, we won't reduce nor deny the claim for this reason if the proof is filed as soon as possible.  In any event, the proof required must be given no later than one year (15 months in Hawaii) from the time specified unless you were legally unable to act.

TIME OF PAYMENT OF CLAIMS: After getting written proof of loss, we'll pay monthly all benefits then due for the loss.  Benefits for any other loss covered by this policy will be paid as soon as we receive proper written proof.

PAYMENT OF CLAIMS: Benefits will be paid to you.  Any benefits due and unpaid at your death may be paid, at our choice, either to your estate or beneficiary.

If benefits are payable to your estate or a beneficiary who can't give a valid release, we can pay up to $1,000 to anyone related to you or your beneficiary by blood or marriage, whom we consider to be entitled to the benefits.  We'll be discharged to the extent of any such payment made in good faith.

PHYSICAL EXAMINATION: We, at our expense, have the right to have you examined as often as reasonably necessary while a claim is pending.

LEGAL ACTION:  No legal action may be brought to recover on this policy within 60 days after written proof of loss has been given as required by this policy.  No such action may be brought after 3 years (5 years in Kansas; 6 years in South Carolina) from the time written proof of loss is required to be given.

CONFORMITY WITH STATE STATUTES:  Any provision of this policy which, on its effective date, is in conflict with the laws of the state in which you live on that date is amended to conform to the minimum requirements of such laws.

LONG TERM CARE POLICY

RENEWABLE AS STATED IN RENEWAL CONDITIONS.
PREMIUM RATES MAY BE CHANGED BY CLASS.

## THIS IS A LIMITED POLICY – READ IT CAREFULLY

GR–7A1

7129

# EXHIBIT B

*4790*

## NOTICE TO POLICYHOLDERS

If, at any time, you have any questions or need any information concerning this policy, you may contact us:

> **BANKERS LIFE AND CASUALTY COMPANY**
> **POLICYHOLDER SERVICE OFFICE**
> **4444 W. LAWRENCE AVENUE**
> **CHICAGO, ILLINOIS   60630**
> **PHONE (312) 777-7000.**

10890

## LIMITS ON AMOUNT OF COVERAGE

The act also limits that amount the Association is obligated to pay out: The Association cannot pay more than what the insurance company would owe under a policy or contract. Also, for any one insured life, the Association will pay a maximum of $300,000 no matter how many policies and contracts there were with the same company, even if they provided different types of coverages. Within this overall $300,000 limit, the Association will not pay more than $100,000 in cash surrender values, $100,000 in health insurance benefits, $100,000 in present value of annuities, or $300,000 in life insurance death benefits — again, no matter how many policies and contracts there were with the same company, and no matter how many different types of coverages.

---

The Tennessee Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in Tennessee. You should not rely on coverage by the Tennessee Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy.

Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus.

Insurance companies or their agents are required by law to give or send you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the guaranty association to induce you to purchase any kind of insurance policy.

The Tennessee Life and Health Insurance Guaranty Association
P.O. Box 25th Floor
511 Union Street
Nashville, Tennessee   37219

Tennessee Department of Commerce and Insurance
500 James Robertson Parkway
Nashville, Tennessee   37243

# NOTICE CONCERNING COVERAGE LIMITATIONS AND EXCLUSIONS UNDER THE LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION ACT

Residents of Tennessee who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Tennessee Life and Health Insurance Guaranty Association. The purpose of this association is to assure that policy-holders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the Guaranty Association is not unlimited, however. And, as noted in the box below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

The state law that provides for this safety-net coverage is called the Tennessee Life and Health Insurance Guaranty Association Act. The following is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the act or the rights or obligations of the guaranty association.

## COVERAGE

Generally, individuals will be protected by the Life and Health Insurance Guaranty Association if they live in this state and hold a life or health insurance contract, or an annuity, or if they are insured under a group insurance contract, issued by an insurer authorized to conduct business in Tennessee. The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

## EXCLUSIONS FROM COVERAGE

However, persons holding such policies are not protected by this Association if:

(1)  they are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);
(2)  the insurer was not authorized to do business in this state;
(3)  their policy was issued by a nonprofit hospital or medical service organization (the "Blues"), an HMO, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company or similar plan in which the policy-holder is subject to future assessments, or by an insurance exchange.

The Association also does not provide coverage for:

(1)  any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;
(2)  any policy of reinsurance (unless an assumption certificate was issued);
(3)  interest rate yields that exceed an average rate;
(4)  dividends;
(5)  credits given in connection with the administration of a policy by a group contract holder;
(6)  employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them);
(7)  unallocated annuity contracts (which give rights to group contractholders, not individuals), unless qualified under Section 403(b) of the Internal Revenue Code, except that, even if qualified under Section 403(b), unallocated annuities issued to employee benefit plans protected by the federal Pension Benefit Guaranty Corporation are not covered.

(please turn to back of page)

AC-10814-TN

(Rev. 12/89)

# POLICY GUIDE

| | Policy Page |
|---|---|
| BENEFITS | 4,5 |
| CLAIM FORMS | 7 |
| DEFINITIONS | 3,4 |
| EFFECTIVE DATE (ISSUE DATE) | 1,2 |
| EXCEPTIONS | 6 |
| NOTICE OF CLAIM | 7 |
| PRE–EXISTING CONDITIONS | 4 |
| PROOFS OF LOSS | 7 |
| RENEWAL CONDITIONS | 1 |
| RENEWAL PREMIUM | 2,3 |
| RIGHT TO RETURN POLICY | 1 |
| SCHEDULE | 2 |
| TIME LIMIT ON CERTAIN DEFENSES | 6 |
| UNIFORM PROVISIONS | 6,7 |
| WAIVER OF PREMIUM | 6 |

# BANKERS LIFE AND CASUALTY COMPANY

A Legal Reserve Stock Company . Home Office: 4444 West Lawrence Avenue . Chicago, Illinois 60630

### IMPORTANT NOTICE ABOUT STATEMENTS IN THE APPLICATION

Please read the copy of the application which is a part of this policy. Check to see if any medical history has been left out. Write us if any information shown isn't right or complete. We issued this policy on the basis that the answers to all questions are right and complete. Any wrong or left out statements could cause an otherwise valid claim to be denied.

| | | |
|---|---|---|
| NAME OF INSURED | MARTIN MARION W | 900,203,751   POLICY NUMBER |
| FIRST PREMIUM | $259.56 | SEPTEMBER 7, 1990   ISSUE DATE |
| 1ST RENEWAL DATE | NOVEMBER 7, 1990 | GR-7A1   POLICY FORM |

We, BANKERS LIFE AND CASUALTY COMPANY, promise to pay you, the insured, the benefits provided by this policy. Benefits are subject to policy definitions, provisions, limitations and exceptions.

### CONSIDERATION

We issued this policy in consideration of the application (a copy is attached) and the payment of the First Premium. This payment will keep the policy in force until the First Renewal Date. The First Renewal Date and First Premium are shown in the Schedule.

### YOUR THIRTY DAY RIGHT TO RETURN THIS POLICY

If you're not satisfied with this policy, you may return it to us within 30 days after you get it. You may return it to us by mail or to the agent who sold it. Then we'll refund any premium paid and this policy will be void.

### RENEWAL CONDITIONS

You may renew this policy on any renewal date for as long as you live. To renew, pay the renewal premium at the intervals available to you at time of renewal. It must be paid on or before its due date or during the 31 days that follow. We can't refuse to renew this policy or place any restrictions on it if you pay the premium on time.

### EFFECTIVE DATE

This policy begins at 12:01 a.m. Standard Time where you live on the Issue Date shown in the Schedule. It ends, subject to the Grace Period, at 12:01 a.m. on the date any renewal premium is due.

### READ YOUR POLICY CAREFULLY

This policy is a legal contract between you and us. See the "Policy Guide" on page 1A.

Signed by our President and Secretary on its Issue Date.

Secretary *Patricia E. Mullen*

President *B. T. Murphy*

Countersigned by_____

Licensed Resident Agent

### LONG TERM CARE POLICY

RENEWABLE AS STATED IN RENEWAL CONDITIONS.
PREMIUM RATES MAY BE CHANGED BY CLASS.

# THIS IS A LIMITED POLICY – READ IT CAREFULLY

## AMENDMENT RIDER

This rider is a part of the policy to which it's attached.  It takes effect on 1/1/89 or the Issue Date of the policy, whichever is later.

The Pre-Existing Conditions Limitation provision of the policy is deleted and replaced with the following:

A pre-existing condition is a medical condition for which, prior to the effective date of coverage, medical advice or treatment was recommended by, or received from, a doctor within the 6 month period before the effective date.

Pre-existing conditions aren't covered unless the loss begins more than 6 months after the effective date of coverage.

## CONDITIONS

This rider is subject to all terms, conditions, limitations and exceptions of the policy except where changed by this rider.

BANKERS LIFE AND CASUALTY COMPANY

*Patricia E. Wullin*

Secretary

10646

APPLICATION NO. 0913056120

BANKERS LIFE AND CASUALTY COMPANY

SCHEDULE

| | | |
|---|---|---|
| NAME OF INSURED | MARTIN MARION W | 900,203,751 | POLICY NUMBER |
| FIRST PREMIUM | $259.56 | SEPTEMBER  7, 1990 | ISSUE DATE |
| 1ST RENEWAL DATE | NOVEMBER  7, 1990 | GR-7A1 | POLICY FORM |

| INSURED | PLAN NO. | COVERAGE | ANNUAL PREMIUM |
|---|---|---|---|
| MARTIN MARION W   FEMALE  BIRTHDATE    /21   AGE 69 | 7A1 | BENEFIT PLAN II    $90.00 DAILY BENEFIT  ELIMINATION PERIOD:    100 DAYS  MAXIMUM BENEFIT PERIOD:    LIFETIME    ✗ | $1511.99 |

TOTAL ANNUAL PREMIUM     $1,511.99

PREMIUM PAYMENT SERVICE PLAN ALTERNATIVE MONTHLY PREMIUM     $129.78

Confidential Information
REDACTED

**0 9 1 3 0 5 6 1 2**

## APPLICATION FOR INSURANCE TO

**BANKERS LIFE AND CASUALTY COMPANY**
4444 W. Lawrence Ave., Chicago, IL 60630

**1** Martin  Marion  W.
*(Print Applicant's Full Name (Last, First & Middle Initial)*

I apply for:  ☑ NEW POLICY
☐ EXCHANGE
  (List all benefits desired.)
☐ INCREASE OF BENEFITS—"UPGRADE"
  (List all benefits desired including existing benefits.)

☐ REINSTATEMENT AND EXCHANGE
  (List all benefits desired.)
☐ REINSTATEMENT
  (List all benefits desired.)

Policy No(s) of Bankers policy(ies) to be changed _____

**2** Date of Birth (Mo/Day/Yr) __/21/__  Ft. 5 inches 6  Height

Age: 69  Male ☐  Female ☑  Weight Pounds 135

Marital Status
☑ Married   ☐ Divorced
☐ Single    ☐ Widowed
Telephone # — Home [ 901 ]
Telephone # — Work [    ]

**3** HOME ADDRESS
Street or P.O. Box _____
City/Town  Jackson  State  TN
Zip Code  38301  Phone No. (901)

Living Site
☑ Own Home      ☐ Elderly Housing
☐ Apartment     ☐ Other (Please explain)
☐ With Relatives

**4** Form # 74L
Rider # _____
  # _____
  # _____
Special Issue Date  9/7/90  (Mo/Day/Yr)

☐ No

Benefits
☐ Plan 1 $ _____
   (Daily Amount)
☑ Plan 2 $ 90
   (Daily Amount)
☐ Increasing Daily Benefit Amount
☐ Private Duty Nurse

Maximum Benefit Period
☐ 1 Year
☐ 2 Years
☐ 3 Years
☐ 5 Years
☑ Lifetime

Elimination Period
☐ 0 Days
☐ 20 Days
☑ 100 Days
☐ 150 Days

9-1-3

**5** QUALIFYING INFORMATION
To the best of your knowledge and belief:

|  | YES | NO |
|---|---|---|
| a. Have you been rejected for nursing home coverage? | | ☑ |
| b. Have you been confined to a hospital within the past 60 days, or to a nursing home within the past year? | | ☑ |
| c. Have you been advised by a doctor to seek medical treatment or care in either a hospital or nursing home? | | ☑ |
| d. Are you bedridden, confined to a wheelchair, or do you require help or supervision to perform everyday living activities? | | ☑ |
| e. Have you, due to mental or physical disability, authorized any person or institution to legally act in your behalf and take over your personal business transactions? | | ☑ |

f. Do you now have, or have you had medical advice or treatment within the past two years for:

| | YES | NO |
|---|---|---|
| 1. Heart disease requiring hospitalization? | | ☑ |
| 2. Paralysis, or Stroke? | | ☑ |
| 3. Diabetes requiring insulin; Amputation due to disease or injury? | | ☑ |
| 4. Open Colostomy; Kidney disease requiring dialysis; Cirrhosis of the Liver? | | ☑ |
| 5. Emphysema, or other obstructive lung disease? | | ☑ |
| 6. Arthritis causing crippling, limitation of motion, or requiring surgery for joint replacement? | | ☑ |

| | YES | NO |
|---|---|---|
| 7. Alzheimer's Disease, Irreversible Dementia, Parkinson's Disease or any other organic brain disorder? | | ☑ |
| 8. Mental Illness, Alcoholism or Drug Abuse? | | ☑ |
| 9. Degenerative bone disease, Osteoporosis, fractured hip or spine? | | ☑ |
| 10. Leukemia, or Cancer (other than skin)? | | ☑ |
| 11. An immune deficiency disorder, AIDS, AIDS related complex (ARC), AIDS related conditions, or test results indicating exposure to the AIDS virus? | | ☑ |

g. Are you now taking or using, or within the past 30 days, taken, or used prescription drugs?  YES ☑  NO ☐
   If yes, check box showing how many:  ☐ 1  ☐ 2  ☐ 3 or more.

h. Have you received medical treatment or advice within the past two years for any condition(s) not listed above?
   ☑ YES  ☐ No   If yes, give details below:

| Condition | Onset Mo/Yr | Operation Mo/Yr | Recovery Mo/Yr | Days in Hosp. | Days in Nursing Home | Name/Address/Phone of Doctor/Hospital/Nursing Home |
|---|---|---|---|---|---|---|
| Estrogen - hormone control | Taken for syts | No surgery Required | Lady | | | Dr. Roy Douglas Jer Summary 901-425-1932 |

i. Do you receive Federal, state or local government financial assistance in any form, such as Supplemental Security Income or Medicaid?  YES ☐  NO ☑

10197

Confidential Information
REDACTED

**6** If eligible for Medicare:

   a. Are you insured under Part A and Part B of Medicare?    ☑ Yes ☐ No

   b. Is the state paying your Part B premium?    ☐ Yes ☑ No

   c. Are you enrolled in a Health Maintenance Organization or a similar program?    ☐ Yes ☑ No

---

**7** HEALTH INSURANCE IN FORCE AND APPLIED FOR (excluding this application) ☐ None

| Coverage | Medicare Supplement Part A ☑ Part B ☑ | Nursing Home: _____ Daily Benefit _____ Maximum Benefit Period *NONE* |
|---|---|---|
| Company | *Group* | |

---

**8** Will any existing Life, Health, Accident & Sickness, Disability Income or Annuity Contract(s) be replaced or changed if a proposed policy is issued?     Yes ☐ No ☑

If answered "Yes," show company, policy number and ending date(s) in Question 7.

---

**9** ACKNOWLEDGEMENTS

The Applicant, to the best of his or her knowledge and belief, represents and agrees as follows: **1.** That the statements contained in the application concerning past and present health are complete, true and correct. **2.** Any policy issued as a result of this application shall, together with the application, constitute a single and entire contract of insurance. **3.** No agent or any other person is authorized to accept risks, pass upon insurability, make or modify contracts or waive any of the Company's rights or requirements. **4.** Any insurance issued as a result of the application will either: a. Not take effect unless and until the full first premium is paid and the policy is delivered during such person's lifetime and while such person is in the condition of health set forth in the application, or: b. Take effect only as specified in the Conditional Receipt, if any, attached to this application. **5.** Policy and rider form provisions concerning exceptions, exclusions, limitations and renewal which have been applied for have been explained and are understood. **6.** Ownership. The Applicant shall be the owner of any insurance applied for. **7.** The Applicant can afford to pay the premium for this insurance and for all other insurance that will remain in force in this or any other company.

**REPRESENTATION**

THE UNDERSIGNED APPLICANT AND AGENT ACKNOWLEDGE THAT THE APPLICANT HAS READ OR HAD READ TO HIM/HER THE COMPLETED APPLICATION AND THAT HE/SHE REALIZES THAT ANY FALSE STATEMENTS OR MISREPRESENTATION THEREIN MAY RESULT IN LOSS OF COVERAGE UNDER THE POLICY. THE APPLICANT ACKNOWLEDGES RECEIPT OF ANY APPROPRIATE OUTLINE OF COVERAGE.

**PAYMENT OF PREMIUM**

READ THE CONDITIONAL RECEIPT BEFORE SIGNING. This is to certify that I have read the receipt and fully understand its conditions and limitations. I understand that no agent can waive or change the conditions and limitations of this receipt.

**AUTHORIZATION**

In connection with an application for insurance currently made to Bankers Life and Casualty Company, I hereby authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, or other organization, institution or person, that has any records or knowledge of me or of my health, to disclose to the Company or its reinsurers any such information upon presentation of this authorization or reproduction thereof. This authorization will be valid for a period of 2 years and 6 months from the date signed. I also acknowledge receipt of the Investigative Consumer Report Notice.

---

**SIGNATURES**

Dated at City _*Jackson*_ State _*TN*_ Zip _*38301*_

this _*7th*_ Day of _*September*_ 19 _*90*_

Signature of Applicant X _*Merian W. Martin*_

Social Security Number _____

I have witnessed the signature of the Applicant.

I certify that I asked all the questions and truly and accurately recorded the answers contained herein. To the best of my knowledge and belief, the insurance applied for ☐ is or is likely ☑ is not or is not likely to replace or change any existing policy(ies) or contract(s).

Signature of Licensed Resident

   Agent X _____ No _*1658*_ Office _*462*_

Signature of Licensed Resident

   Agent X _____ No. _____

Note: Agent must submit completed Agent Statement with this application.

Confidential Information
REDACTED

## RENEWAL PREMIUM

We may change the premium for this policy. We can only change the premium if we change it for all policies like yours in your state on a class basis. We'll tell you at least 31 days in advance of any change in the premium.

If you have selected OPTIONAL BENEFIT – Increased Daily Benefit Coverage, your premium shown in the Schedule (or as changed on a class basis) for the policy (excluding any optional or benefit riders) will increase five percent (5%) each year for up to the first 10 years your policy is in force. We'll change the premium on each policy anniversary. You can tell us to delete this benefit at any time, and your benefits and premium will remain at the amounts then in effect.

## POLICY DEFINITIONS

"You", "your" and "yours" refer to the Insured named in the Schedule.

"We", "us" and "our" refer to Bankers Life and Casualty Company.

"Injury" means bodily injury caused by an accident which results in loss covered by this policy. The loss must begin while the policy is in force.

"Sickness" means illness or disease which results in loss covered by this policy. The loss must begin while the policy is in force.

"Mental illness" means a neurosis, psychoneurosis, psychopathy, psychosis or mental or emotional disease or disorder of any kind. It doesn't mean a demonstrable organic brain disease, such as Parkinson's Disease, Alzheimer's Disease or senile dementia.

"Hospital" means a place which:

1. is legally operated for the care and treatment of sick and injured persons at their expense;

2. is primarily engaged in providing medical, diagnostic and surgical facilities (either on its premises or in facilities available to the hospital on a formal prearranged basis);

3. has continuous 24 hour nursing services by or under the supervision of registered graduate professional nurses (R.N.);

4. has a staff of one or more doctors available at all times.

"Hospital" doesn't mean convalescent, nursing, rest or skilled nursing facility. It doesn't mean a place primarily operated for treatment of the aged, drug addict or alcoholic, nor a special unit of a hospital used by or for any of the above. It also doesn't mean a long term mental facility.

"Nursing Home" means a place which:

1. is legally operated to provide nursing care (skilled, intermediate, custodial) for sick and injured persons at their expense;

2. has 24 hour nursing service by or under the supervision of a licensed nurse;

3. has beds for patients who need nursing care; and

4. operates under the supervision of a doctor.

"Nursing Home" also means a wing, area or floor of a hospital specifically set aside for nursing care.

It doesn't mean a hospital, a place that primarily treats the mentally ill, drug addicts or alcoholics, or a place owned or operated by a member of your family.

"Doctor" means any licensed practitioner of the healing arts acting within the scope of his or her license in treating an injury or sickness. It doesn't include you or a member of your family.

## POLICY DEFINITIONS (Continued)

"Custodial Care" means care which is mainly for the purpose of meeting personal needs. It could be provided by persons without professional skills or training. Such examples are: help in walking, getting in and out of bed, bathing, dressing, eating and taking medicine.

"Skilled and Intermediate Care" means any level of care greater than custodial care.

"Elimination Period" means the number of days you must stay in a Nursing Home before we'll start to pay a benefit under this policy.

"Maximum Benefit Period" means the total period for which daily Nursing Home confinement benefits are payable under this policy for any one period of confinement.

### PRE-EXISTING CONDITIONS LIMITATION  See rider 1064b

A pre-existing condition is a medical condition for which, prior to the effective date of coverage:

1. Medical advice or treatment was recommended by, or received from, a doctor within the 6 month period before the effective date; or

2. Symptoms existed which would cause an ordinarily prudent person to seek diagnosis, care or treatment within the 6 month period before the effective date of coverage.

Pre-existing conditions aren't covered unless the loss begins more than 6 months after the effective date of coverage.

### NURSING HOME CARE BENEFITS – PLAN I

When the Schedule on page 2 shows Benefit Plan I, we'll pay Nursing Home Care benefits when you are, for medical reasons, necessarily confined in a Nursing Home due to injury or sickness. We'll pay the Daily Benefit for each day of confinement beginning after the Elimination Period, if any, for any one period of confinement. We won't pay for more than the Maximum Benefit Period for any one period of confinement. The Daily Benefit, Elimination Period and the Maximum Benefit Period are shown in the Schedule.

Before benefits are payable, the Nursing Home Care stay must:

1. Follow a hospital stay of 3 or more days in a row;

2. Begin within 30 days after that hospital stay;

3. Be due to the same or related injury or sickness as the prior hospital stay;

4. Be certified by your doctor that the Nursing Home Care stay, whether for skilled, intermediate, or custodial care, is medically necessary.

### ONE PERIOD OF CONFINEMENT – PLAN I

One period of confinement starts when you enter a hospital for a stay of 3 or more days in a row. It ends when there has been no additional hospital or Nursing Home stays, for the cause or causes of the prior confinement, for 6 months in a row.

Then, provided the policy is in force, a new period of confinement begins and a new Elimination Period, if any, will apply.

## NURSING HOME CARE BENEFITS – PLAN II

When the Schedule on page 2 shows Benefit Plan II, we'll pay Nursing Home Care benefits when you are, for medical reasons, necessarily confined in a Nursing Home due to injury or sickness. We'll pay the Daily Benefit for each day of confinement beginning after the Elimination Period, if any, for any one period of confinement. We won't pay for more than the Maximum Benefit Period for any one period of confinement. The Daily Benefit, Elimination Period and the Maximum Benefit Period are shown in the Schedule.

Before benefits are payable, the Nursing Home stay must be certified by your doctor that the Nursing Home stay, whether for skilled, intermediate or custodial, is medically necessary.

## ONE PERIOD OF CONFINEMENT – PLAN II

One period of confinement starts when you enter a Nursing Home. It ends when there has been no additional Nursing Home stays, for the cause or causes of the prior confinement, for 6 months in a row.

Then, provided the policy is in force, a new period of confinement begins and a new Elimination Period, if any, will apply.

## AMBULANCE BENEFIT

We'll pay the expense incurred up to $25 per trip for ambulance service to or from a Nursing Home. We won't pay for ambulance expense incurred beyond the Maximum Benefit Period.

## OPTIONAL COVERAGE

INCREASED DAILY BENEFIT COVERAGE – To have this coverage, the entry INCREASED DAILY BENEFIT must be shown in the Schedule. When coverage is shown, the Daily Benefit amount shown in the Schedule will increase by five percent (5%) on each policy anniversary while your policy is in force. We'll do this for up to 10 years. Premium for the Daily Benefit amount will also increase five percent (5%) as stated in the Renewal Premium provision on page 3.

You may stop this benefit change at the Daily Benefit amount then in effect on any policy anniversary by telling us to freeze the benefit amount and premium then in effect.

We won't increase benefit coverage for more than 10 years.

For any one period of confinement, we'll pay the Daily Benefit amount then in effect when one period of confinement begins.

IN-HOSPITAL PRIVATE DUTY NURSE COVERAGE – As used in this provision a "Private Duty Nurse" means a professional nurse who is legally entitled to use the title of Registered Nurse (RN) or Licensed Practical Nurse (LPN), and who isn't your spouse, child of a spouse or your child.

To have this coverage, an entry for PRIVATE DUTY NURSE must show in the Schedule. When this coverage is shown, we'll pay $30 per 8 hour shift, up to 2 shifts per day, for services of a Private Duty Nurse while you are confined in a hospital. Such services must be under the order and direction of your doctor. We won't pay for more than a total of 90 days for any one period of confinement.

## EXCEPTIONS

This policy doesn't cover loss:

1.  Due to war or act of war;

2.  Due to intentionally self-inflicted injury while sane or insane.

3.  For stays in government facilities unless a charge is made for which you are obligated to pay; and

4.  Due to mental illness or nervous disorders without demonstrable organic disease. (Loss due to Parkinson's Disease, Alzheimer's Disease or senile dementia are covered.)

## WAIVER OF PREMIUM

After you've been paid Nursing Home Care benefits under this policy for 90 consecutive days, we'll waive the payment of any premium (including premium for any attached benefit riders) coming due thereafter. We'll waive the premium while consecutive days of Nursing Home Care benefits continue to be paid under this policy.

## UNIFORM PROVISIONS

ENTIRE CONTRACT; CHANGES: This policy with the attached papers, if any, is the entire contract between you and us. No change in this policy will be effective until approved by one of our officers. This approval must be noted on or attached to this policy. No agent may change this policy or waive any of its provisions. The application is a part of this policy.

TIME LIMIT ON CERTAIN DEFENSES:

1.  Misstatements in the Application:
    After 2 years from the Issue Date only fraudulent misstatements in the application may be used to void this policy or deny any claim for loss which starts after the 2 year period.

2.  Pre-Existing Conditions:
    No claim for loss which starts after 6 months from the Issue Date will be reduced or denied because a sickness or physical condition had existed before the effective date.

GRACE PERIOD: This policy has a 31 day grace period. This means that if a premium isn't paid on or before the date it's due, it may be paid during the following 31 days. During the grace period this policy will stay in force.

REINSTATEMENT: If the premium isn't paid before the grace period ends, this policy will lapse. Later acceptance of premium by us (or by any agent authorized to accept payment) without requiring an application for reinstatement, will reinstate this policy.

If we or our agent require an application, you'll get a conditional receipt for the premium. If the application is approved, this policy will be reinstated as of the approval date. Lacking such approval, this policy will be reinstated on the 45th day after the date of the conditional receipt unless we previously notified you, in writing, of our disapproval.

The reinstated policy will cover only loss which results from an injury sustained after the date of reinstatement or for sickness that starts after such date.

In all other respects your rights and our rights will remain the same, subject to any provisions noted on or attached to the reinstated policy.

Any premium we accept with a reinstatement shall be applied to a period which hasn't been previously paid for but not for any period more than 60 days before the reinstatement date.

7A1

7071

## UNIFORM PROVISIONS (Continued)

NOTICE OF CLAIM:  Written notice of claim must be given within 60 days (6 months in Montana) after a covered loss starts or as soon as possible.  The notice can be given to us at our Home Office, at the address shown on page one or to any one of our agents.  Notice should include your name and policy number.

CLAIM FORMS: When we get notice of claim, we'll send you forms for filing proof of loss.  If these forms aren't given to you within 15 days, you'll meet the proof of loss requirements by giving us a written statement of the nature and extent of the loss.  We must get this statement within the time limit stated in the Proofs of Loss section.

PROOFS OF LOSS: For periodic payment of a continuing loss, you must give us written proof of loss within 90 days after the end of each period for which we are liable. For any other loss, you must give us written proof within 90 days after the end of such loss.

If it wasn't reasonably possible for you to give is proof in the time required, we won't reduce nor deny the claim for this reason if the proof is filed as soon as possible.  In any event, the proof required must be given no later than one year (15 months in Hawaii) from the time specified unless you were legally unable to act.

TIME OF PAYMENT OF CLAIMS: After getting written proof of loss, we'll pay monthly all benefits then due for the loss.  Benefits for any other loss covered by this policy will be paid as soon as we receive proper written proof.

PAYMENT OF CLAIMS: Benefits will be paid to you.  Any benefits due and unpaid at your death may be paid, at our choice, either to your estate or beneficiary.

If benefits are payable to your estate or a beneficiary who can't give a valid release, we can pay up to $1,000 to anyone related to you or your beneficiary by blood or marriage, whom we consider to be entitled to the benefits.  We'll be discharged to the extent of any such payment made in good faith.

PHYSICAL EXAMINATION: We, at our expense, have the right to have you examined as often as reasonably necessary while a claim is pending.

LEGAL ACTION: No legal action may be brought to recover on this policy within 60 days after written proof of loss has been given as required by this policy.  No such action may be brought after 3 years (5 years in Kansas; 6 years in South Carolina) from the time written proof of loss is required to be given.

CONFORMITY WITH STATE STATUTES: Any provision of this policy which, on its effective date, is in conflict with the laws of the state in which you live on that date is amended to conform to the minimum requirements of such laws.

GR-7A1              Page 7              7129

LONG TERM CARE POLICY

RENEWABLE AS STATED IN RENEWAL CONDITIONS.
PREMIUM RATES MAY BE CHANGED BY CLASS.

---

# THIS IS A LIMITED POLICY – READ IT CAREFULLY

---

# EXHIBIT C

*19 94*

## NOTICE TO POLICYHOLDERS

If, at any time, you have any questions or need any information concerning this policy, you may contact us:

BANKERS LIFE AND CASUALTY COMPANY
POLICYHOLDER SERVICE OFFICE
222 MERCHANDISE MART PLAZA
CHICAGO, ILLINOIS   60654-2001
PHONE (312) 396-6000

10890

*19-94*

## NOTICE TO POLICYHOLDERS

If, at any time, you have any questions or need any information concerning this policy, you may contact us:

**BANKERS LIFE AND CASUALTY COMPANY
POLICYHOLDER SERVICE OFFICE
222 MERCHANDISE MART PLAZA
CHICAGO, ILLINOIS   60654-2001
PHONE (312) 396-6000**

10890

---

## NOTICE CONCERNING COVERAGE LIMITATIONS AND EXCLUSIONS UNDER THE LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION ACT

---

Residents of Tennessee who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Tennessee Life and Health Insurance Guaranty Association. The purpose of this association is to assure that policy-holders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the Guaranty Association is not unlimited, however. And, as noted in the box below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

The state law that provides for this safety-net coverage is called the Tennessee Life and Health Insurance Guaranty Association Act. The following is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the act or the rights or obligations of the guaranty association.

## COVERAGE

Generally, individuals will be protected by the Life and Health Insurance Guaranty Association if they live in this state and hold a life or health insurance contract, or an annuity, or if they are insured under a group insurance contract, issued by an insurer authorized to conduct business in Tennessee. The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

## EXCLUSIONS FROM COVERAGE

However, persons holding such policies are not protected by this Association if:

(1)  they are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);
(2)  the insurer was not authorized to do business in this state;
(3)  their policy was issued by a nonprofit hospital or medical service organization (the "Blues"), an HMO, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company or similar plan in which the policy-holder is subject to future assessments, or by an insurance exchange.

The Association also does not provide coverage for:

(1)  any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;
(2)  any policy of reinsurance (unless an assumption certificate was issued);
(3)  interest rate yields that exceed an average rate;
(4)  dividends;
(5)  credits given in connection with the administration of a policy by a group contract holder;
(6)  employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them);
(7)  unallocated annuity contracts (which give rights to group contractholders, not individuals), unless qualified under Section 403(b) of the Internal Revenue Code, except that, even if qualified under Section 403(b), unallocated annuities issued to employee benefit plans protected by the federal Pension Benefit Guaranty Corporation are not covered.

(please turn to back of page)

AC-10814-TN

(Rev. 12/89)

## LIMITS ON AMOUNT OF COVERAGE

The act also limits that amount the Association is obligated to pay out. The Association cannot pay more than what the insurance company would owe under a policy or contract. Also, for any one insured life, the Association will pay a maximum of $300,000 no matter how many policies and contracts there were with the same company, even if they provided different types of coverages. Within this overall $300,000 limit, the Association will not pay more than $100,000 in cash surrender values, $100,000 in health insurance benefits, $100,000 in present value of annuities, or $300,000 in life insurance death benefits — again, no matter how many policies and contracts there were with the same company, and no matter how many different types of coverages.

---

The Tennessee Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in Tennessee. You should not rely on coverage by the Tennessee Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy.

Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus.

Insurance companies or their agents are required by law to give or send you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the guaranty association to induce you to purchase any kind of insurance policy.

The Tennessee Life and Health Insurance Guaranty Association
P.O. Box 25th Floor
511 Union Street
Nashville, Tennessee   37219

Tennessee Department of Commerce and Insurance
500 James Robertson Parkway
Nashville, Tennessee   37243

# BANKERS LIFE AND CASUALTY COMPANY

A Legal Reserve Stock Company • Home Office: 222 Merchandise Mart Plaza • Chicago, Illinois 60654-2001

## IMPORTANT NOTICE ABOUT STATEMENTS IN THE APPLICATION

CAUTION: THE ISSUANCE OF THIS LONG-TERM CARE INSURANCE POLICY IS BASED UPON YOUR RESPONSES TO THE QUESTIONS ON YOUR APPLICATION. A COPY OF YOUR APPLICATION WILL BE ATTACHED TO THE POLICY. IF YOUR ANSWERS ARE INCORRECT OR UNTRUE, WE HAVE THE RIGHT TO DENY BENEFITS OR RESCIND YOUR POLICY. THE BEST TIME TO CLEAR UP ANY QUESTIONS IS NOW, BEFORE A CLAIM ARISES. IF, FOR ANY REASON, ANY OF YOUR ANSWERS ARE INCORRECT, CONTACT US AT THE ABOVE ADDRESS.

| NAME OF INSURED | MARTIN EDMUND D JR | 940,194,981 | POLICY NUMBER |
|---|---|---|---|
| FIRST PREMIUM | $622.88 | AUGUST 7, 1994 | ISSUE DATE |
| FIRST RENEWAL DATE | OCTOBER 7, 1994 | GR-N050 | POLICY FORM |

We, BANKERS LIFE AND CASUALTY COMPANY, promise to pay you, the insured, the benefits provided by this policy. Benefits are subject to this policy's definitions, provisions, limitations and exceptions.

## RENEWAL CONDITIONS

You may renew this policy for each family member on any renewal date as long as such member lives. To renew, pay the renewal premium at the intervals available to you at time of renewal. You must pay it by its due date or during the 31 days that follow. We can't refuse to renew this policy or place any restrictions on it if you pay the renewal premium on time.

## YOUR THIRTY DAY RIGHT TO RETURN THIS POLICY

If you're not satisfied with this policy, you may return it to us within 30 days after you get it. You may return it to us by mail or to the agent who sold it. Then we'll refund any premium paid and this policy will be void.

## EFFECTIVE DATE

This policy begins at 12:01 a.m. Standard Time where you live on the Issue Date shown in the Schedule. It ends, subject to the grace period, at 12:01 a.m. on the date any renewal premium is due.

## READ YOUR POLICY CAREFULLY

This policy is a legal contract between you and us. See the "POLICY GUIDE" on page 1A.

Signed by our President and Secretary on its Issue Date.

Secretary _____     President *B.T. Murphy*

Countersigned by _____
                  Licensed Resident Agent

## LONG TERM CARE POLICY

RENEWABLE AS STATED IN THE RENEWAL CONDITIONS. PREMIUM RATES MAY BE CHANGED BY CLASS.

NOTICE TO BUYER: THIS INSURANCE MAY NOT COVER ALL OF THE COSTS ASSOCIATED WITH LONG TERM CARE INCURRED BY THE BUYER DURING THE PERIOD OF COVERAGE. THE BUYER IS ADVISED TO REVIEW CAREFULLY ALL POLICY LIMITATIONS.

**POLICY GUIDE**

**PAGE**

BENEFITS .................................... 6,7,8,9

CLAIM FORMS ................................ 10

DEFINITIONS ................................ 3,4,5,6

EFFECTIVE DATE (ISSUE DATE) ..................... 1

EXCEPTIONS .................................... 9

EXTENSION OF BENEFITS ........................... 6

NOTICE OF CLAIM ............................... 10

OPTIONAL BENEFITS ............................. 7,8

PROOFS OF LOSS ................................ 10

RENEWAL CONDITIONS ............................. 1

RENEWAL PREMIUM ............................... 3

RIGHT TO RETURN POLICY ......................... 1

SCHEDULE ...................................... 2

TIME LIMIT ON CERTAIN DEFENSES .................. 9

UNIFORM PROVISIONS ........................... 9,10

WAIVER OF PREMIUM ............................. 9

APPLICATION NO. 0719001090

BANKERS LIFE AND CASUALTY COMPANY
222 MERCHANDISE MART PLAZA   CHICAGO, ILLINOIS 60654-2001
TELEPHONE (312) 396-6000

SCHEDULE

NAME OF INSURED    MARTIN EDMUND D JR              940,194,981    POLICY NUMBER

FIRST PREMIUM      $622.88                    AUGUST   7, 1994    ISSUE DATE

1ST RENEWAL DATE   OCTOBER   7, 1994              GR-N050    POLICY FORM

THE FOLLOWING BENEFITS APPLY TO THE FAMILY MEMBER SHOWN BELOW

THE FOLLOWING BENEFIT PERCENTAGE, ELIMINATION PERIOD, DAILY MAXIMUM BENEFIT
AMOUNTS AND MAXIMUM BENEFIT PERIOD APPLY TO PART I COVERED EXPENSES DURING
ANY ONE PERIOD OF EXPENSE (NURSING HOME CARE AND ALTERNATE FACILITY CARE)

    BENEFIT PERCENTAGE:                    100%
    ELIMINATION PERIOD:                 90 DAYS
    DAILY MAXIMUM BENEFIT AMOUNTS:
       NURSING HOME CARE                  $90.00
       ALTERNATE FACILITY CARE            $63.00
    MAXIMUM BENEFIT PERIOD:             LIFETIME

THE BENEFIT INCREASES PART III
OPTION APPLIES TO ALL DAILY
BENEFIT AMOUNTS SHOWN                        NOT COVERED

                                                             ANNUAL
FAMILY MEMBER                    PLAN NO.                     PREMIUM

MARTIN EDMUND D JR          MALE
BIRTHDATE      /23   AGE 70     N050                          $1533.04

PART II COVERED EXPENSES (HOME HEALTH CARE, RESPITE CARE, ADULT
DAY CARE AND HOSPICE CARE)                               NOT COVERED

                     187R      RETURN OF PREMIUM           NOT COVERED
                               BENEFIT RIDER

THE PREMIUM AMOUNT SHOWN ABOVE REFLECTS THE DISCOUNT PROVIDED BY THE ATTACHED
PREMIUM DISCOUNT RIDER

Confidential Information
REDACTED         SCHEDULE IS CONTINUED ON NEXT PAGE ....

APPLICATION NO. 0719001090

BANKERS LIFE AND CASUALTY COMPANY

SECOND PAGE OF SCHEDULE

| NAME OF INSURED | MARTIN EDMUND D JR | 940,194,981 | POLICY NUMBER |
|---|---|---|---|
| FIRST PREMIUM | $622.88 | AUGUST  7, 1994 | ISSUE DATE |
| 1ST RENEWAL DATE | OCTOBER  7, 1994 | GR-N050 | POLICY FORM |

THE FOLLOWING BENEFITS APPLY TO THE FAMILY MEMBER SHOWN BELOW

THE FOLLOWING BENEFIT PERCENTAGE, ELIMINATION PERIOD, DAILY MAXIMUM BENEFIT
AMOUNTS AND MAXIMUM BENEFIT PERIOD APPLY TO PART I COVERED EXPENSES DURING
ANY ONE PERIOD OF EXPENSE (NURSING HOME CARE AND ALTERNATE FACILITY CARE)

```
    BENEFIT PERCENTAGE:                 100%
    ELIMINATION PERIOD:                 90 DAYS
    DAILY MAXIMUM BENEFIT AMOUNTS:
        NURSING HOME CARE               $90.00
        ALTERNATE FACILITY CARE         $63.00
    MAXIMUM BENEFIT PERIOD:             LIFETIME
```

THE BENEFIT INCREASES PART III
OPTION APPLIES TO ALL DAILY
BENEFIT AMOUNTS SHOWN                    NOT COVERED

| FAMILY MEMBER | PLAN NO. | ANNUAL PREMIUM |
|---|---|---|
| MARTIN MARION W          FEMALE<br>BIRTHDATE       '21   AGE 73     N050 | | $2083.84 |

PART II COVERED EXPENSES (HOME HEALTH CARE, RESPITE CARE, ADULT
DAY CARE AND HOSPICE CARE)                                      NOT COVERED

                    187R     RETURN OF PREMIUM            NOT COVERED
                             BENEFIT RIDER

THE PREMIUM AMOUNT SHOWN ABOVE REFLECTS THE DISCOUNT PROVIDED BY THE ATTACHED
PREMIUM DISCOUNT RIDER

Confidential Information
REDACTED

SCHEDULE IS CONTINUED ON NEXT PAGE ....

APPLICATION NO. 0719001090

## BANKERS LIFE AND CASUALTY COMPANY

### THIRD PAGE OF SCHEDULE

| NAME OF INSURED | MARTIN EDMUND D JR | 940,194,981 | POLICY NUMBER |
|---|---|---|---|
| FIRST PREMIUM | $622.88 | AUGUST 7, 1994 | ISSUE DATE |
| 1ST RENEWAL DATE | OCTOBER 7, 1994 | GR-N050 | POLICY FORM |

TOTAL ANNUAL PREMIUM $3,616.88

PREMIUM PAYMENT SERVICE PLAN MONTHLY
$311.44

# BANKERS LIFE AND CASUALTY COMPANY
**Home Office: 222 Merchandise Mart Plaza • Chicago, Illinois 60654-2001**

### PREMIUM DISCOUNT RIDER

Effective Date_____

This rider is a part of the policy to which it's attached. It takes effect on the Rider Effective Date shown above. If no date is shown, it takes effect on the policy's Issue Date.

The following paragraph is added to the policy's "Renewal Premium" provision:

   In consideration of your application for coverage for your spouse, we have discounted your and your spouse's premium for the policy and any attached return of premium benefit rider.

   Except for either your or your spouse's death, we reserve the right to remove such discount on the renewal date that coincides with or next follows the date your or your spouse's coverage ends.

This rider is subject to all terms, conditions, limitations and exceptions of the policy to which it's attached. We reserve the right to change premium rates as provided in the policy.

BANKERS LIFE AND CASUALTY COMPANY

Secretary

1999

# APPLICATION FOR INSURANCE TO

**BANKERS LIFE AND CASUALTY COMPANY**
4444 W. Lawrence Avenue • Chicago, IL 60630-4501

**1.** *Martin  Edmund D. Jr.*
(Print Applicant's Full Name (Last, First. & Middle Initial)

I apply for ☐ NEW POLICY ☐ ADDED MEMBER ☒ EXCHANGE ☐ REINSTATEMENT ☐ INCREASE OF BENEFITS — "UPGRADE"
(list all benefits desired including existing benefits for upgrade.)

Policy No(s) of Bankers Policy(ies) to be changed _900 204 808_  _900 20375)_

**2.** First Name & Initial of Each Person to be Insured (and Last if not same as Applicant)

| | Applicant | Spouse |
|---|---|---|
| First Name & Initial | Edmund D. | Marian L. |
| Date of Birth (Mo/Day/Yr) | /23 | /21 |
| Age/Sex | 70 / M | 71 / F |
| Height (Feet & Inches)/Weight (In Pounds) | 5, 6½/190 | 5, 6/135 |

**3.** HOME ADDRESS
Street or P.O. Box
City, Town _Jackson_
State _TN_   Zip Code _38301_
Telephone # — Home (901)   Telephone # — Work

**4.** Form # _N050_   Special Issue Date _8-7-94_   ☐ No

### POLICY OPTIONS

| | | |
|---|---|---|
| **Nursing Home Care** | | **Home Health Care** |
| Benefit Percentage | 100% | Benefit Percentage 100% |
| Elimination Period | 90 Days | Elimination Period 14 Days |
| Daily Maximum | $ 90 | Daily Maximum $ |
| Maximum Benefit Period | Life | Maximum Benefit Period |
| Compounding Increases Option YES ☐ NO ☒ | | Equal Increases Option YES ☐ NO ☒ |

### RIDER OPTIONS

| Rider # | Applicant | Spouse | (Daily Indemnity) |
|---|---|---|---|
| | $ | $ | |
| | ☐ | ☐ | |
| | ☐ | ☐ | |
| | ☐ | ☐ | |
| | ☐ | ☐ | |

**5.** QUALIFYING INFORMATION
To the best of your knowledge and belief:

| | Applicant | Spouse |
|---|---|---|
| | YES  NO | YES  NO |
| a. Have you, within the past 60 days, been rejected for similar coverage? | ☐ ☒ | ☐ ☒ |
| b. Do you require human assistance when away from your principal place of residence? | ☐ ☒ | ☒ ☐ |
| c. Do you use a wheelchair, walker, crutches, brace or any other device to support mobility? | ☐ ☒ | ☐ ☒ |
| d. Have you, due to mental or physical disability, authorized any person or institution to legally act in your behalf, and take over your personal business transactions? | ☐ ☒ | ☐ ☒ |

e. Have you, in the past three years, seen a doctor professionally or had medical treatment for:

| | Applicant | Spouse | | Applicant | Spouse |
|---|---|---|---|---|---|
| | YES NO | YES NO | | YES NO | YES NO |
| 1. Heart trouble? | ☐ ☒ | ☐ ☒ | 7. Alzheimer's Disease, Irreversible Dementia, Parkinson's Disease or any other organic brain disorder? | ☐ ☒ | ☐ ☒ |
| 2. Paralysis or Stroke? | ☐ ☒ | ☐ ☒ | | | |
| 3. Diabetes requiring insulin or causing eye trouble, Amputation due to disease or injury? | ☐ ☒ | ☐ ☒ | 8. Mental Illness, Alcohol or Drug Abuse? | ☐ ☒ | ☐ ☒ |
| 4. Open Colostomy, Kidney trouble requiring dialysis, Cirrhosis of the Liver? | ☐ ☒ | ☐ ☒ | 9. Degenerative bone disease, Osteoporosis, fractured hip or spine? | ☐ ☒ | ☐ ☒ |
| 5. Emphysema or other obstructive lung trouble? | ☐ ☒ | ☐ ☒ | 10. Leukemia, or Cancer (other than skin)? | ☐ ☒ | ☐ ☒ |
| 6. Arthritis causing crippling limitation of motion or requiring surgery for joint replacement? | ☐ ☒ | ☐ ☒ | 11. An immune deficiency disorder, AIDS, AIDS related complex (ARC), AIDS related conditions? | ☒ ☐ | ☒ ☐ |

f. Do you currently take prescription drugs? If yes, please list:

| Applicant | Spouse |
|---|---|
| Exna 50mg 1 tablet daily | Estrogen Hormones |
| Vasotec 5mg 1 tablet daily | Provera Hormones |
| Hypertension | No Surgery Required |

g. Have you, in the past three years, seen a doctor professionally or had medical treatment for any condition(s) not listed above? If yes, give details below:

Applicant YES ☐ NO ☒   Spouse YES ☐ NO ☒

| Name | Condition | Onset Mo/Yr | Operation Mo/Yr | Recovery Mo/Yr | Days confined In Hospital | In Nursing Home | At Home | Name/Address/Phone of Doctor/Hospital Nursing Home |
|---|---|---|---|---|---|---|---|---|
| | Medical Records on File | | | | | | | |
| | | | | | | | | |

Confidential Information
REDACTED

10912-TN

N050 KIT

Do you receive assistance or supervision of any kind to perform the following activities of daily living? (Please explain "Yes" answers below.)

| | Applicant | | Spouse | | | Applicant | | Spouse | |
|---|---|---|---|---|---|---|---|---|---|
| | YES | NO | YES | NO | | YES | NO | YES | NO |
| a. walking or getting in or out of bed | ☐ | ☑ | ☐ | ☑ | e. dressing | ☐ | ☑ | ☐ | ☑ |
| b. using the toilet | ☐ | ☑ | ☐ | ☑ | f. preparing meals | ☐ | ☑ | ☐ | ☑ |
| c. eating | ☐ | ☑ | ☐ | ☑ | g. cleaning house or shopping | ☐ | ☑ | ☐ | ☑ |
| d. bathing | ☐ | ☑ | ☐ | ☑ | h. taking medication | ☐ | ☑ | ☐ | ☑ |

Details of "Yes" answers, and person(s) involved:

**7**

Do you receive Federal, state or local government financial assistance in any form, such as Supplemental Security Income or Medicaid?

| | Applicant | | Spouse | |
|---|---|---|---|---|
| | YES | NO | YES | NO |
| | ☐ | ☑ | ☐ | ☑ |

**8**

If eligible for Medicare.
a. Are you insured under Part A and Part B of Medicare?
b. Is the state paying your Part B premium?
c. Are you enrolled in a Health Maintenance Organization or a similar program?

| | Applicant | | Spouse | |
|---|---|---|---|---|
| | YES | NO | YES | NO |
| a. | ☑ | ☐ | ☑ | ☐ |
| b. | ☐ | ☑ | ☐ | ☑ |
| c. | ☐ | ☑ | ☐ | ☑ |

**9**

HEALTH INSURANCE IN FORCE AND APPLIED FOR *(excluding this application)* ☐ None

| Company | Coverage | | Person(s) Covered | |
|---|---|---|---|---|
| | | | Applicant | Spouse |
| BL+C | Nursing Home | | 90 | 90 |
| | With a Willine Note    Daily Benefit | | | |
| | Home Health Care    Maximum Benefit Period | | Life | Life |
| | Prior Nursing Home/Hospital confinement (days) | | | |
| | Maximum Benefit Period | | X | X |

**10** Will any existing Life, Health, Accident & Sickness, Disability Income or Annuity Contract(s) be replaced or changed if a proposed policy is issued? If "Yes," show company policy number and ending date(s) in Question 9.    YES ☐  NO ☑

ACKNOWLEDGEMENTS  The Applicant, to the best of his or her knowledge and belief, represents and agrees as follows: 1. That the statements contained in the application concerning past and present health are complete, true and correct; 2. Any policy issued as a result of this application shall, together with the application, constitute a single and entire contract of insurance; 3. No agent or any other person is authorized to accept risks, pass upon insurability, make or modify contracts or waive any of the Company's rights or requirements; 4. Any insurance issued as a result of the application will either: a. Not take effect unless and until the full first premium is paid and the policy is delivered during such person's lifetime and while such person is in the condition of health set forth in the application; or: b. Take effect only as specified in the Conditional Receipt, if any, attached to this application. 5. For any exchange, the new policy will be treated as a renewal of any current policy or policies. Any covered loss due to Pre-existing conditions, incurred within the first 6 months after the Issue Date of the new policy, will be covered within the limit of benefits contained in both the new and current policies; 6. For upgrades, all waiting periods in the policy will apply to any increase in benefits. The waiting periods will start on the effective date of the increase. 7. Policy and rider form provisions concerning exceptions, exclusions, limitations and renewal which have been applied for have been explained and are understood.

REPRESENTATION  THE UNDERSIGNED APPLICANT AND AGENT ACKNOWLEDGE THAT THE APPLICANT HAS READ OR HAD READ TO HIM/HER THE COMPLETED APPLICATION AND THAT HE/SHE REALIZES THAT ANY FALSE STATEMENTS OR MISREPRESENTATION THEREIN MAY RESULT IN LOSS OF COVERAGE UNDER THE POLICY. THE APPLICANT ACKNOWLEDGES RECEIPT OF THE APPROPRIATE OUTLINE OF COVERAGE AND, IF ELIGIBLE FOR MEDICARE, THE MEDICARE SUPPLEMENT BUYER'S GUIDE.

PAYMENT OF PREMIUM  READ THE CONDITIONAL RECEIPT BEFORE SIGNING. This is to represent that I have read the receipt and fully understand its conditions and limitations. I understand that no agent can waive or change the conditions and limitations of this receipt.

AUTHORIZATION  In connection with an application for insurance currently made to Bankers Life and Casualty Company. I hereby authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, or other organization, institution or person, that has any records or knowledge of me or any of the members of my family named in said application or of our health, to disclose to the Company or its reinsurers any such information upon presentation of this authorization or reproduction thereof. This authorization will be valid for a period of 2 years and 6 months from the date signed. I also acknowledge receipt of the Investigative Consumer Report Notice.

CAUTION: If your answers on this application are incorrect or untrue, the Company has the right to deny benefits or rescind your policy.

SIGNATURES    Dated at City  Jackson    State ____    Zip 38301

this ____ Day of  July  19 94

Signature of Applicant  X  Edmund D. Martin

Spouse X  Marion W. Martin

Social Security Number *(Applicant)*

I have witnessed the signature of the applicant.
I certify that I asked all the questions and truly and accurately recorded the answers contained herein. To the best of my knowledge and belief, the insurance applied for ☐ is or ☑ is likely, ☑ is not or ☐ is not likely to replace or change any existing policy(ies) or contract(s).

Signature *(of Licensed Resident Agent)*  X ____    No ____    Office 9162

Signature *(of Licensed Resident Agent)*  X ____    No. ____

10912-TN   Confidential Information
REDACTED

## CONSIDERATION

We issued this policy in consideration of the application (a copy is attached) and payment of the First Premium.  This payment will keep the policy in force until the First Renewal Date.  The First Renewal Date and First Premium are shown in the Schedule.

## RENEWAL PREMIUM

We may change the premium rates for this policy.  We can change the premium only if we change it for all policies like yours in your state on a class basis.  We'll tell you at least 31 days in advance of any change in the premium.

A change may also be due to application or removal of any premium discount as provided in any attached rider.

## ELIGIBILITY AND ADDITIONS

Your spouse is the only person you may add to this policy.  To add your spouse, send us a completed application showing his or her eligibility.  You must also send us the needed premium.  We'll add your spouse if we approve the written application and you've paid the premium.

If you die, your spouse, if covered under this policy, will become the Insured.

## DEFINITIONS

"You", "your", and "yours" refer to the Insured named in the Schedule.

"We", "us", and "our" refer to the insurance company named on page 1 that issued the policy.

"Family member" means you, and your spouse if named in the Schedule or added to the policy.

"Injury" means bodily injury caused by an accident which results in loss covered by this policy.  The loss must begin while the policy is in force.

"Sickness" means illness or disease which results in loss covered by this policy.  The loss must begin while the policy is in force.

"Mental Illness" means a neurosis, psychoneurosis, psychopathy, psychosis or mental or emotional disease or disorder of any kind.  It doesn't mean a demonstrable organic brain disease, such as Parkinson's Disease, Alzheimer's Disease or senile dementia.

"Hospital" means a place which is defined as a hospital and approved for payment as a hospital by Medicare, or accredited as a hospital by the Joint Commission on Accreditation of Health Care Facilities, American Osteopathic Association or the Commission on the Accreditation of Rehabilitation Facilities.

"Hospital" doesn't mean convalescent, nursing, rest or skilled nursing facilities, nor places that primarily treat the aged, drug addict or alcoholic, including units in a hospital used for such care.

"Nursing Home" means a place which:

1.  is legally operated to provide nursing care (skilled, intermediate, custodial) for sick and injured persons at their expense;
2.  has 24 hour nursing service by or under the supervision of a licensed nurse;
3.  has beds for patients who need nursing care;
4.  has a doctor available to furnish emergency medical care.

"Nursing Home" also means a wing, area or floor of a hospital specifically set aside for nursing care.

It doesn't mean:  a hospital, a place that primarily treats the mentally ill, drug addict or alcoholic, a home for the aged, rest home, a place that primarily provides domiciliary, residency or retirement care or a place owned or operated by a member of the family member's family.  Care or services provided in these facilities may be covered subject to the conditions of the Alternate Facility Care Benefit provision.

## POLICY DEFINITIONS (Continued)

"Alternate Care Facility" means a facility that is engaged primarily in providing ongoing care and related services to at least 10 inpatients in one location, and:

1. Provides 24 hour a day care and services sufficient to support needs resulting from a Functional or Cognitive Incapacity;
2. Has a trained and ready to respond employee on duty at all times to provide that care;
3. Provides 3 meals a day and accommodates special dietary needs;
4. Is licensed by the appropriate licensing agency (if any) to provide such care;
5. Has formal arrangements for the services of a doctor or nurse to furnish emergency medical care; and
6. Has appropriate methods and procedures for handling and administering drugs and biologicals.

These requirements are typically met by assisted living facilities that are either free standing facilities or part of a life care community. They may also be met by some personal care and adult congregate care facilities. They are generally not met by: individual residences; or independent living units.

.It doesn't include a place owned or operated by you or a member of the family member's family.

"Home Health Care Plan" means a medical or nonmedical program of care set up and supervised by your doctor. We may require your doctor to give us a copy of the initial Home Health Care Plan and any changes later made to the plan.

"Home Health Care Agency" means an agency or organization that:

1. Specializes in giving nursing care or therapeutic services in the home;
2. Is licensed to provide such care or services by the appropriate licensing agency where they are performed or is certified as a Home Health Care Agency under Title XVIII of the Social Security Act of 1965, as amended;
3. Is operating within the scope of its license or certification; and
4. Maintains a complete medical record and plan of care for each patient.

"Home Health Aide" means a health worker on the staff of a Home Health Care Agency, other than a doctor, nurse or professional therapist, who performs personal health care services, such as:

1. helping the patient bathe;
2. helping the patient in and out of bed to exercise;
3. helping the patient with medications which are ordinarily self-administered;
4. homemaker and companion services;
5. other services specifically ordered by a doctor which are intimately related to the health care of the patient.

"Respite Care" means professional care given to temporarily relieve unpaid givers of care to a family member who is functionally or cognitively impaired.

"Adult Day Care Facility" means an organization that provides a program of adult day health care and:

1. Is state licensed, if the state in which it is located licenses adult day care facilities;
2. Operates at least 5 days a week for a minimum of 6 hours a day and is not an overnight facility;
3. Maintains a written record for each client that includes a plan of care and a record of all services provided;
4. Has established procedures for obtaining appropriate aid in the event of a medical emergency;
5. Has formal arrangements for providing the services of: a dietician; a licensed physical therapist; a licensed speech therapist; and a licensed occupational therapist; and
6. Its staff includes a full-time director; and one or more Nurses in attendance during operating hours for at least 4 hours a day.

It doesn't include a place owned or operated by you or a member of the family member's family.

## POLICY DEFINITIONS (Continued)

"Medicare" means "The Health Insurance for the Aged Act, Title XVIII of the Social Security Amendments of 1965" as Then Constituted or Later Amended.

"Doctor" means any licensed practitioner of the healing arts acting within the scope of his or her license in treating any injury or sickness. It doesn't include you or a member of the family member's family.

"Covered Expenses" are defined below in the provision titled "Covered Expenses".

"Benefit Percentage" is the percentage of Covered Expenses we'll pay for Nursing Home Care, Alternate Facility Care, Home Health Care, Respite Care, Adult Day Care and Hospice Care.

"Elimination Period" means the number of days during Any One Period of Expense a family member must: (a) stay in a Nursing Home or Alternate Care Facility; or (b) receive Home Health Care, Adult Day Care, Respite Care or Hospice Care. We will not pay benefits during the Elimination Period.

The Elimination Period for Home Health Care doesn't apply during Any One Period of Expense if: (a) the family member's Nursing Home stay or Alternate Care Facility stay was within 30 days before incurring Covered Expenses for Home Health Care; and (b) we paid benefits for the Nursing Home stay or Alternate Care Facility stay.

"Daily Maximum Benefit Amount" means the Maximum Covered Expense Amounts we'll pay each day, after the applicable Elimination Period, for Nursing Home Care, Alternate Facility Care, Home Health Care, Respite Care, Adult Day Care or Hospice Care Covered Expenses.

"Nursing Home Care Maximum Benefit Period" means the combined maximum number of days for which a family member will be paid under the Nursing Home and Alternate Facility Care provisions of this policy for Any One Period of Expense.

"Home Health Care Maximum Benefit Period" means the combined maximum number of days for which a family member will be paid under the Home Health Care, Respite Care, Adult Day Care and Hospice Care Benefits provisions of this policy for Any One Period of Expense.

"Medically Necessary Care" means all medical services and supplies which: (a) are provided in accordance with accepted standards of medical practice; (b) are provided as needed by the patient's condition; (c) aren't provided solely for the patient's or doctor's convenience.

"Usual and Customary" means the reasonable, usual and customary charge for a service or supply provided in the community or area where such service or supply is provided.

"Functional Incapacity" means the inability to engage in two or more of the following regular and customary activities of adult daily living, without human assistance. The activities of adult daily living used to measure Functional Incapacity are:

| | | |
|---|---|---|
| 1. | Continence | your ability to voluntarily control bowel and bladder function, or in the event of incontinence, the ability to maintain a reasonable level of personal hygiene. |
| 2. | Dressing | your ability to put on or take off the garments you usually wear, as well as any medically necessary braces or artificial limbs, and to fasten and unfasten them yourself. |
| 3. | Eating | your ability to feed yourself by any means once it has been prepared and made available to you. |
| 4. | Transferring | your ability to move in and out of a chair or bed with or without the aid of equipment (including support and other mechanical devices). |
| 5. | Toileting | your ability to either: (a) make normal use of a toilet (getting to and from the toilet and transferring on and off, with or without the aid of equipment); or (b) your ability to effectively use special appliances or protective undergarments designed to collect body waste. |

## POLICY DEFINITIONS (Continued)

"Cognitive Impairment" means that you have suffered a deterioration or loss in your intellectual capacity which requires continual supervision to protect yourself or others, as measured by clinical diagnosis or tests which reliably measure your impairment in the following areas:

1. Your short or long term memory;
2. Your orientation as to person (such as who you are), place (such as your location), and time (such as day, date and year);
3. Your deductive or abstract reasoning.

Such loss of intellectual capacity can result from the following covered conditions: Alzheimer's disease, Parkinson's disease, senile dementia or other nervous or mental disorders of organic origin.

## ANY ONE PERIOD OF EXPENSE

One period of expense starts when a family member first incurs a Covered Expense under this policy. It ends when there have been no additional Nursing Home Care, Alternate Facility Care and, if selected, Home Health Care, Respite Care, Adult Day Care or Hospice Care Covered Expenses incurred for the same cause or causes of the prior Covered Expenses for 6 months in a row.

Then, provided the policy is in force, a new period of expense begins and new Elimination Periods and Maximum Benefit Periods will apply.

## BENEFIT PROVISION

We'll pay Covered Expenses incurred by a family member due to injury or sickness. Covered Expenses, as defined and limited below, may be subject to a Benefit Percentage, Elimination Periods, Daily Maximum Benefit Amounts, and Maximum Benefit Periods. The applicable Benefit Percentages, Elimination Periods, Daily Maximum Benefit Amounts and Maximum Benefit Periods are shown in the Schedule (page 2).

## EXTENSION OF BENEFITS

Termination of this policy by you will not affect any claim for uninterrupted Nursing Home Care or Alternate Facility Care confinement that begins while the policy is in force and continues beyond the date of termination. This extension of benefits is limited to this policy's Nursing Home Maximum Benefit Period.

## COVERED EXPENSES

Covered Expenses are those Usual and Customary incurred charges for services and supplies listed below which the family member's doctor certifies are needed because a family member:

1. is functionally incapacitated; or
2. is cognitively impaired; or
3. requires medically necessary care.

An expense is incurred on the date the service or treatment is given or the supply is bought. To be covered, the expense must be incurred: (a) while coverage is in force for the family member; or (b) as provided for under the Extension of Benefits provision above.

## PART I COVERED EXPENSES

### A. FOR NURSING HOME CARE

Charges for services and supplies provided during a Nursing Home Care stay (whether for a skilled, intermediate or custodial level of care), but not for more than the amount shown in the Schedule under Nursing Home Care Benefits.

We won't pay charges for personal, comfort or convenience items furnished at the family member's request, such as television, radio or telephone.

PART I.   COVERED EXPENSES (Continued)

B.   FOR NURSING HOME BED RESERVATION

If hospitalization becomes necessary while a family member is confined to a Nursing Home, we will pay the Bed Reservation Benefit for the Nursing Home charges incurred If:

1.   We are paying benefits for the Nursing Home Stay; and
2.   The Nursing Home continues to charge the family member to reserve the bed.

We will pay the charges incurred to reserve the family member's bed up to the Daily Maximum Amount for Nursing Home Care for a maximum of 30 days during Any One Period of Expense.

C.   FOR ALTERNATE FACILITY CARE

When a family member qualifies for Nursing Home Care under the terms of this policy and the necessary care can be provided in an Alternate Care Facility, we will pay for the necessary services and supplies if:

1.   The family member agrees to receive the necessary care in an Alternate Care Facility;
2.   The family member's doctor agrees that the necessary care can be appropriately delivered in an Alternate Care Facility; and
3.   We agree to pay for the necessary care in the Alternate Care Facility.

We won't pay more per day than the amount shown in the Schedule under Alternate Facility Care Benefits during Any One Period of Expense.

Any agreement to pay for care in an Alternate Care Facility will not waive any of the family member's or our rights under the policy.

We won't pay benefits under this Part C and, if selected, the optional Part II Covered Expense provision for the same expenses.  No payment will be made for any day for which a Nursing Home Benefit is payable.

Total benefits paid under Part I can't exceed the Nursing Home Maximum Benefit Period.

## PART II OPTIONAL COVERED EXPENSES

To have this coverage an entry "Home Health Care, Respite Care, Adult Day Care, and Hospice Care" must show in the Schedule.

A.   FOR HOME HEALTH CARE

Charges for the following services and supplies provided by a Home Health Care Agency under a Home Health Care Plan:

1.   Visits by a licensed nurse to give part-time or intermittent care;
2.   Visits by a licensed nutritional specialist;
3.   Visits by a Home Health Aide to give part-time or intermittent personal health care of a medical or therapeutic nature;
4.   Visits by a legally qualified physical, occupational, speech or inhalation therapist;
5.   Prescription drugs, medicines, medical supplies and laboratory services given by the Home Health Care Agency which are of a type customarily provided in a hospital or nursing home.
6.   Rental (not to exceed purchase price) of a wheelchair, hospital bed and other durable portable equipment used for therapeutic treatment.

B.   FOR RESPITE CARE

Charges for the services and supplies shown in Part II A. above for Home Health Care.

PART II.    OPTIONAL COVERED EXPENSES (Continued)

## C.    FOR ADULT DAY CARE

Charges for the following services provided through an Adult Day Care facility:

1.    Visits by a licensed nurse to give part-time or intermittent care;
2.    Occupational, physical or speech therapy;
3.    Social, recreational and educational events designed to improve the patient's self-awareness and level of functioning;
4.    Training and help with the regular and customary activities of adult daily living.

We won't pay more per day than the amount shown in the Schedule for Adult Day Care.

## D.    FOR HOSPICE CARE

1.    Charges incurred by a terminally ill family member for services and supplies given by an Agency meeting the regulatory requirements for a hospice of the state where the services are given. If such state has no regulatory requirements, the Agency must: (a) be primarily engaged in providing pain relief, symptom management and support service to dying persons and their families; and (b) provide nursing care under the supervision of a registered nurse.

2.    The family member's doctor must certify that the family member: (a) has no reasonable prospect of cure; (b) has a life expectancy of less than 6 months; (c) needs hospice services for palliation or management of the terminal illness and related conditions; and (d) would have to be confined in a hospital or nursing home if hospice care services weren't available.

Total benefits paid under Part II can't exceed the Home Health Care Maximum Benefit Period shown in the Schedule.

## PART III OPTIONAL BENEFIT INCREASE

The Schedule shows which, if any, of the following options apply to your insurance.

## A.    COMPOUND INCREASES OPTION

When this coverage is shown, the Part I Daily Maximum Benefit Amounts and, if elected, the Part II Daily Maximum Benefit Amounts will increase on each policy anniversary while the policy is in force. These amounts will increase each year by the percentage shown in the Schedule. We'll apply the policy's percentage increase to the then current Part I and Part II Daily Maximum Benefit Amounts.

## B.    EQUAL INCREASES OPTION

When this coverage is shown, the Part I Daily Maximum Benefit Amounts and, if elected, the Part II Daily Maximum Benefit Amounts will increase on each policy anniversary while the policy is in force. These amounts will increase each year by the percentage amount shown in the Schedule. We'll apply the policy's percentage increase to the original Daily Maximum Benefit Amounts shown in the Schedule for Part I and Part II Daily Maximum Benefit Amounts.

If the resulting benefit amount is not a multiple of $0.25, we will round the amount to the next highest multiple of $0.25.

During Any One Period of Expense, we'll pay any Increased Benefit Amounts that become effective, as of each subsequent policy anniversary.

NO50                                    Page 8                                    566A

## PART IV AMBULANCE BENEFIT

We'll pay the expense incurred up to $50 per trip for ambulance service to or from a Nursing Home. We won't pay more than 10 trips during Any One Period of Expense.

## WAIVER OF PREMIUM

After we've paid Nursing Home Care, Alternate Facility Care, and Bed Reservation benefits under this policy for 90 consecutive days, we'll waive the payment of any premium (including premium for any attached benefit rider(s)) for all family members coming due thereafter. We'll waive the premium while consecutive days of Nursing Home Care, Alternate Facility Care, or Bed Reservation benefits continue to be paid under this policy.

## EXCEPTIONS

We won't pay for expenses:

1. Due to war or act of war;
2. Due to intentionally self-inflicted injury while sane or insane;
3. To the extent they're paid under Medicare or any other government insurance plan (except Medicaid);
4. Provided by a member of the family member's family or a person who ordinarily lives in the family member's home;
5. For Home Health Care services and supplies not included in the Home Health Care Plan;
6. Due to mental illness or nervous disorders without demonstrable organic disease. (Loss due to Parkinson's Disease, Alzheimer's Disease or senile dementia is covered.)
7. For which no charge is customarily made in the absence of insurance.

## UNIFORM PROVISIONS

ENTIRE CONTRACT; CHANGES: This policy with any attached papers is the entire contract between you and us. No change in this policy will be effective until approved by one of our officers. This approval must be noted on or attached to this policy. No agent may change this policy or waive any of its provisions. The application is a part of this policy.

TIME LIMIT ON CERTAIN DEFENSES: After 2 years from the Issue Date only fraudulent misstatements in the application may be used to void this policy or deny any claim for loss which starts after the 2 year period.

GRACE PERIOD: This policy has a 31 day grace period. This means that if a premium isn't paid on or before the date it's due, it may be paid during the following 31 days. During the grace period this policy will stay in force.

REINSTATEMENT: If the premium isn't paid before the grace period ends, this policy will lapse. Later acceptance of premium by us (or by any agent authorized to accept payment) without requiring an application for reinstatement, will reinstate this policy.

If we or our agent require an application you'll get a conditional receipt for the premium. If the application is approved, this policy will be reinstated as of the approval date. Lacking such approval, this policy will be reinstated on the 45th day after the date of the conditional receipt unless we previously notified you in writing of our disapproval.

The reinstated policy will cover only loss which results from an injury sustained after the date of reinstatement or for sickness that starts after such date.

In all other respects your rights and our rights will remain the same, subject to any provisions noted on or attached to the reinstated policy.

UNIFORM PROVISIONS (Continued)

NOTICE OF CLAIM: Written notice of claim must be given within 60 days (6 months in Montana) after a covered loss starts or as soon as possible. The notice can be given to us at the address shown on page 1 or to any one of our agents. Notice should include your name and the policy number.

CLAIM FORMS: When we get notice of claim, we'll send you forms for filing proof of loss. If these forms aren't given to you within 15 days, you'll meet the proof of loss requirements by giving us a written statement of the nature and extent of the loss. We must get this statement within the time limit stated in the Proofs of Loss section.

PROOF OF LOSS: For periodic payment of a continuing loss, you must give us written proof of loss within 90 days after the end of each period for which we are liable. For any other loss, you must give us written proof within 90 days after the end of such loss.

If it wasn't reasonably possible for you to give us proof in the time required, we won't reduce, nor deny the claim for this reason if the proof is filed as soon as possible. In any event, the proof required must be given no later than one year (15 months in Hawaii) from the time specified unless you were legally unable to act.

TIME OF PAYMENT OF CLAIMS: Benefits payable under this policy will be paid as soon as we receive proper written proof of loss.

PAYMENT OF CLAIMS: Benefits will be paid to you. Any benefits due and unpaid at your death may be paid to your estate.

If benefits are payable to your estate, we can pay up to $1,000 to anyone related to you by blood or marriage, whom we consider to be entitled to the benefits. We'll be discharged to the extent of any such payment made in good faith.

PHYSICAL EXAMINATION: We, at our expense, have the right to have you examined as often as reasonably necessary while a claim is pending.

LEGAL ACTION: No legal action may be brought to recover on this policy within 60 days after written proof of loss has been given as required by this policy. No such action may be brought after 3 years (5 years in Kansas; 6 years in South Carolina) from the time written proof of loss is required to be given.

CONFORMITY WITH STATE STATUTES: Any provision of this policy which, on its effective date, is in conflict with the laws of the state in which you live on that date is amended to conform to the minimum requirements of such laws.

LONG TERM CARE POLICY

RENEWABLE AS STATED IN RENEWAL CONDITIONS.
PREMIUM RATES MAY BE CHANGED BY CLASS.

N050

568A

# EXHIBIT D

2001

## NOTICE TO POLICYHOLDERS

If, at any time, you have any questions or need any information concerning this policy, you may contact us:

**BANKERS LIFE AND CASUALTY COMPANY**
**POLICYHOLDER SERVICE OFFICE**
**222 MERCHANDISE MART PLAZA**
**CHICAGO, ILLINOIS   60654-2001**
**PHONE (312) 396-6000**

10890

# ANKERS LIFE AND CASUALTY COMPANY

Home Office: 222 Merchandise Mart Plaza • Chicago, Illinois 60654-2001

## AMENDMENT RIDER

The policy to which this rider is attached is hereby amended to include the following provision.  Any Administrative Remedies provision in the policy is deleted with the attachment of this rider.

### ADMINISTRATIVE REMEDIES

Any controversy arising out of or relating in any manner to the policy, including without limitation any disputes relating to a claim for benefits, are subject to certain administrative procedures by the party claiming rights under the policy such as the insured, policy owner, or beneficiary(ies) (collectively "Policyholder") prior to the Policyholder pursuing any other remedy that may be available in law or equity.  These administrative remedies are (1) Appeal of Decision; and (2) Mediation.

1.  Appeal of Decision

    (1)  If Bankers Life and Casualty Company (Company) makes a decision which the Policyholder wishes to appeal, a written request must be sent within sixty (60) days of the date of Company's written notice of its decision.  The appeal shall be addressed to Bankers Life and Casualty Company, Attn: V.P., Claims, 222 Merchandise Mart Plaza; Chicago, IL  60654-2001.

    (2)  The Policyholder's written request must provide:

        (a)  The policy number, name of the insured, and a written statement of the reasons for the appeal and the facts of the matter; and
        (b)  Copies of any evidence or other supporting documentation.

    (3)  (a)  Within forty-five (45) days after the date of receipt of a timely-filed request for reconsideration, Company must provide written notice to the Policyholder that:
            (i)   the decision has been reversed or modified;
            (ii)  the decision has been reaffirmed; or
            (iii) additional information is being requested from the Policyholder (which shall include any information from third-parties, such as health care providers).
        (b)  Within thirty (30) days after the requested information is received, Company must notify the Policyholder as provided in (i) or (ii) herein.
        (c)  If the Policyholder does not provide the information requested within sixty (60) days of the requesting date, Company will reconsider the decision based on the information in the file.

2.  Mediation
    After exhaustion of the appeal of decision procedures, the parties, in good faith, may attempt to settle any dispute arising out of or related in any manner to the contract that remains by mediation in accordance with the Insurance Dispute Resolution Program, as amended, as administered by the American Arbitration Association.

The Policyholder may discontinue Administrative Remedies procedures with written notice to Bankers Life and Casualty Company.  The Policyholder may also take legal actions at any time, subject to the Legal Action provision.

This rider is effective and terminates concurrently with the policy to which it is attached and shall not otherwise vary, alter or extend any of the terms thereof.

BANKERS LIFE AND CASUALTY COMPANY

David K.

Secretary

16163-TN

# BANKERS LIFE AND CASUALTY COMPANY
Home Office: 222 Merchandise Mart Plaza • Chicago, Illinois 60654-2001

## PREMIUM DISCOUNT RIDER

Effective Date_____

This rider is a part of the policy to which it's attached. It takes effect on the Rider Effective Date shown above. If no date is shown, it takes effect on the policy's Issue Date.

The following paragraph is added to the policy's "Renewal Premium" provision:

In consideration of your application for coverage for your spouse, we have discounted your and your spouse's premium for the policy and any attached return of premium benefit rider.

Except for either your or your spouse's death, we reserve the right to remove such discount on the renewal date that coincides with or next follows the date your or your spouse's coverage ends.

This rider is subject to all terms, conditions, limitations and exceptions of the policy to which it's attached. We reserve the right to change premium rates as provided in the policy.

BANKERS LIFE AND CASUALTY COMPANY

*David K. Hogg*

Secretary

1999

APPLICATION NO. 0621005370

BANKERS LIFE AND CASUALTY COMPANY

THIRD PAGE OF SCHEDULE

| | | | |
|---|---|---|---|
| NAME OF INSURED | MARTIN EDMUND D JR | 201,071,892 | POLICY NUMBER |
| FIRST PREMIUM | $888.34 | JUNE 22, 2001 | ISSUE DATE |
| 1ST RENEWAL DATE | AUGUST 22, 2001 | GR-N250 | POLICY FORM |

TOTAL POLICY ANNUAL PREMIUM   $5,163.23
PREMIUM PAYMENT SERVICE PLAN MONTHLY   ($444.17)

*New Premium ₰₰ 458.04
3-7-06*

APPLICATION NO. 0621005370

BANKERS LIFE AND CASUALTY COMPANY

SECOND PAGE OF SCHEDULE

NAME OF INSURED      MARTIN EDMUND D JR          201,071,892    POLICY NUMBER

FIRST PREMIUM        $888.34                     JUNE 22, 2001   ISSUE DATE

1ST RENEWAL DATE     AUGUST 22, 2001             GR-N250        POLICY FORM

THE FOLLOWING BENEFITS APPLY TO THE FAMILY MEMBER SHOWN BELOW

ELIMINATION PERIOD: 30 DAYS OF SERVICES RECEIVED (DOES NOT APPLY TO
                    RESPITE CARE OR HOSPICE SERVICES)

MAXIMUM BENEFIT FOR ANY ONE PERIOD OF EXPENSE:              $109,500.00
BASED UPON A MAXIMUM BENEFIT MULTIPLIER OF:                 1095

PART I, MAXIMUM DAILY BENEFIT AMOUNT FOR FACILITY BENEFITS:
    NURSING HOME CARE, ASSISTED LIVING FACILITY CARE, BED RESERVATION
    AND ALTERNATE PLAN OF CARE EXPENSES, UP TO            $100.00

PART II, MAXIMUM WEEKLY BENEFIT AMOUNT FOR HOME AND COMMUNITY BASED CARE:
    HOME HEALTH CARE, ADULT DAY CARE, HOSPICE SERVICES, AND RESPITE CARE
    EXPENSES, UP TO                                       $700.00

ADDITIONAL COVERED EXPENSES:
    AMBULANCE SERVICE EXPENSES - PER TRIP, UP TO          $75.00
    THIS BENEFIT IS PAYABLE FOR UP TO FOUR (4) TRIPS EACH CALENDAR YEAR

    CAREGIVER TRAINING, UP TO A LIFETIME MAXIMUM OF       $700.00

    EMERGENCY MEDICAL RESPONSE SYSTEM - PAYABLE MONTHLY, UP TO   $70.00
    THIS BENEFIT IS LIMITED TO A LIFETIME MAXIMUM OF 12 MONTHS

            OPTIONAL ANNUAL BENEFIT INCREASE:                    NOT COVERED

                                                                 ANNUAL
INSURED FAMILY MEMBER              PLAN NO.                       PREMIUM
MARTIN MARION W           FEMALE
BIRTHDATE      /21   AGE 79       N250                            $2819.21

                TOTAL INSURED FAMILY MEMBER ANNUAL PREMIUM        $2,819.21

THE PREMIUM AMOUNT SHOWN ABOVE REFLECTS THE DISCOUNT PROVIDED BY THE ATTACHED
PREMIUM DISCOUNT RIDER

Confidential Information
REDACTED              SCHEDULE IS CONTINUED ON NEXT PAGE ....

APPLICATION NO. 0621005370

BANKERS LIFE AND CASUALTY COMPANY
222 MERCHANDISE MART PLAZA   CHICAGO, ILLINOIS 60654-2001
TELEPHONE (312) 396-6000

SCHEDULE

| | | | |
|---|---|---|---|
| NAME OF INSURED | MARTIN EDMUND D JR | 201,071,892 | POLICY NUMBER |
| FIRST PREMIUM | $888.34 | JUNE 22, 2001 | ISSUE DATE |
| 1ST RENEWAL DATE | AUGUST 22, 2001 | GR-N250 | POLICY FORM |

THE FOLLOWING BENEFITS APPLY TO THE FAMILY MEMBER SHOWN BELOW

ELIMINATION PERIOD:  90 DAYS OF SERVICES RECEIVED (DOES NOT APPLY TO
RESPITE CARE OR HOSPICE SERVICES)

MAXIMUM BENEFIT FOR ANY ONE PERIOD OF EXPENSE:
BASED UPON A MAXIMUM BENEFIT MULTIPLIER OF:          $109,500.00
                                                      1095

PART I, MAXIMUM DAILY BENEFIT AMOUNT FOR FACILITY BENEFITS:
   NURSING HOME CARE, ASSISTED LIVING FACILITY CARE, BED RESERVATION
   AND ALTERNATE PLAN OF CARE EXPENSES, UP TO          $100.00

PART II, MAXIMUM WEEKLY BENEFIT AMOUNT FOR HOME AND COMMUNITY BASED CARE:
   HOME HEALTH CARE, ADULT DAY CARE, HOSPICE SERVICES, AND RESPITE CARE
   EXPENSES, UP TO                                     $700.00

ADDITIONAL COVERED EXPENSES:
   AMBULANCE SERVICE EXPENSES - PER TRIP, UP TO        $75.00
   THIS BENEFIT IS PAYABLE FOR UP TO FOUR (4) TRIPS EACH CALENDAR YEAR

   CAREGIVER TRAINING, UP TO A LIFETIME MAXIMUM OF     $700.00

   EMERGENCY MEDICAL RESPONSE SYSTEM - PAYABLE MONTHLY, UP TO    $70.00
   THIS BENEFIT IS LIMITED TO A LIFETIME MAXIMUM OF 12 MONTHS

OPTIONAL ANNUAL BENEFIT INCREASE:                    NOT COVERED

| INSURED FAMILY MEMBER | | PLAN NO. | ANNUAL PREMIUM |
|---|---|---|---|
| MARTIN EDMUND D JR | MALE | | |
| BIRTHDATE    /23   AGE 77 | | N250 | $2344.02 |

              TOTAL INSURED FAMILY MEMBER ANNUAL PREMIUM    $2,344.02

THE PREMIUM AMOUNT SHOWN ABOVE REFLECTS THE DISCOUNT PROVIDED BY THE ATTACHED
PREMIUM DISCOUNT RIDER

Confidential Information
REDACTED      SCHEDULE IS CONTINUED ON NEXT PAGE ....

# BANKERS LIFE AND CASUALTY COMPANY

A Legal Reserve Stock Company • Home Office: 222 Merchandise Mart Plaza • Chicago, Illinois 60654-2001

---

### IMPORTANT NOTICE ABOUT STATEMENTS IN THE APPLICATION

Caution: The issuance of this insurance policy is based upon Your responses to the questions on Your application. A copy of Your application will be attached to the policy. If Your answers are incorrect or untrue, We have the right to deny benefits or rescind Your policy. The best time to clear up any questions is now, before a claim arises! If, for any reason, any of Your answers are incorrect, contact Us at the address shown above.

---

| NAME OF INSURED | MARTIN EDMUND D JR | 201,071,892 | POLICY NUMBER |
|---|---|---|---|
| FIRST PREMIUM | $888.34 | JUNE 22, 2001 | ISSUE DATE |
| FIRST RENEWAL DATE | AUGUST 22, 2001 | GR-N250 | POLICY FORM |

We, BANKERS LIFE AND CASUALTY COMPANY, promise to pay You, the Insured, the benefits provided by this policy. Benefits are subject to this policy's definitions, provisions, limitations, and exclusions.

### GUARANTEED RENEWABLE - RENEWAL CONDITIONS

This policy is guaranteed renewable and may be renewed for each Family Member on any renewal date as long as such Family Member lives. To renew, pay the renewal premium at the intervals available to You at time of renewal. You must pay it by its due date or during the 31 days that follow. We can't refuse to renew this policy or place any restrictions on it if You pay the renewal premium on time.

### YOUR THIRTY DAY RIGHT TO RETURN THIS POLICY

If You are not satisfied with this policy, You may return it to Us within 30 days after You receive it. You may return it to Us by mail or to the agent who sold it. We'll then refund any premium paid and this policy will be void.

### EFFECTIVE DATE

This policy begins at 12:01 a.m. Standard Time where You live on the Issue Date shown on the Schedule page. It ends, subject to the grace period, at 12:01 a.m. on the date any renewal premium is due.

### NOTICE TO BUYER

This policy is a legal contract between You and Us. The insurance it provides may NOT cover all of the costs associated with long-term care incurred by You during the period of coverage. You are, therefore advised, to READ THIS POLICY CAREFULLY AND REVIEW ALL POLICY LIMITATIONS!

This policy has been signed by Our President and Secretary on its Issue Date.

Secretary *[signature]*          President *[signature]*

Countersigned by_____
Licensed Resident Agent

## TAX-QUALIFIED LONG-TERM CARE POLICY

### Nursing Home, Home Health Care, and Community-Based Care Benefits

This policy is intended to be a Tax-Qualified Long-Term Care Insurance policy under Section 7702B(b) of the Internal Revenue Code as enacted by "The Health Insurance Portability and Accountability Act of 1996". The Act allows for certain favorable tax treatment considerations with respect to premiums paid for, and benefits received under, a Tax-Qualified Long-Term Care Insurance policy.

# POLICY GUIDE

PAGE

BENEFIT ELIGIBILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5
BENEFIT LIMITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
BENEFIT PAYMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
CLAIM FORMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
COVERED EXPENSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-10
   ADULT DAY CARE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10
   ALTERNATE PLAN OF CARE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   ASSISTED LIVING FACILITY CARE . . . . . . . . . . . . . . . . . . . . . . . . 7
   AMBULANCE SERVICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
   BED RESERVATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
   CAREGIVER TRAINING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
   EMERGENCY MEDICAL RESPONSE SYSTEM . . . . . . . . . . . . . . . 10
   HOME HEALTH CARE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
   HOSPICE CARE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
   NURSING HOME CARE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
   RESPITE CARE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
EFFECTIVE DATE (ISSUE DATE) . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
EXTENSION OF BENEFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
FAMILY MEMBER ADDITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
GENERAL DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4
NOTICE OF CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
OPTIONAL BENEFIT INCREASE . . . . . . . . . . . . . . . . . . . . . . . . . . 11
PATIENT CARE COORDINATION . . . . . . . . . . . . . . . . . . . . . . . . . . 11
PROOF OF LOSS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
REINSTATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
RENEWAL CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
RENEWAL PREMIUM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
RESTORATION OF BENEFITS . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
RIGHT TO RETURN POLICY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
SCHEDULE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
TIME LIMIT ON CERTAIN DEFENSES . . . . . . . . . . . . . . . . . . . . . . 13
UNIFORM PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-14
WAIVER OF PREMIUM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## NOTICE CONCERNING COVERAGE LIMITATIONS AND EXCLUSIONS UNDER

## THE TENNESSEE LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION ACT

Residents of Tennessee who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the Tennessee Life and Health Insurance Guaranty Association. The purpose of this association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the guaranty association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the guaranty association is not unlimited, however. And, as noted in the box below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

The state law that provides for this safety-net coverage is called the Tennessee Life and Health Insurance Guaranty Association Act. The following is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the act or the rights or obligations of the guaranty association.

### COVERAGE

Generally, individuals will be protected by the life and health guaranty association if they live in this state and hold a life or health insurance contract, or an annuity, or if they are insured under a group insurance contract, issued by an insurer authorized to conduct business in Tennessee. The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

### EXCLUSIONS FROM COVERAGE

However, persons holding such policies are not protected by this association if:

(1)  they are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);

(2)  the insurer was not authorized to do business in this state;

(3)  their policy was issued by an HMO, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company or similar plan in which the policyholder is subject to future assessments, or by an insurance exchange.

The association also does not provide coverage for:

(1)  any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;

(2)  any policy of reinsurance (unless an assumption certificate was issued);

(3)  interest rate yields that exceed an average rate;

(4)  dividends;

(5)  credits given in connection with the administration of a policy by a group contractholder;

(6)  employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them);

(7)  unallocated annuity contracts (which give rights to group contractholders, not individuals), unless qualified under Section 403(b) of the Internal Revenue Code, except that, even if qualified under Section 403(b), unallocated annuities issued to employee benefit plans protected by the federal Pension Benefit Guaranty Corporation are not covered.

AC-10814-TN                              Page 1                              (Rev. 9/99)

## LIMITS ON AMOUNT OF COVERAGE

The act also limits the amount the association is obligated to pay out: The association cannot pay more than what the insurance company would owe under a policy or contract. Also, for any one insured life, the association will pay a maximum of $300,000 no matter how many policies and contracts there were with the same company, even if they provided different types of coverage. Within this overall $300,000 limit, the association will not pay more than $100,000 in cash surrender values, $100,000 in health insurance benefits, $100,000 in present value of annuities, or $300,000 in life insurance death benefits -- again, regardless of the number of policies and contracts there were with the same company, and no matter how many different types of coverages.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The Tennessee Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in Tennessee. You should not rely on coverage by the Tennessee Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy.

Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus.

Insurance companies or their agents are required by law to give or send you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the guaranty association to induce you to purchase any kind of insurance policy.

Tennessee Life and Health Insurance Guaranty Association
1200 First Union Tower
150 4th Avenue North
Nashville, Tennessee 37219-2433

Tennessee Department of Commerce and Insurance
500 James Robertson Parkway
Nashville, Tennessee 37243

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Current Benefits/Premiums Effective: 04/22/06

APPLICATION NO.   *C. Woods — Cell phone*

BANKERS LIFE AND CASUALTY COMPANY
222 MERCHANDISE MART PLAZA   CHICAGO, ILLINOIS 60654-2001
TELEPHONE (312) 396-6000

SCHEDULE

*Vicki Bhratti  1-800 —*

NAME OF INSURED    MARTIN EDMUND D

| | |
|---|---|
| 201,071,892 | POLICY NUMBER |
| JUNE 22, 2001 | ISSUE DATE |
| GR-N250 | POLICY FORM |

FIRST PREMIUM

1ST RENEWAL DATE

THE FOLLOWING BENEFITS APPLY TO THE FAMILY MEMBER SHOWN BELOW

ELIMINATION PERIOD:   30 DAYS OF SERVICES RECEIVED (DOES NOT APPLY TO
RESPITE CARE OR HOSPICE SERVICES)

MAXIMUM BENEFIT FOR ANY ONE PERIOD OF EXPENSE:            $73,000.00
BASED UPON A MAXIMUM BENEFIT MULTIPLIER OF:                  730

PART I, MAXIMUM DAILY BENEFIT AMOUNT FOR FACILITY BENEFITS:
NURSING HOME CARE, ASSISTED LIVING FACILITY CARE, BED RESERVATION
AND ALTERNATE PLAN OF CARE EXPENSES, UP TO          $100.00

PART II, MAXIMUM WEEKLY BENEFIT AMOUNT FOR HOME AND COMMUNITY BASED CARE:
HOME HEALTH CARE, ADULT DAY CARE, HOSPICE SERVICES, AND RESPITE CARE
EXPENSES, UP TO                                              $700.00

ADDITIONAL COVERED EXPENSES:
AMBULANCE SERVICE EXPENSES - PER TRIP, UP TO                  $75.00
THIS BENEFIT IS PAYABLE FOR UP TO FOUR (4) TRIPS EACH CALENDAR YEAR

CAREGIVER TRAINING, UP TO A LIFETIME MAXIMUM OF              $700.00

EMERGENCY MEDICAL RESPONSE SYSTEM - PAYABLE MONTHLY, UP TO   $70.00
THIS BENEFIT IS LIMITED TO A LIFETIME MAXIMUM OF 12 MONTHS

OPTIONAL ANNUAL BENEFIT INCREASE:
                                                          Not Covered

| INSURED FAMILY MEMBER | PLAN NO. | ANNUAL PREMIUM |
|---|---|---|
| MARTIN EDMUND D     MALE | | |
| BIRTHDATE    /23   AGE 82   N250 | | $2422.78 |

TOTAL INSURED FAMILY MEMBER ANNUAL PREMIUM   $2,422.78

THE PREMIUM AMOUNT SHOWN ABOVE REFLECTS THE DISCOUNT PROVIDED BY THE ATTACHED
PREMIUM DISCOUNT RIDER

Confidential Information
REDACTED

SCHEDULE IS CONTINUED ON NEXT PAGE ....

Current Benefits/Premiums Effective: 04/22/06

APPLICATION NO.

BANKERS LIFE AND CASUALTY COMPANY
222 MERCHANDISE MART PLAZA  CHICAGO, ILLINOIS 60654-2001
TELEPHONE (312) 396-6000

SECOND PAGE OF SCHEDULE

NAME OF INSURED     MARTIN EDMUND D              201,071,892    POLICY NUMBER

FIRST PREMIUM                               JUNE 22, 2001    ISSUE DATE

1ST RENEWAL DATE                                GR-N250    POLICY FORM

THE FOLLOWING BENEFITS APPLY TO THE FAMILY MEMBER SHOWN BELOW

ELIMINATION PERIOD:   30 DAYS OF SERVICES RECEIVED (DOES NOT APPLY TO
                      RESPITE CARE OR HOSPICE SERVICES)

MAXIMUM BENEFIT FOR ANY ONE PERIOD OF EXPENSE:          $73,000.00
BASED UPON A MAXIMUM BENEFIT MULTIPLIER OF:                730

PART I, MAXIMUM DAILY BENEFIT AMOUNT FOR FACILITY BENEFITS:
   NURSING HOME CARE, ASSISTED LIVING FACILITY CARE, BED RESERVATION
   AND ALTERNATE PLAN OF CARE EXPENSES, UP TO         $100.00

PART II, MAXIMUM WEEKLY BENEFIT AMOUNT FOR HOME AND COMMUNITY BASED CARE:
   HOME HEALTH CARE, ADULT DAY CARE, HOSPICE SERVICES, AND RESPITE CARE
   EXPENSES, UP TO                                    $700.00

ADDITIONAL COVERED EXPENSES:
   AMBULANCE SERVICE EXPENSES - PER TRIP, UP TO         $75.00
   THIS BENEFIT IS PAYABLE FOR UP TO FOUR (4) TRIPS EACH CALENDAR YEAR

   CAREGIVER TRAINING, UP TO A LIFETIME MAXIMUM OF      $700.00

   EMERGENCY MEDICAL RESPONSE SYSTEM - PAYABLE MONTHLY, UP TO   $70.00
   THIS BENEFIT IS LIMITED TO A LIFETIME MAXIMUM OF 12 MONTHS

   OPTIONAL ANNUAL BENEFIT INCREASE:                   Not Covered

                                                         ANNUAL
INSURED FAMILY MEMBER          PLAN NO.                   PREMIUM
MARTIN MARION W          FEMALE
BIRTHDATE      /21   AGE 84      N250
                                                        $2902.12

              TOTAL INSURED FAMILY MEMBER ANNUAL PREMIUM    $2,902.12

THE PREMIUM AMOUNT SHOWN ABOVE REFLECTS THE DISCOUNT PROVIDED BY THE ATTACHED
PREMIUM DISCOUNT RIDER

Confidential Information
REDACTED

SCHEDULE IS CONTINUED ON NEXT PAGE ....

Current Benefits/Premiums Effective: 04/22/06

APPLICATION NO.

BANKERS LIFE AND CASUALTY COMPANY

THIRD PAGE OF SCHEDULE

NAME OF INSURED      MARTIN EDMUND D                201,071,892      POLICY NUMBER

FIRST PREMIUM                                      JUNE 22, 2001      ISSUE DATE

1ST RENEWAL DATE                                       GR-N250      POLICY FORM

                              TOTAL POLICY ANNUAL PREMIUM      $5,324.90
                        PREMIUM PAYMENT SERVICE PLAN MONTHLY       $458.04

# APPLICATION FOR INSURANCE TO
### BANKERS LIFE AND CASUALTY COMPANY("The Company"
222 Merchandise Mart Plaza, Chicago, IL  60654-2001

1. Martin  Edmund D  Jr.
*(Print Applicant's Full Name (Last, First, & Middle Initial)*

*I apply for* ☐ NEW COVERAGE ☐ ADDED MEMBER ☑ EXCHANGE ☐ REINSTATEMENT ☐ INCREASE OF BENEFITS - "UPGRADE"
*(List all benefits desired including existing benefits for upgrade.)*
Policy No(s) of Bankers Policy(ies)/Certificate(s) to be changed  940,194,981

| 2 First Name & Initial of Each Person to be Insured (and Last if not same as Applicant) | Applicant | Spouse | 3 HOME ADDRESS |
|---|---|---|---|
| | Edmund D. | Marion W. | Street or P.O. Box ____ |
| Date of Birth (Mo/Day/Yr) | 23 | 21 | City, Town Jackson |
| Age/Sex | 77 / m | 79 / F | State TN   Zip Code 38305 |
| Height (Feet & Inches)/Weight (In Pounds) | 5 4½ 186 | 56 /123 | Telephone # - Home   Telephone # - Work |
| Marital Status:   S: Single   M: Married | m | m | (731) ____   ( ) ____ |

4 Form #   GR-N250          Special Issue Date June  22 ,01          ☐ No

## POLICY OPTIONS

| | Applicant | Spouse |
|---|---|---|
| Premium Rating | ☐ Standard ☑ Preferred | ☐ Standard ☑ Preferred |
| Maximum Benefit Amount Multiplier | 1095 | 1095 |
| Elimination Period | 30          days | 30          days |
| **NURSING HOME CARE** Maximum Daily Benefit Amount | $ 100 | $ 100 |

**HOME AND COMMUNITY - BASED CARE SERVICES**
☐ 50% of Nursing Home Maximum Daily Benefit Amount *{Maximum Weekly Benefit is 3.5 times the Nursing Home Maximum Daily Benefit Amount}*

☑ 100% of Nursing Home Maximum Daily Benefit Amount *{Maximum Weekly Benefit is 7 times the Nursing Home Maximum Daily Benefit Amount}*

**INFLATION PROTECTION - OPTIONAL ANNUAL BENEFIT INCREASES**
☑ None *{Written rejection is required.  See page 6 of application}*

☐ Compound Increases Option____ %

☐ Equal Increases Option

## RIDER OPTIONS

Benefit Description          Form Nos.

Nonforfeiture Benefit          ☐ 206A-TN
Survivor Maximum Benefit Increase   ☐ 226A-TN
Paid-Up Survivorship Benefit      ☐ 226G-TN
Return of Premium Benefit        ☐ 228R-TN

____          ____
____          ____
____          ____

Confidential Information
REDACTED

# 5 QUALIFYING INFORMATION

NOTE:  *If any person to be insured answers "Yes" to any part of questions 5 d., 5 e.1. through 7., or 5 f.1.(a) through (f), he or she is not eligible for this coverage.*

To the best of your knowledge and belief does/has any person to be insured:

| | | Applicant | | Spouse | |
|---|---|:---:|:---:|:---:|:---:|
| | | YES | NO | YES | NO |
| a. | Use any device to help him or her sit, stand, walk or move from place to place inside or outside of his or her residence? | ☐ | ☑ | ☐ | ☑ |
| b. | Smoked tobacco products within the past two years? | ☐ | ☑ | ☐ | ☑ |
| c. | Within the past two years, received home care; used an adult day care facility; been medically advised to enter or been confined to a nursing home, assisted care facility or other long-term care facility? | ☐ | ☑ | ☐ | ☑ |
| d. | Due to mental or physical reasons, authorized any person or institution to legally act in his or her behalf and take over his or her personal business transactions? | ☐ | ☑ | ☐ | ☑ |
| e. | In the past three years, seen a doctor, or any licensed health care practitioner, professionally or had medical treatment for: | | | | |
| 1. | Stroke or Transient Ischemic Attack (TIA)? | ☐ | ☑ | ☐ | ☑ |
| 2. | Alzheimer's Disease, Organic Brain Syndrome, Dementia, or Mental Illness? | ☐ | ☑ | ☐ | ☑ |
| 3. | Alcohol or drug abuse? | ☐ | ☑ | ☐ | ☑ |
| 4. | Multiple Sclerosis, Muscular Dystrophy, Amyotrophic Lateral Sclerosis (Lou Gehrigs Disease), Parkinson's Disease or Post-Polio Paralytic Syndrome? | ☐ | ☑ | ☐ | ☑ |
| 5. | Kidney disorder requiring dialysis or bladder disorder requiring a permanent indwelling urinary catheter? | ☐ | ☑ | ☐ | ☑ |
| 6. | Emphysema or other obstructive lung disease requiring the use of oxygen? | ☐ | ☑ | ☐ | ☑ |
| 7. | An immune deficiency disorder, AIDS, AIDS related complex (ARC) or AIDS related conditions? | ☐ | ☑ | ☐ | ☑ |

NOTE:  *Please provide details to any "Yes" answers for questions 5 e.8. through 12. In section 5 g. below.*

| | | | | | |
|---|---|:---:|:---:|:---:|:---:|
| 8. | Any form of arthritis causing crippling, limitation of motion, or requiring joint replacement; or any degenerative bone disease, osteoporosis, fractured hip or spine? | ☐ | ☑ | ☐ | ☑ |
| 9. | Leukemia, cancer (other than skin), lymphoma or melanoma? | ☐ | ☑ | ☐ | ☑ |
| 10. | Open colostomy, ileostomy or ureterostomy, chronic liver or pancreatic disease? | ☐ | ☑ | ☐ | ☑ |
| 11. | Diabetes (with or without insulin)? | ☐ | ☑ | ☐ | ☑ |
| 12. | Peripheral neuropathy, peripheral vascular disease, heart disorder or hypertension? | ☐ | ☑ | ☐ | ☑ |

14418

QUALIFYING INFORMATION (Continued)

f. 1. Need hands-on or stand-by assistance to perform any of the following daily activities?

| | Applicant YES | NO | Spouse YES | NO | | Applicant YES | NO | Spouse YES | NO |
|---|---|---|---|---|---|---|---|---|---|
| (a) bathing | ☐ | ☑ | ☐ | ☑ | (d) eating | ☐ | ☑ | ☐ | ☑ |
| (b) bladder/bowel control | ☐ | ☑ | ☐ | ☑ | (e) moving in/out of bed or chair | ☐ | ☑ | ☐ | ☑ |
| (c) dressing | ☐ | ☑ | ☐ | ☑ | (f) toileting | ☐ | ☑ | ☐ | ☑ |

2. Need assistance with any of the following activities?

| | Applicant YES | NO | Spouse YES | NO | | Applicant YES | NO | Spouse YES | NO |
|---|---|---|---|---|---|---|---|---|---|
| (a) managing your medication | ☐ | ☑ | ☐ | ☑ | (e) transportation | ☐ | ☑ | ☐ | ☑ |
| (b) using the telephone | ☐ | ☑ | ☐ | ☑ | (f) shopping | ☐ | ☑ | ☐ | ☑ |
| (c) managing your daily finances | ☐ | ☑ | ☐ | ☑ | (g) preparing meals | ☐ | ☑ | ☐ | ☑ |
| (d) routine housework | ☐ | ☑ | ☐ | ☑ | (h) laundry | ☐ | ☑ | ☐ | ☑ |

Please give details to any "Yes" answer and person(s) involved_____

g. Please give details to any "Yes" answers for questions 5 e.8. through 12. Also, if within the past three years, any person to be insured has seen a doctor, or any licensed health care practitioner professionally or had medical treatment for any conditions(s) not listed above, please provide details below.

| Condition Applicant | Onset Mo/Yr | Operation Mo/Yr | Recovery Mo/Yr | Days confined In Hospital | In Nursing Home | At Home | Name/Address/Telephone# of Doctor, Hospital, or Nursing Home |
|---|---|---|---|---|---|---|---|
| | | | | | | | Dr. Jerry Hammond |
| | | | | | | | 6164 W Forest Ave |
| | | | | | | | Jackson TN. 38301 |
| | | | | | | | Dr. Keith Atkins |

| Spouse | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | | Dr Carlton Hays |
| | | | | | | | 6164 W. Forest Ave |
| | | | | | | | Jackson TN 38301 |
| | | | | | | | Dr. Keith Atkins |

h. Does any person to be insured currently take prescription drugs? If "Yes", please list.

| Applicant | | Spouse | |
|---|---|---|---|
| Drugs | Reasons | Drugs | Reasons |
| | | | |
| | | | |
| | | | |

| | | Applicant | | Spouse | |
|---|---|---|---|---|---|
| | | **YES** | **NO** | **YES** | **NO** |
| 6 | Does any person to be insured receive Federal, state or local government financial assistance in any form, such as Supplemental Security Income or Medicaid? | ☐ | ☑ | ☐ | ☑ |

| | | Applicant | | Spouse | |
|---|---|---|---|---|---|
| 7 | If any person to be insured is eligible for Medicare, is he or she: | **YES** | **NO** | **YES** | **NO** |
| | a. Insured under Part A and Part B of Medicare? | ☑ | ☐ | ☑ | ☐ |
| | b. Enrolled in a Health Maintenance Organization or a similar program? | ☐ | ☑ | ☐ | ☑ |

## 8   IN FORCE AND APPLIED FOR COVERAGE - (Excluding this application)

**A.** Does any person to be insured have another Long-Term Care, Nursing Home, or Home Health Care insurance policy or certificate in force (including health care service contract or health maintenance organization contract providing similar coverage)? If "Yes", and such coverage will remain in force, indicate type of coverage, daily benefit amount, and benefit period.

| Applicant | Spouse |
|---|---|
| ☑ Yes   ☐ No | ☑ Yes   ☐ No |
| Type of Coverage N U S O | Type of Coverage N U S O |
| Daily Benefit Amount $ 90 | Daily Benefit Amount $ 90 |
| Benefit Period  life time | Benefit Period  lifetime |
| Type of Coverage | Type of Coverage |
| Daily Benefit Amount $ | Daily Benefit Amount $ |
| Benefit Period | Benefit Period |

**B.** Does any person to be insured intend to replace any existing Life, Health, Accident and Sickness, Disability Income, Annuity, Long-Term Care, Nursing Home, or Home Health Care insurance policy or certificate with this coverage? If "Yes", show Company, address, policy number and ending date.

| Applicant | Spouse |
|---|---|
| ☑ Yes   ☐ No | ☑ Yes   ☐ No |
| Company Bankers Life & Cas | Company Bankers Life & Cas |
| Address 222 merchant Mart Plaza Chicago Ill. | Address 222 merchants Mart Plaza Chicago Ill |
| Policy Number 940 194 981 | Policy Number 940 194 981 |
| Ending Date June 22nd , 01 | Ending Date June 22, 01 |

**C.** In addition to those listed in questions A. and B. above, did any person to be insured have another Long-Term Care, Nursing Home, or Home Health Care insurance policy or certificate in force during the last twelve (12) months? If "Yes", show Company and date of lapse, if applicable.

| Applicant | Spouse |
|---|---|
| ☐ Yes   ☑ No | ☐ Yes   ☑ No |
| Company | Company |
| If lapsed, when did it lapse | If lapsed, when did it lapse |

**D.** Has the agent selling this insurance sold any other medical or health insurance to any person to be insured that is not now in force, but was sold to him or her within the past five (5) years? Do not include policies which have already been listed in questions A. B. and C., above.

| Applicant | Spouse |
|---|---|
| ☐ Yes   ☑ No | ☐ Yes   ☑ No |

The Agent shall list below details of any "Yes" answer to question D. including name of company, policy number being replaced, type of coverage, date sold, which of Applicant or Spouse is or was covered, and whether the coverage is now in force.

14418

**ACKNOWLEDGMENTS** The Applicant represents and agrees as follows: **1.** That the statements contained in the applicatio concerning past and present health are complete, true and correct and that those statements may be verified during a telephon interview. **2.** Any coverage issued as a result of this application shall, together with the application, constitute a single and entir contract of insurance. **3.** No agent or any other person is authorized to accept risks, pass upon insurability, make or modif contracts or waive any of the Company's rights or requirements. **4.** Any insurance issued as a result of the application will either **a.** Not take effect unless and until the full first premium is paid and the policy is delivered during such person's lifetime and whil such person is in the condition of health set forth in the application; or. **b.** Take effect only as specified in the Receipt, if any attached to this application. **5.** For any exchange, the new coverage will be treated as a renewal of any current coverage. **6.** Fo upgrades, all waiting periods in the coverage will apply to any increase in benefits. The waiting periods will start on the effectiv date of the increase. **7.** Provisions concerning exceptions, exclusions, limitations and renewal which have been applied for hav been explained and are understood. **8.** The applicant shall be the owner of any insurance applied for. **9.** I understand that th Company may offer both federally tax-qualified and non-qualified contracts having similar benefits. If I have applied for a federally tax-qualified contract, I understand that its benefit provisions may be more restrictive than a non-qualified contract. If I hav applied for a non-qualified contract, I understand that it does not provide the same federal income tax advantages as a tax qualifie contract. **10.** The Applicant acknowledges receipt of the Outline of Coverage, Long-Term Care Buyer's Guide, the Notice to Applicants for Insurance *(regarding the Applicant's rights under the Fair Credit Reporting Act)* and if eligible for Medicare, "The Guide to Health Insurance for People with Medicare."

**REPRESENTATION** THE UNDERSIGNED APPLICANT AND AGENT ACKNOWLEDGE THAT THE APPLICANT HAS READ OR HAD READ TO HIM/HER THE COMPLETED APPLICATION AND THAT HE/SHE REALIZES THAT ANY FALSE STATEMENTS OR MISREPRESENTATION THEREIN MAY RESULT IN LOSS OF COVERAGE UNDER THE POLICY.

**PAYMENT OF PREMIUM** READ THE RECEIPT BEFORE SIGNING. This is to represent that I have read the receipt and fully understand its conditions and limitations. I understand that no agent can waive or change the conditions and limitations of this receipt.

**AUTHORIZATION** In connection with an application for insurance currently made to Bankers Life and Casualty Company. I hereby authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, or other organization, institution or person, that has any records or knowledge of me or any of the members of my family named in said application or of our health, to disclose to the Company or its reinsurers any such information upon presentation of this authorization or reproduction thereof. This authorization will be valid for period of 2 years and 6 month from the date signed.

**PROTECTION AGAINST UNINTENDED LAPSE**
*In the event the policy is issued and later is about to lapse:*

I understand that I have the right to designate at least one Authorized Designee other than myself to receive Notice of Lapse or Termination of the long term care insurance policy for non-payment of premium. I understand that notice will not be given until 30 days after a premium is due and unpaid.

☑ I designate the following person as an Authorized Designee to be notified of the lapse of the policy:

Ann Lawrence                                      EDMS

_____
Name of Designee

Jackson   TN   38305                  Street Address

_____
City, State, Zip Code

( 731 )
_____
Telephone Number

☐ I elect NOT to designate any person to receive the notice.

4418              Confidential Information
                        REDACTED                Page 5 of 6

**REJECTION OF INFLATION PROTECTION BENEFITS**

*To be checked in the event you choose not to include inflation protection benefits in the policy.*

☒ I have reviewed the outline of coverage and the graphs that compare the benefits and premiums for the policy with and without inflation protection. Specifically, I have reviewed the options for the Compound Increases and Equal Increases and I reject this inflation protection.

**Caution:   If your answers on this application are incorrect or untrue, the Company may have the right to deny benefit or rescind your coverage.**

**SIGNATURES**   Date at City, Jackson   State TN   Zip 38 305

this 15th   Day of June,   01
   *(Day)*      *(Month)*      *(Year)*

Signature of Applicant X Edmund W. Martin   Spouse X Marion W. Martin
   *(If to be insured)*

**Social Security Number**

Applicant [                    ]   Spouse [                    ]
   *(If to be insured)*

I have witnessed the signature of the Applicant and Spouse, accurately recorded the answers contained herein. To th Applicant's response to Question 8.B, the insurance applied or certificate(s).

...uestions and truly an may be stated by th ny existing policy(ies

Signature *(of Licensed Resident Agent)* X Samdra

15 Office 4162

Signature *(of Licensed Resident Agent)* X_____

14418

*MAKE ALL CHECKS PAYABLE ONLY TO*       *COMPANY*

Confidential Information
REDACTED

## CONSIDERATION

We issued this policy in consideration of Your application (a copy is attached) and payment of the First Premium. This payment will keep the policy in force until the First Renewal Date. The First Premium and the First Renewal Date are shown on the Schedule page.

## RENEWAL PREMIUM

We may change the premium rates for this policy. We can change the premium only if We change it for all policies like Yours in Your state on a class basis. We'll provide You with written notice at least 30 days in advance of any change in the premium.

A change may also be due to the addition or removal of any premium discount as provided in any attached rider.

## FAMILY MEMBER ADDITIONS

Your spouse is the only person You may add to this policy. To add Your spouse, send Us a completed application showing his or her eligibility. You must also send Us the needed premium. We'll add Your spouse if We approve the written application and the premium has been paid.

If You die, Your spouse, if covered under this policy, will become the Insured.

## GENERAL DEFINITIONS

"Calendar Year" is the period beginning on the Issue Date and ending December 31 of that year. Thereafter it is the period from January 1 through December 31 of each following year.

"Covered Expenses" are defined and limited below in the provisions titled PART I, PART II, and ADDITIONAL COVERED EXPENSES.

"Family Member" means You, and Your spouse if named on the Schedule page or added to the policy.

"Hospital" means a place which is defined as a hospital and approved for payment as a hospital by Medicare, or accredited as a hospital by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association or the Commission on the Accreditation of Rehabilitation Facilities.

Hospital doesn't mean convalescent, nursing, rest or skilled nursing facilities, nor places that primarily treat the aged, drug addiction or alcoholism, including units in a Hospital used for such care.

"Immediate Family" means You, Your spouse, and the children, siblings, and parents of either You or Your spouse.

"Licensed Health Care Practitioner" means any licensed Physician, registered professional nurse or licensed social worker. It doesn't include a member of the Immediate Family.

"Medicaid" means "The Health Insurance for the Aged Act, Title XIX of the Social Security Amendments of 1965 as Then Constituted or Later Amended."

"Medicare" means "The Health Insurance for the Aged Act, Title XVIII of the Social Security Amendments of 1965 as Then Constituted or Later Amended."

"Mental Illness" means a neurosis, psychoneurosis, psychopathy, psychosis or mental or emotional disease or disorder or any kind. It doesn't mean a demonstrable organic brain disease, such as Parkinson's Disease, Alzheimer's Disease or senile dementia.

"Physician" means any licensed practitioner of the healing arts acting within the scope of his or her license in treating any injury or sickness. It doesn't include a member of the Immediate Family.

GR-N250                                    Page 3                                    408G

## GENERAL DEFINITIONS (Continued)

"**Plan of Care**" means a written program of care prescribed for a Chronically Ill Family Member. This Plan of Care must be developed, supervised and approved in writing by a Licensed Health Care Practitioner. We may require a copy of the initial Plan of Care and any changes later made to it.

"**Qualified Long-Term Care Services**" means necessary diagnostic, preventive, therapeutic, curing, treating, mitigating, and rehabilitative services and maintenance or personal care services which are:

a)      needed by a Chronically Ill Family Member; and
b)      provided under a Plan of Care prescribed by a Licensed Health Care Practitioner.

"**We**", "**Us**", and "**Our**" refer to Bankers Life and Casualty Company.

"**You**", "**Your**", and "**Yours**" refer to the Insured named in the Schedule.

### BENEFIT PROVISIONS

*Important terms used within the following Benefit Provisions are shown in bold print and quotation marks and defined therein.*

### A.      CONDITIONS FOR BENEFIT ELIGIBILITY

Before benefits will be payable for a Family Member's Covered Expenses: (1) a Licensed Health Care Practitioner must certify that expenses for Qualified Long-Term Care Services are needed because a Family Member is Chronically Ill; and (b) the Elimination Period, if any, must be satisfied.

We may periodically review the necessity of care and treatment. Our review may include: a) diagnosis, symptoms, complaints, and complications of a condition; b) the reason for the services being rendered; c) a Licensed Health Care Practitioner's orders; d) schedule of treatment; e) physical limitations and impairments; f) the objectives of the Licensed Health Care Practitioner's Plan of Care; and g) whether the expenses are for Qualified Long-Term Care Services.

"**Chronically Ill**" means a Family Member has been certified by a Licensed Health Care Practitioner within the preceding 12 month period as:

1.      being Functionally Incapacitated for a period expected to last at least 90 days; or
2.      having a Cognitive Impairment.

"**Cognitive Impairment**" means a deterioration or loss in intellectual capacity which requires Substantial Supervision to protect oneself from threats to health and safety. Cognitive Impairment is measured by clinical evidence and standardized tests that reliably measure impairment in one's: (1) short or long-term memory; (2) orientation as to people, places, or time; and (3) deductive or abstract reasoning.

Such loss of intellectual capacity can result from the following covered conditions: Alzheimer's Disease, Parkinson's Disease, senile dementia or other nervous or mental disorders of organic origin.

"**Elimination Period**" means the number of days a Family Member must receive services under Part I or Part II Covered Expenses before benefits are payable. The Elimination Period has to be satisfied only once for each Family Member under this policy. It does not apply to Hospice Care, Respite Care, Ambulance Services, Caregiver Training, or Emergency Medical Response System benefits. The Elimination Period is shown on the Schedule page.

GR-N250

408G

BENEFIT PROVISIONS (Continued)

**C.  BENEFIT LIMITATIONS**

We won't pay more per day than the Maximum Daily Benefit amount shown on the Schedule page for the total of all Part I Nursing Home Care, Assisted Living Facility Care, Bed Reservation and Alternate Plan of Care Covered Expenses. We won't pay more per Week than the Maximum Weekly Benefit amount shown on the Schedule page for the total of all Part II Home Health Care, Respite Care, Hospice Care and Adult Day Care Covered Expenses.

We won't pay more than the Maximum Benefit for Any One Period of Expense for the total of all Covered Expenses (Part I, Part II and Additional) combined. We won't pay benefits under both Part I and Part II when expenses are incurred on the same day. In such case, benefits will be payable for the earliest incurred expense for that day.

"Any One Period of Expense" begins when a Family Member first incurs a charge for Qualified Long-Term Care Services covered by this policy. It ends on the earlier of when: (1) for six consecutive months, the Family Member has no longer received Qualified Long-Term Care Services for the same cause or causes for which the previous Period of Expense began; OR (2) the Maximum Benefit has been exhausted.

"Maximum Benefit" means the maximum amount We'll pay a Family Member for the combined total of all Covered Expenses (Part I, Part II and Additional) during Any One Period of Expense. This amount is equal to the Maximum Daily Benefit amount times the Maximum Benefit Multiplier. The Maximum Benefit amount is shown on the Schedule page.

"Maximum Benefit Multiplier" is the number used to multiply the Maximum Daily Benefit by in order to equal the Maximum Benefit amount payable for Any One Period of Expense. The Maximum Benefit Multiplier is shown on the Schedule Page.

**D.  PART I COVERED EXPENSES**

The following are Covered Expenses, but only to the extent that they are Qualified Long-Term Care Services.

**1.  NURSING HOME CARE:**

The charges incurred for care (including room, board, services and supplies) provided during a Nursing Home stay for all levels of care: skilled, intermediate or custodial.

"Nursing Home" means a place which:

a.  is legally operated to provide nursing care (skilled, intermediate, custodial) for sick and injured persons at their own expense;

b.  has 24 hour nursing service by or under the supervision of a licensed nurse;

c.  has beds for patients who need care; and

d.  has a Physician available to furnish emergency medical care.

"Nursing Home" also means a wing, area or floor of a Hospital specifically set aside for nursing care.

Nursing Home doesn't mean: a Hospital, a place that primarily treats Mental Illness, drug addiction or alcoholism, a home for the aged, a rest home, a place that primarily provides domiciliary, residency or retirement care, or a place owned or operated by a member of the Immediate Family.

### BENEFIT PROVISIONS (Continued)

PART I - COVERED EXPENSES (Continued)

**2.** **ASSISTED LIVING FACILITY CARE:**

The charges incurred for care (including room, board, services and supplies) provided during a stay in an Assisted Living Facility.

"Assisted Living Facility" is a place providing room, board and personal care services to persons in need of assistance because of a Functional Incapacity or Cognitive Impairment, but given at a level of care less intense than that which would be received in a Nursing Home. Assisted Living Facilities can include other facilities providing the same type of care and services but are otherwise known as: personal care, domiciliary care, supported care, intermediate care, custodial care, sheltered care, or residential health care facilities. An Assisted Living Facility does not include congregate housing, individual residences or independent living units. An Assisted Living Facility must:



a. provide 24 hour a day care and services to at least 10 inpatients in one location;
b. have a trained and ready-to-respond employee on duty at all times to provide care;
c. provide 3 meals a day and accommodate special dietary needs;
d. be licensed by the appropriate licensing agency (if any) to provide such care;
e. have formal arrangements for the services of a Physician or nurse to furnish emergency medical care; and
f. have appropriate methods and procedures for handling and administering drugs and biologicals.

**3.** **BED RESERVATION:**

The charges incurred to reserve the Family Member's bed if hospitalization becomes necessary while he or she is confined in a Nursing Home or an Assisted Living Facility and:

a. We are paying benefits for the Nursing Home or Assisted Living Facility stay; and
b. the Nursing Home or Assisted Living Facility continues to charge the Family Member to reserve the bed.

We'll pay up to the Maximum Daily Benefit, not to exceed 21 days each Calendar Year. Any unused days cannot be carried forward into the next year.

**4.** **ALTERNATE PLAN OF CARE:**

The charges incurred for alternate services, devices, or types of care under a written Alternate Plan of Care if a Family Member qualifies for Nursing Home Care benefits. This Alternate Plan of Care:



a. will be developed by or with health care professionals;
b. must be agreed to by the Family Member, a Licensed Health Care Practitioner and Us; and



c. must consist of Qualified Long-Term Care Services.

We are not obligated to cover services prior to such agreement. Agreement to participate in an Alternate Plan of Care won't waive any of the Family Member's or Our rights under this policy.

We won't pay benefits under this Alternate Plan of Care provision and the Part II Covered Expenses provision for the same expenses. No payment will be made for any day for which a Nursing Home or Assisted Living Facility benefit is payable.

"Alternate Plan of Care" means a Plan of Care which may specify special treatments or different sites or levels of care. Some of the services received may differ from those otherwise covered by this policy. In such case, benefits will be paid as agreed in the Alternate Plan of Care provision. Examples include, but are not limited to, payment for durable medical equipment that allows a Family Member to stay at home; and care provided in Alzheimer's Centers or similar arrangements.

BENEFIT PROVISIONS (Continued)

 **E.**   **PART II COVERED EXPENSES**
The following are Covered Expenses, but only to the extent that they are Qualified Long-Term Care Services.

 **1.**   **HOME HEALTH CARE:**
The charges incurred for the following services and supplies provided by a Home Health Care Agency or a Qualified Home Health Care Provider under a Plan of Care:



- **a.**   visits by: a licensed nurse; a licensed nutritional specialist; a Home Health Aide; and a legally qualified physical, occupational, speech or inhalation therapist;
- **b.**   prescription drugs, medicines, medical supplies and laboratory services which are of a type customarily provided in a Hospital or Nursing Home;
- **c.**   rental (not to exceed purchase price) of a wheelchair, hospital bed and other durable portable equipment used for therapeutic treatment;
- **d.**   Personal Care Services; and
- **e.**   Homemaker Services Incidental to Personal Care Services.

"Home Health Aide" means a licensed or certified home health care worker, other than a Physician, nurse or professional therapist, who performs Personal Care Services.

"Home Health Care Agency" means an agency or organization that:

- a.   specializes in giving nursing care or therapeutic services in the home;
- b.   is licensed to provide such care or services by the appropriate licensing agency where they are performed or is certified as a Home Health Care Agency under Title XVIII of the Social Security Act of 1965, as amended;
- c.   is operating within the scope of its license or certification; and
- d.   maintains a complete medical record and Plan of Care for each patient.

"Homemaker Services Incidental to Personal Care Services" means only the following services, and only when a Family Member is receiving Personal Care Services.

- a.   domestic or cleaning services;
- b.   laundry services;
- c.   food shopping and errands;
- d.   meal preparation and cleanup;
- e.   transportation assistance to and from medical appointments; and
- f.   heavy cleaning which involves thorough cleaning of the home to remove hazardous debris or dirt.

"Personal Care Services" means assistance with performing activities of daily living used to measure Functional Incapacity.

"Qualified Home Health Care Provider" means an individual or organization licensed or certified to provide home health care services.  The Qualified Home Health Care Provider must be included in the Plan of Care as the provider of home health care services.

BENEFIT PROVISIONS (Continued)

PART II COVERED EXPENSES (Continued)

 **2.**   ‾RESPITE CARE:
The charges incurred for the same services and supplies as shown for Home Health Care for Respite Care received in:
a.   the Family Member's home;
b.   a private home;
c.   a home for the retired or aged;
d.   an Assisted Living Facility;
e.   a place which provides residential care; or
f.   a section of a Nursing Home.

We'll cover Respite Care charges for up to 14 days during each Calendar Year.  Any unused days of Respite Care cannot be carried forward into the next year.

Benefits payable for Respite Care are not subject to satisfying the Elimination Period. However, benefits paid for Respite Care will not count toward satisfying the Elimination Period for any other benefit payable under this policy which is subject to the Elimination Period.

"Respite Care" means professional care given to a Family Member who is Chronically Ill in order to temporarily relieve unpaid caregivers.

**3.**   HOSPICE CARE:
The charges incurred by a terminally ill Family Member for services and supplies given by a Hospice.

A Family Member is "terminally ill" if his or her Physician certifies that the Family Member: (a) has no reasonable prospect of cure; (b) has a life expectancy of less than 6 months; (c) needs Hospice services for palliation or management of the terminal illness and related conditions; and (d) would have to be confined in a Hospital or Nursing Home if Hospice Care services weren't available.

Benefits payable for Hospice Care are not subject to satisfying the Elimination Period. However, benefits paid for Hospice Care will not count toward satisfying the Elimination Period for any other benefit payable under this policy which is subject to the Elimination Period.

"Hospice" means an agency meeting the regulatory requirements for a hospice in the state where the services are given. If such state has no regulatory requirements, the agency must: (a) be primarily engaged in providing pain relief, symptom management and support service to dying persons and their families; and (b) provide nursing care under the supervision of a registered nurse.

 **4.**   ADULT DAY CARE:
The charges incurred for the following services provided at an Adult Day Care Facility:
a.   visits by a licensed nurse;
b.   occupational, physical or speech therapy;
c.   social, recreational and educational events designed to improve the patient's self-awareness and level of functioning;
d.   training and help with the activities of daily living.

BENEFIT PROVISIONS (Continued)

## PART II COVERED EXPENSES (Continued)

An "Adult Day Care Facility" means an organization that provides a program of adult day health care and:

a.    is state licensed, if the state in which it is located licenses Adult Day Care Facilities;

b.    operates at least 5 days a week for a minimum of 6 hours a day and is not an overnight facility;

c.    maintains a written record for each client that includes a Plan of Care and a record of all services provided;

d.    has established procedures for obtaining appropriate aid in the event of a medical emergency;

e.    has formal arrangements for providing the services of: a dietician; a licensed physical therapist; a licensed speech therapist; and a licensed occupational therapist; and

f.    its staff includes a full-time director; and one or more nurses in attendance during operating hours for at least 4 hours a day.

It doesn't include a place owned or operated by a member of the Immediate Family.



## F. ADDITIONAL COVERED EXPENSES



### 1. AMBULANCE SERVICES

The charges incurred, up to $75 per trip, for ambulance service to or from a Nursing Home or an Assisted Living Facility. We won't pay for more than four trips each Calendar Year. The Elimination Period, and if selected, the Annual Benefit Increases option do not apply to this benefit.

### 2. CAREGIVER TRAINING

The charges incurred for Caregiver Training if a Family Member requires home or community-based care. This benefit is subject to a lifetime maximum benefit, per Family Member, equal to the Maximum Weekly Benefit amount payable for Part II Covered Expenses. The Elimination Period and Restoration of Benefits provision do not apply to this benefit.

"Caregiver Training" is a formal instructional program designed to train an Informal Caregiver on the care needed to allow a Family Member to remain at home. Such training may include, but is not limited to, Personal Care Services, Homemaker Services Incidental to Personal Care Services, (see definitions under Part II Covered Expenses for Home Health Care) and the administration of medications. Caregiver Training can be provided by a Home Health Care Agency, Nursing Home, Hospital, or other agency or health care professional qualified by license, training or experience to provide such instruction.

"Informal Caregiver" is a member of the Immediate Family or friend who will provide care to a Family Member on a regular unpaid basis. A member of the Immediate Family or a friend who is a health care professional and already providing care on an unpaid basis is not eligible for this training.



### 3. EMERGENCY MEDICAL RESPONSE SYSTEM

The charges incurred, not to exceed per month 10% of the Maximum Weekly Benefit amount payable for Part II Covered Expenses, for the rental or lease of an emergency medical response system. The system must be recommended as a part of the Plan of Care and be installed in the Family Member's home while this policy is in force. We will require: a) proof of installation; and b) a copy of the lease or rental agreement. An emergency medical response system does not include a home security system. This benefit is subject to a lifetime maximum of 12 months. The Elimination Period and Restoration of Benefits provision do not apply to this benefit.

BENEFIT PROVISIONS (Continued)



**G.** **WAIVER OF PREMIUM**

After a Family Member has incurred Part I or Part II Covered Expenses for 90 days within Any One Period of Expense, without regard to the Elimination Period being satisfied, We'll waive the payment of any premium coming due thereafter for all Family Members. This includes the waiving of premium for any attached benefit riders. Premiums will continue to be waived during Any One Period of Expense as long as the Family Member continues to incur Covered Expenses and has not exhausted the Maximum Benefit.

**H.** **OPTIONAL ANNUAL BENEFIT INCREASES**

The Schedule page shows which, if any, of the following options apply to Your policy coverage.

**1.** **ANNUAL COMPOUND INCREASES BENEFIT OPTION**

When this coverage is shown as "COVERED" on the Schedule page, provided the policy is in force, all policy maximum benefit amount(s) (Part I Maximum Daily Benefit, Part II Maximum Weekly Benefit and the Maximum Benefit for Any One Period of Expense) will increase on each policy anniversary by the percentage shown on the Schedule page. We'll apply the policy's percentage increase to the then current amounts for each such maximum benefit amount shown on the Schedule page.

**2.** **ANNUAL EQUAL INCREASES BENEFIT OPTION**

When this coverage is shown as "COVERED" on the Schedule page, provided the policy is in force, all policy maximum benefit amount(s) (Part I Maximum Daily Benefit, Part II Maximum Weekly Benefit and the Maximum Benefit for Any One Period of Expense) will increase on each policy anniversary by the percentage shown on the Schedule page. We'll apply the policy's percentage increase to the original amounts for each such maximum benefit amount shown on the Schedule page.

For both options, if the resulting benefit amount is not a multiple of $0.25, We will round the amount to the next highest multiple of $0.25.

During Any One Period of Expense, We'll pay any increased benefit amount that becomes effective as of the next policy anniversary.

When benefits are being paid for Any One Period of Expense, only that portion of the Maximum Benefit amount which has not yet been paid toward expenses incurred before the anniversary date will increase. When a new Period of Expense begins, the Maximum Benefit amount for Any One Period of Expense will return to an amount equal to the then current increased Maximum Daily Benefit amount times the chosen Maximum Benefit Multiplier.



**I.** **PATIENT CARE COORDINATION**

A Patient Care Coordination program is available at no extra cost to You. Under this program, We can assign a Patient Care Coordinator who is a specialist pre-approved by Us. This Coordinator is qualified by license, training or experience to help the Family Member:

1. select the provider(s) of care and services best suited for the type of care or treatment needed; and
2. file claims.

At or before the time a Family Member begins to incur Covered Expenses under this policy, even before an Elimination Period has been met, the Family Member, a Licensed Health Care Practitioner or a member of the Immediate Family can call Us. A Patient Care Coordinator will assist You. The Patient Care Coordinator telephone number is shown on Your policy identification card.

BENEFIT PROVISIONS (Continued)

 **J.**  **EXCLUSIONS**
We won't cover expenses incurred:



1. for illness or injury due to war or act of war;
2. due to intentionally self-inflicted injury while sane or insane;
3. to the extent they are paid under Medicare or any other government insurance plan (except Medicaid). This includes expenses that would be reimbursable by Medicare but for the application of a deductible or coinsurance amount;



4. for services or supplies provided by a member of the Immediate Family or a person who ordinarily lives in the Family Member's home; (Caregiver Training expenses are not subject to this exclusion.)
5. for services and supplies not included in the Plan of Care;
6. due to Mental Illness or nervous disorders without demonstrable organic disease; (Loss due to Parkinson's Disease, Alzheimer's Disease or senile dementia is covered.)
7. for which no charge is customarily made in the absence of insurance; or
8. for personal, comfort or convenience items, (such as television, radio or telephone).

 **K.**  **EXTENSION OF POLICY BENEFITS**
Termination of this policy by You will not affect any claim for loss that begins while this policy is in force and continues beyond the date of termination. Benefits payable under this Extension of Policy Benefits provision are limited to this policy's Maximum Benefit for Any One Period of Expense.

 **L.**  **RESTORATION OF POLICY BENEFITS**
This policy's Maximum Benefit for Any One Period of Expense will be fully restored when a Family Member has stopped receiving Qualified Long-Term Care Services for six consecutive months for the same cause or causes for which a previous Period of Expense began. If this policy includes one of the Annual Benefit Increase Options, as shown above, the amount restored will be inclusive of any accumulated benefit increases as of the policy's last anniversary.

## BENEFIT AND PREMIUM CHANGE

The risk We assumed on this policy's Issue Date is based on the laws and regulations governing the system for the delivery and financing of health insurance then in effect. It's possible that the federal government or state legislation may change the system and therefore change the nature of the risk We assumed. If this occurs, We'll make any necessary change to policy benefits. We'll make such a change by adding: (a) an amendment to the policy; (b) a new schedule page; or (c), both (a) and (b).

Before making any such change, We'll get the necessary approval from the agency in Your state that regulates insurance. We'll tell You if such coverage change needs a premium change. Until the effective date of any coverage change, benefits will be based upon the risk We assumed on this policy's Issue Date.

Any premium change may be made only after We give You at least 30 days advance notice.

## UNIFORM PROVISIONS

**ENTIRE CONTRACT; CHANGES:** This policy with any attached papers is the entire contract between You and Us. No change in this policy will be effective until approved by one of Our officers. This approval must be noted on or attached to this policy. No agent may change this policy or waive any of its provisions. The application is a part of this policy.

GR-N250                                    Page 12                                    409G

## UNIFORM PROVISIONS (Continued)

TIME LIMIT ON CERTAIN DEFENSES: a) We may void this policy or deny any claim for loss which starts within six months of this policy's Issue Date. We may do so only if We determine there was material misrepresentation which would have caused the application for this coverage to be declined; b) After six months, but less than two years from this policy's Issue Date, We may void this policy or deny any claim for loss if We determine there was material misrepresentation which would have caused the application for this coverage to be declined, and which relates to the condition for which benefits are sought; c) After two years from the Issue Date only fraudulent misstatements in the application relating to a Family Member's health may be used to void this policy or deny any claim for loss which starts after the two year period.

GRACE PERIOD: This policy has a 31 day grace period. This means that if a premium isn't paid on or before the date it's due, it may be paid during the following 31 days. During the grace period this policy will stay in force.

We won't end the policy for nonpayment of premium unless We have sent written notice to You and, if applicable, Your authorized designee (the person You designate to receive such notice) at least 30 days before the policy will end.

AUTHORIZED DESIGNEE: We will tell Your authorized designee when a policy lapse is imminent. Notice will not be given until 30 days after a premium is due and unpaid. You may change Your authorized designee at any time by sending Us written notice. We will periodically notify You of Your right to change Your authorized designee, but no less often than once every two years.

REINSTATEMENT: If the premium isn't paid before the grace period ends, this policy will lapse. Later acceptance of premium by Us (or by any agent authorized to accept payment) without requiring an application for reinstatement, will reinstate this policy.

If We or Our agent require an application You'll get a conditional receipt for the premium. If the application is approved, this policy will be reinstated as of the approval date. Lacking such approval, this policy will be reinstated on the 45th day after the date of the conditional receipt unless We previously notified You in writing of Our disapproval.

In the event of lapse due to Cognitive Impairment or Functional Incapacity of a Family Member, You, or any person authorized to act on Your behalf, may request reinstatement of this policy. Such request must be made within five months after this policy lapsed.

If proof of Cognitive Impairment or Functional Incapacity is provided and medically verified and We receive past due premium, We'll reinstate the policy. The reinstated policy will cover loss occurring from the date of lapse. Payment of premium must be made within 15 days following Our request.

In all other respects Your rights and Our rights will remain the same, subject to any provisions noted on or attached to the reinstated policy.

NOTICE OF CLAIM: Written notice of claim must be given within 60 days (6 months in Montana) after a covered loss starts or as soon as possible. The notice can be given to Us at the address shown on page 1 of this policy or to any one of Our agents. Notice should include Your name and the policy number.

CLAIM FORMS: When We get notice of claim, We'll send You forms for filing proof of loss. If these forms aren't given to You within 15 days, You'll meet the proof of loss requirements by giving Us a written statement of the nature and extent of the loss. We must get this statement within the time limit stated in the Proof of Loss section.

## UNIFORM PROVISIONS (Continued)

PROOF OF LOSS: For periodic payment of a continuing loss, You must give Us written proof of loss within 90 days after the end of each period for which We are liable. For any other loss, You must give Us written proof within 90 days after the end of such loss.

If it wasn't reasonably possible for You to give Us proof in the time required, We won't reduce, nor deny the claim for this reason if the proof is filed as soon as possible. In any event, the proof required must be given no later than one year (15 months in Hawaii) from the time specified unless You were legally unable to act.

TIME OF PAYMENT OF CLAIMS: Benefits payable under this policy will be paid as soon as We receive proper written proof of loss.

PAYMENT OF CLAIMS: Benefits will be paid to You. Any benefits due and unpaid at Your death may be paid to Your estate.

If benefits are payable to Your estate, We can pay up to $1,000 ($3,000 in Florida) to anyone related to You by blood or marriage, whom We consider to be entitled to the benefits. We'll be discharged to the extent of any such payment made in good faith.

INFORMATION ON DENIAL OF CLAIM: In the event We deny benefits under this policy, a Family Member has the right to: a) receive a written explanation of the reason(s) a claim was denied; and b) all information directly relating to the claim denial. Write to Our Claim Review Department, 222 Merchandise Mart Plaza, Chicago, Illinois 60654-2001. We will respond within 60 days after receiving Your request.

PHYSICAL EXAMINATION: We, at Our expense, have the right to have a Family Member examined as often as reasonably necessary while a claim is pending.

LEGAL ACTION: No legal action may be brought to recover on this policy within 60 days after written proof of loss has been given as required by this policy. No such action may be brought after three years (five years in Kansas; six years in South Carolina) from the time written proof of loss is required to be given.

CONFORMITY WITH STATE STATUTES: Any provision of this policy which, on its effective date, is in conflict with the laws of the state in which You live on that date is amended to conform to the minimum requirements of such laws.

# EXHIBIT E

*BANKERS LIFE AND CASUALTY COMPANY*
*Policy Benefits Dept. • PO Box 66994*
*Chicago, IL 60666 • Telephone: 1-800-621-3724*



March 4, 2010

Mr. Edmund Martin

Jackson, TN  38305

RE:  Insured:  Edmund Martin
       Policy Number: 201, 071, 892

Dear Mr. Martin:

We have completed our reassessment of your eligibility for benefits.  We have determined that you continue to qualify for benefits based on the provisions in your policy.  Your new benefit eligibility period begins on January 1, 2010 and ends on June 1, 2010.

Attached to this letter is a detailed Plan of Care, which documents the reason for our reapproval of this claim request, as well as the specific type, level and frequency of long-term care services considered appropriate to meet your long-term care needs.  The Plan of Care includes the approved provider of care. You must contact us before making any changes in the type, level or frequency of care or change providers of care so that this Plan of Care can be updated.  If you make changes without prior notification to us, expenses you incur for that care may not be covered.  Changes to your Plan of Care will be subject to all terms and conditions of your long-term care policy.

According to your policy, to be eligible for benefits you must be certified by a Licensed Health Care Practitioner as being unable to perform (without substantial assistance from another individual) at least two Activities of Daily Living for a period of 90 days due to loss of functional capacity, or requiring Substantial Supervision to protect yourself from threats to health and safety due to Severe Cognitive Impairment.

We are unable to certify that you continue to meet the above criteria beyond June 1, 2010. According to the information obtained from Elmcroft of Jackson ALF, you are now independent with all of the other activities of daily living.  Also, you do not require 24/7 supervision for a cognitive impairment.

The provider you selected, Elmcroft of Jackson ALF, meets the policy requirements.  However, benefits are not payable for the care or services provided by this provider starting on June 2, 2010 since you no longer meet the eligibility requirements under your policy.  Your claim will be closed effective June 2, 2010.

If you believe that your claim has been wrongfully denied or rejected, we will be glad to consider any additional facts you may wish to submit.  If you disagree with our decision, you are entitled to a management review of the claim.  Please forward your request for a management review to the following address:

Confidential Information
REDACTED

Bankers Life and Casualty Company
Attention: Claims Manager
PO Box 66994
Chicago, IL 60666-0994

If you have any questions, please call our Customer Service Representatives at 1-800-621-3724 between the hours of 8:00 a.m. and 4:30 p.m. CST.

Sincerely,

Leslie Thornton, RN
Care Management Specialist
Long Term Care Claims Department

# Plan of Care Summary

Claimant Name: Edmund Martin    Policy Number: 201 071 892

We have determined you meet the eligibility requirements under your policy as of January 1, 2010 to June 1, 2010.  Payment of benefits is subject to all terms and conditions of your policy.

| Activities of Daily Living | Dependency level & Durable Medical Equipment used, if any |
|---|---|
| Bathing | independent |
| Dressing | independent |
| Eating | independent |
| Continence | independent |
| Toileting | independent |
| Transferring | independent |
| Other Functional Activities and Instrumental Activities of Daily Living | Dependency level & Durable Medical Equipment used, if any |
| Medication Management | |
| Meal Preparation | |
| Walking/Mobility/Ambulating | |
| Medically Necessary Care | |
| | |

| Cognitive Impairment | |
|---|---|
| Cognitive Impairment Approval | no |

### Definitions of Dependency Levels:

**Dependent:** Regular assistance is required (Refer to your policy for the specific definition of the level of care required).

**Independent:** Performs entire activity without assistance from another person. May use mechanical devices or equipment, but does so with out the assistance of another person.

**Supervision:** Requires continuous supervision to protect self from threats to Health and Safety.

**N/A:** This is not a qualifying Activity of Daily Living under your policy.  This means that your need for assistance with this activity is not considered when determining your eligibility for benefits (Refer to your policy for the list of qualifying Activities of Daily Living).

RE: Insured: Edmund Martin                    Policy Number: 201, 071, 892

# Summary of Covered Services

Applicable to starting: January 1, 2010 ending: June 1, 2010*

*Provided eligibility requirements are met throughout this period*

Any services or care expenses not listed as covered on this summary of benefits cannot be considered for coverage under your policy.

| Care Information | Provider #1 | |
|---|---|---|
| Provider | Elmcroft of Jackson ALF | |
| Type of Service | | |
| Approved Frequency of Service | 24/7 from January 1, 2010 to June 1, 2010 only | |
| Cost per Unit | | |
| Amount eligible for coverage | Any amount considered for reimbursement cannot exceed Approved Frequency of Service as noted above, nor can it exceed your maximum benefit amount. You must also have met any applicable elimination period before any request for reimbursement can be considered. | |
| Amount not eligible for coverage under your plan | Any amount during any applicable elimination period and any amount exceeding the Approved Frequency of Service as noted above. | |

# Summary of NON-Covered Services

Services listed in this section are NOT covered under your plan of benefits, but have been identified as an appropriate part of the comprehensive Plan of Care designed to meet your needs.

| Care Information | Provider #1 | |
|---|---|---|
| Provider | | |
| Type of Service | | |
| Frequency of Service | | |
| Needs addressed by Service | | |

| Persons participating in the Plan of Care development (please list) | |
|---|---|
| Name: | Relationship: |
| Name: | Relationship: |
| Additional Comments: | |
| Initial Plan of Care completion date: March 4, 2010 | Amendment Date: |

If you have any questions about this plan of care please contact us at 1-800-621-3724.

# EXHIBIT F

*BANKERS LIFE AND CASUALTY COMPANY*
*Policy Benefits Dept. • PO Box 66994*
*Chicago, IL 60666 • Telephone: 1-800-621-3724*



March 16, ·2010

MARTIN EDMUND D                    9504    · 715697-1 BLC

JACKSON TN   38305

PATIENT NAME:  MARTIN EDMUND D
REGARDING:     201,071,892
PATIENT NAME:  MARTIN MARION W
REGARDING:     201,071,892

Dear Mr Martin:

Claim of:  MARTIN EDMUND D

EXPENSE(S) SUBMITTED:
ELMCROFT OF JACKSON      2-1 TO 28               3,178.00

Here is your check.

If the patient is still confined to the facility please send in the
itemized nursing home bill.  We can't pay for advance billings, so the
bills should be sent after the expense has been incurred.

We'll give the prompt service we like to deliver when we get this
information.

Claim of:  MARTIN MARION W

EXPENSE(S) SUBMITTED:
ELMCROFT OF JACKSON      2-1 TO 28               3,209.92

Here is your check.

Your LONG TERM CARE insurance pays $73,000.00 for Assisted Living
expense.

This benefit check is the final payment for the claim. The claim limit
has now been reached.

While we were paying benefits for this existing claim, we waived the
premium on your coverage. Your policy states that this waiver of premium
must end when your benefits end.

The waiver of premium ended effective 3/22/10.  In order for your policy
to remain in force you must again start paying the required premium. Our
Policyholders Service Department will write you regarding this issue.

Confidential Information
REDACTED

```
MARTIN EDMUND D                    9504      715697-1
March 16, 2010                               201,071,892
Page 2
```

If you expect to need the services that you have been receiving on a
permanent basis, it's our obligation to ask you to consider whether you
wish to continue the coverage. The policy has paid the maximum
$73,000.00 for this claim; therefore, we cannot pay additional benefits.

However, you should know that additional policy benefits might be
available for future claims under certain circumstances.

Please review the 'Benefit Provisions' section of your policy to see if
it has a 'Restoration of Benefits' provision, that may allow additional
benefits for eligible services if you did not require care and/or have
expense for the cause or causes of this claim for a specified period of
time.

If there is no restoration of benefits provision, please review the
'Benefit Limitations' and 'Definitions' sections of the policy. Some
policies contain a statement that says a new benefit period, or a new
period of expense, or new period of confinement may be available if
there is no care or expense for a specified period of time. Some
policies have a separate 'Restoration of Benefits' rider attached.

To end your coverage, please contact us directly. If you decide to keep
your coverage, simply continue to pay the premiums.

If you have any questions, please call our Customer Service
Representatives at 1-800-621-3724 between the hours of 8:00 a.m. and
4:30 p.m. CST.


Policy Benefits Department

# EXHIBIT G



J. Arthur Crews, II ✳
Wesley A. Clayton
William F. Kendall, III ✳
Charles M. Purcell
P. Allen Phillips
John S. Little †
Andrew V. Sellers
Jennifer K. Craig
Amber E. Luttrell *

# WALDROP & HALL
**ATTORNEYS** SINCE 1926

106 SOUTH LIBERTY STREET • JACKSON, TN 38301
Telephone 731-424-6211 • Fax 731-423-4732
Address reply to: Post Office Box 726 • Jackson, TN 38302

www.waldrophall.com

Writer's email address:
bushj@waldrophall.com

Joshua M. Roberts
Jay G. Bush
Cynthia M. Wood
Hailey H. David
Kerry M. Caldwell
Christopher C. Hayden

*Also licensed in MS
† Rule 31 Listed General Civil Mediator
✳ Rule 31 Listed General Civil/
Family Mediator

Homer H. Waldrop (1895-1981)
Roy Hall (1896-1984)
Hewitt P. Tomlin, Jr (1926-2006)
Partner, 1956-1981

March 25, 2010

*CERTIFIED MAIL AND U.S.P.S.*

ATTN: Claims Manager
Bankers Life & Casualty Company, Inc.
P.O. Box 66994
Chicago, IL  60666-0994

| Re: | Your Insured | : | Edmund Martin |
|---|---|---|---|
| | Policy No. | : | 201,071,892 |
| | Our File No. | : | 07-06470 |

Dear Sir/Madam:

Please allow this letter responds to your March 4, 2010, correspondence to Edmund Martin stating that his eligibility for benefits under the long-term care insurance policy will end on June 1, 2010. As you may know, this law firm represented Mr. Martin in a previous claim he had against Bankers Life for breach of contract, bad faith, and violation of the Consumer Protection Act when he was residing at Cheyenne Trace Assisted Living facility.  That matter was settled in November of 2008.  Since the settlement, Mr. Martin has relocated to the Elmcroft Assisted Living facility.  Under the terms of the 2008 settlement agreement, which is enclosed, the parties agreed that if Mr. Martin relocated from the Cheyenne Trace, he would continue to receive benefits under the policy as long as he could provide proof he was receiving personal care services.

According to Mr. Martin's policy, in order for him to be eligible for benefits he must be certified by a licensed health care practitioner as being unable to perform at least two activities of daily living for a period of ninety days due to a lack of functional capacity or requiring substantial supervision to protect himself from threats to health and safety due to severe cognitive impairment.  Nothing about Mr. Martin's status has changed since he first began receiving benefits under this policy while at Cheyenne Trace.  I have spoken with Tim Martin, who is the Residence Director at Elmcroft and he assures me that Mr. Martin, indeed, requires assistance and around-the-clock supervision in keeping with the requirements of his Bankers Life policy.  I have enclosed an Affidavit from Tim Martin attesting to such which should suffice as proof Mr. Martin is receiving personal care services pursuant to the 2008 settlement agreement.

Furthermore, it is my understanding that in making your determination to end Mr. Martin's benefits, a nurse was sent to Elmcroft, but never received permission from the

March 25, 2010
Page 2

Residence Director to be present on the premises, never examined Mr. Martin, and never spoke with Mr. Martin's personal caregiver. The nurse employed by Bankers Life merely spoke with some of the nurses at Elmcroft who are not necessarily familiar with Mr. Martin's status. It is difficult to understand how Bankers Life could reach the conclusion that Mr. Martin is no longer eligible for benefits without even speaking with him or performing an examination.

On behalf of Mr. Martin, I would request a management review of this claim. It is clear that the way in which Bankers Life has attempted to end Mr. Martin's benefits has not been a transparent process. Nothing about Mr. Martin's status has changed since he entered into the settlement agreement with Bankers Life. If Mr. Martin does not remain eligible to receive benefits past June 1, 2010, I will not hesitate to bring this matter to Court.

Please contact me as soon as possible regarding your decision on this matter. Thank you.

Very truly yours,

WALDROP & HALL

By

Jay G. Bush

JGB/cme

Enclosure

07-06470

## AFFIDAVIT OF TIM MARTIN

I, Tim Martin, after first being sworn according to law, state the following:

1. I am over eighteen (18) years of age and have personal knowledge of the following facts stated in this Affidavit.

2. I am the Residence Director of the Elmcroft Assisted Living Facility in Jackson, Tennessee.

3. I am a health care practitioner licensed by the Tennessee Department of Health.

4. Edmund Martin is a resident under my care at Elmcroft Assisted Living Facility and I am familiar with his assistance needs.

5. Edmund Martin is not independent and requires 24-hour supervision by the staff at Elmcroft Assisted Living Facility.

6. Edmund Martin requires assistance with medication management.

7. Edmund Martin requires stand-by assistance with bathing.

8. Edmund Martin requires assistance with preparation of meals.

9. Edmund Martin requires stand-by assistance with transferring due to multiple falls he has suffered.

10. The care and assistance being provided to Edmund Martin at Elmcroft Assisted Living Facility is medically necessary

FURTHER AFFIANT SAYETH NOT.

_____
Tim Martin

STATE OF: Tennessee

COUNTY OF: Madison

Personally appeared before me, Tim Martin, with whom I am personally acquainted, or who was proved to me on the basis of satisfactory evidence and who acknowledged that he executed the within instrument for the purposes therein contained.

Sworn to and subscribed before me, this the 25th day of March, 2010.

_____
Notary Public

My Commission Expires: 1-18-2011

# EXHIBIT H

*BANKERS LIFE AND CASUALTY COMPANY*
*PO Box 1938 • Carmel, IN 46082-1938*
*Telephone: 800-654-3072*


Edmund D Martin                              April  2, 2010
            Rd
Jackson TN 38305                                      Paid To

                                      201,071,892    3-22-10


Dear Mr. Martin:

We removed your N260 from Waiver of Premium as of 3/22/10.

We have paid out the maximum benefits allowed by your policy.  Your pol-
icy states that benefits will be restored if you no longer require or
receive qualified LTC services for 180 consecutive days for the same
cause or causes for which the previous period of expense began.

You may continue this insurance in force, if you feel you will have a
six-month period where you will no longer require or receive qualified
LTC services.

If you feel this won't be the case, then you should end the insurance.

To continue the insurance in force, please send $1319.92 with one copy
of this letter within 10 days.  This will pay the policy to 5/22/10.

If you want to end the insurance, just ignore any future notices you may
receive.

Policyholders SERVICE means just what the name says.  Any time we can
serve you, please call us at the phone number shown above.

Sincerely,


Policyholder Services

48TDF 134672                   Your servicing office is #4161
                               65 Germantown Ct Ste 425
                               Cordova            TN  38018
                               Phone     (901)756-8867
                               Agent: Sandra D Wood


Confidential Information
REDACTED

# EXHIBIT I

*BANKERS LIFE AND CASUALTY COMPANY*
*Policy Benefits Dept. • PO Box 1902*
*Carmel, IN 46082-1902 • Telephone: 1-800-621-3724*



May 17, 2010


MARTIN EDMUND D                          5104    396974-1 BLC

JACKSON TN   38305

PATIENT NAME:   MARTIN MARION W
REGARDING:      201,071,892

EXPENSE(S) SUBMITTED:
ELMCROFT OF JACKSON        4-1 TO 30                    3,439.20

Dear Mr Martin:

Your LONG TERM CARE insurance pays a maximum benefit of $73,000.00.
We've already paid the maximum benefits so we can't pay more now.

If you believe that your claim has been wrongfully denied or rejected,
we will be glad to consider any additional facts you may wish to submit.
If you disagree with our decision, you are entitled to a management
review of the claim. Please forward your request for a management review
to the above address.



Policy Benefits Department

Confidential Information
REDACTED

# EXHIBIT J

*BANKERS LIFE AND CASUALTY COMPANY*
*Policy Benefits Dept. • PO Box 66994*
*Chicago, IL 60666 • Telephone: 1-800-621-3724*



July 19, 2010


MARTIN EDMUND D                        9504     003372-1 BLC
                        RD
JACKSON TN   38305


PATIENT NAME:   MARTIN EDMUND D
REGARDING:      201,071,892

EXPENSE(S) SUBMITTED:
ELMCROFT                6-1 TO 21               2,383.50
ELMCROFT                6-22 TO 30             1,021.50


Dear Mr Martin:

Here is your check.

If the patient is still confined to the facility please send in the
itemized nursing home bill.  We can't pay for advance billings, so the
bills should be sent after the expense has been incurred.

We'll give the prompt service we like to deliver when we get this
information.

Please send us the itemized billing statements for dates of service
4-1-10 to 5-31-10.

If you have any questions, please call our Customer Service
Representatives at 1-800-621-3724 between the hours of 8:00 a.m. and
4:30 p.m. CST.



Policy Benefits Department

Confidential Information
REDACTED

# EXHIBIT K

*BANKERS LIFE AND CASUALTY COMPANY*
*Policy Benefits Dept. • PO Box 66994*
*Chicago, IL 60666 • Telephone: 1-800-621-3724*



August 18, 2010


            MARTIN EDMUND D                9504    707499-1 BLC

            JACKSON TN   38305

PATIENT NAME:   MARTIN EDMUND D
REGARDING:      201,071,892
PATIENT NAME:   MARTIN MARION W
REGARDING:      201,071,892

Dear Mr Martin:

                  Claim of:  MARTIN EDMUND D

EXPENSE(S) SUBMITTED:
ELMCROFT                7-1 TO 31                    3,518.50

Here is your check.

It has been our pleasure to send you these benefits.

However, we do wish to remind you that you will soon reach the maximum
claim amount that we can pay on your LONG TERM CARE insurance.

This advance notice is intended to give you the opportunity to consider
other financial arrangements.

If the patient is still confined to the facility please send in the
itemized nursing home bill.  We can't pay for advance billings, so the
bills should be sent after the expense has been incurred.

We'll give the prompt service we like to deliver when we get this
information.

                  Claim of:  MARTIN MARION W

EXPENSE(S) SUBMITTED:
ELMCROFT                7-1 TO 31                    3,553.84

Your LONG TERM CARE insurance pays a maximum benefit of 73,000.00.
We've already paid the maximum benefits so we can't pay more now.

Confidential Information
REDACTED

```
MARTIN EDMUND D                         9504       707499-1
August 18, 2010                                    201,071,892
Page 2
```

If you have any questions, please call our Customer Service
Representatives at 1-800-621-3724 between the hours of 8:00 a.m. and
4:30 p.m. CST.


Policy Benefits Department



UNITED STATES POSTAGE

Priority Mail
ComBasPrice

02 1M
0004292612
MAILED FROM ZIP CODE 37203

$ 10.00
SEP 21 2010



7009 3410 0002 1722 9748

RVILLE, TENNESSEE 37243

7009 3410 0002 1722 9748        9/21/10
BANKERS LIFE & CASUALTY COMPANY
2908 POSTON AVENUE, % C S C
NASHVILLE, TN 37203